UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **Timothy Jackson**, <br><br>                 Plaintiff, <br><br> v. <br><br> **Laura Wright**, **Milton B. Lee**, **Melisa Denis**, **Mary Denny**, **Daniel Feehan**, **A.K. Mago**, **Carlos Munguia**, and **G. Brint Ryan**, each in their official capacities as members of the Board of Regents for the University of North Texas System; **Rachel Gain**; **Ellen Bakulina**; **Andrew Chung**; **Diego Cubero**; **Steven Friedson**; **Rebecca Dowd Geoffroy-Schwinden**; **Benjamin Graf**; **Frank Heidlberger**; **Bernardo Illari**; **Justin Lavacek**; **Peter Mondelli**; **Margaret Notley**; **April L. Prince**; **Cathy Ragland**; **Gillian Robertson**; **Hendrik Schulze**; **Vivek Virani**; and **Brian F. Wright**, Defendants. | Case No. 4:21-cv-00033-ALM |

**PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY OR, IN THE ALTERNATIVE, PETITION TO CONDUCT DEPOSITIONS TO PERPETUATE TESTIMONY**

Plaintiff Timothy Jackson respectfully moves under Fed. R. Civ. P. 26(d)(1) to conduct targeted and limited discovery on an expedited basis to identify unknown defendants who have defamed him. The requested, limited discovery is urgent due to the one-year Texas statute of limitations on defamation claims, which will almost certainly run before discovery commences in this case.

In the alternative, Jackson petitions this Court under Fed. R. Civ. P. 27 to conduct depositions to perpetuate testimony.

I.    **INTRODUCTION**

A.  **The University of North Texas Suppresses Professor Timothy Jackson's Constitutionally Protected Speech in Response to his Ongoing Defamation**

Plaintiff Timothy Jackson is Distinguished University Research Professor of Music Theory at the University of North Texas (UNT). He has sued the Regents (Regents Defendants) of UNT in their official capacity for violating his rights under the First and Fourteenth Amendments of the United States Constitution. Jackson has also brought defamation claims against 18 additional defendants (the Defamation Defendants) under this Court's supplemental jurisdiction.

This dispute arose after Jackson, with his colleagues at UNT, published a symposium on July 24, 2020 in the 12th Volume (the Symposium) of the Journal for Schenkerian Studies (Journal). The Symposium collected 15 scholarly contributions, some critical and some in support of a music theory scholar named Philip Ewell, a professor at Hunter College at the City University of New York who identifies as black. See Dk#1-4, Ex. C. Ewell had opined in a plenary lecture of a prominent academic society, the Society for Music Theory, and in other venues that "music theory is white"; he denounced the "figurative and even more deep-seated whiteness in music theory"; and he has generally condemned the classical music tradition and music theory as "racist." Dk#1 (Complaint), ¶ 32. In particular, Ewell singled out the late-19th century/early-20th century Jewish music theorist Heinrich Schenker, sometimes referred to as the "Albert Einstein of music theory," as a "virulent racist," who "believed in biological racism," and whose racism "linked . . . repugnant views on people to his music theories." *Id.*, ¶¶ 33-34.

2

Heinrich Schenker is the namesake of the Journal of Schenkerian Studies, which Timothy Jackson serves as a founding member of its editorial staff and board. *Id.*, ¶ 37. The Journal is run by the Center for Schenkerian Studies (Center) which Jackson also directs. Professor Ewell criticized scholars such as Jackson, who as "white persons . . . severed Schenker's racist convictions from his music theories in order to promote Schenkerism." *Id.*, ¶ 35. The Journal published its Symposium in response to these charges of what Ewell called the "whitewashing" of music theory. *Id.*, ¶ 45.

In all likelihood, this would and should have remained a vitriolic but healthy and open debate within academia. Instead, UNT and the Regents Defendants as state actors placed their heavy thumbs on the scale to repress academic freedom and constitutionally protected speech as soon as cries went out over Twitter and other social media platforms condemning Jackson and the Journal as "racist."

Within days of publication of the Symposium, UNT announced an investigation into Jackson and the Journal in the name of "combating racism." *Id.*, ¶ 58 and Dk# 1-15, Ex. N. Students of the Division of Music History, Theory, and Ethnomusicology at UNT and all but three members of the faculty, including Defamation Defendants Ellen Bakulina, Diego Cubero, and Andrew Chung who had themselves participated in the publication, condemned Jackson for "racist actions." *Id.*, ¶¶ 54–57.

Yet the supposed "racist actions" of Jackson that the faculty and students allegedly deplored consisted of nothing more than publishing viewpoints with which they disagreed, especially Jackson's own article in the Symposium, which they condemned as "particularly racist and unacceptable." *Id.*, ¶¶ 54-57; Dk#1-5, **Ex. D** at JACKSON000227. The Defamation Defendants, among others, circulated petitions and

open letters calling for Professor Jackson to be fired, for the Journal to be shut down, and the Center for Schenkerian Studies to be canceled. *Id.* UNT and the Regents Defendants, as state actors, willingly obliged.

Rather than enforce UNT's own stated policies and rules upholding academic freedom, UNT convened an arbitrary "Ad Hoc Panel" to conduct a so-called investigation, the predetermined conclusion of which was to condemn Jackson, and Jackson alone, for "editorial mismanagement." *Id.*, ¶¶ 58–59; Dk#1-22, Ex. U. The Ad Hoc Panel followed no established rules or policies of the university. *Id.* Meanwhile, UNT ignored repeated grievance complaints submitted by Jackson under established UNT rules and procedures, in which he requested protection from his colleagues' retaliation due to nothing more than the exercise of protected speech. *Id.* ¶ 5; Dk#1-7, Ex. F. After excluding evidence and without waiting for Jackson to respond, UNT informed Jackson that he would be removed from the Journal and did so remove him. *Id.*, ¶ 60; Dk#1-5, Ex. D, Dk#1-22, Ex. U.

### B. Professor Timothy Jackson's Need for Expedited Discovery

On information and belief, the graduate student agitation was organized and coordinated by faculty from within and outside UNT. This collaboration is the reason Timothy Jackson seeks expedited discovery. Professor Jackson cannot currently identify exactly who, other than the Defamation Defendants, organized the petitions calling for his cancelation in the name of defamatory and baseless accusations of "racism" and "racist actions." *Id.*, Dk1-5, Ex. D at JACKSON000227.

The Defamation Defendants either stated directly or publicly endorsed the following defamatory statement, among others:

> [UNT] should also extend . . . investigati[on] [to] past bigoted behaviors by faculty and, by taking this into account, the discipline and potential removal of faculty who used the JSS platform to promote racism. Specifically, the actions of Dr. Jackson—both past and present—are particularly racist and unacceptable.

*Id.*

It is only known at this time that Defamation Defendant Rachel Gain published this defamatory attack to Twitter on July 27, 2020, and she apparently led this illiberal movement to repress academic freedom. *Id.* at Jackson000227. After she did so, the other Defamation Defendants publicly piled on, endorsed her defamatory statements, and petitioned UNT to "publicly condemn [the Journal]" and fire Professor Jackson. *Id.* at Jackson000228.

Jackson reasonably believes that other faculty, from within or outside UNT, either authored or coordinated these efforts. One indication of the outside influence on these defamatory publications is an email dated July 30, 2020 of Defamation Defendant Frank Heidlberger. Exhibit 1.  Heidlberger indicated that Eileen Hayes, former division chair and now Dean of the College of Arts and Communication at the University of Wisconsin Whitewater, participated in editing at least some of the petitions. *Id.* Timothy Jackson is entitled to discovery as to whether, and to what extent, individuals or entities outside of the State of Texas, with minimum contacts projected into the state, acted to harm Jackson within the State of Texas.

On July 29, 2020, Jackson also learned that President of the Graduate Association of Musicologists *unt* Theorists at UNT, Peter Kohanski, was circulating a version of Defamation Defendant Gain's petition, exhorting fellow graduate students to sign it, and planned to send it to the Dean of the Division over their signatures "before the

end of the week." *See* Exhibit 2. Although the authors and signatories of this defamatory petition were apparently disclosed to UNT, UNT has concealed their identities and the authorship of this petition, apparently, as Kohanski said, to "keep[] the signatories anonymous if it becomes necessary . . . to circulate the letter." *Id.* The signatories accused Jackson of "racist, sexist, and abusive behavior in his many capacities" and, no less, "extortion through grade manipulation and threats to students' careers and reputations." *Id.*

It is also suspected that professors from within the Society for Music Theory, a national professional society, aided and abetted the formulation and publication of these defamatory statements. The leadership of the society openly pressured individuals to generate parallel petitions and sign them at other universities. Dk1-1, ¶¶ 92-93 and Dk#1-13, Exhibit L.  On information and belief, the Society for Music Theory directed its activity into Texas to get Timothy Jackson fired, the Journal eliminated, and the Center canceled by contributing to and coordinating graduate student and faculty efforts to defame Jackson. *See, e.g.*, Dk#1-5 at JACKSON000225; Dk#1-13.

### C. Expedited Discovery Is Urgent

Expedited discovery is urgent because Texas law requires Professor Jackson to identify his defamers, regardless of where they reside, within one year of their defamatory statements, if he is to vindicate his rights. There is a one-year statute of limitations for defamation in the state of Texas, which runs from the date of the defamatory publication. Tex. Civ. Prac. & Rem. Code § 16.002. Certain procedural requirements run from the date the Plaintiff "receiv[es] knowledge of the publication." *See* Tex. Civ. Prac. & Rem. Code § 73.055(b-c).

6

Professor Jackson therefore seeks expedited discovery; or, in the alternative, he petitions for leave to conduct depositions in order to perpetuate testimony so that he can discover the identity of those responsible for his defamation before the statute of limitations expires.

## II.  ARGUMENT

### A.  Timothy Jackson Meets the Good Cause Standard for Expedited Discovery

Courts grant leave to conduct expedited discovery upon a showing of good cause. "Federal Rule of Civil Procedure 26(d)(1) provides that a party may not seek discovery from any source before the parties have a conference, except in proceedings preempted by Rule 26(a)(1)(B), *or when authorized by the Federal Rules, by stipulation, or by court order*" (emphasis added). *Cothran v. Koomson*, No. 4:20-CV-481-SDJ, 2020 U.S. Dist. LEXIS 204840, at *3–4 (E.D. Tex. Nov. 3, 2020) (granting *ex parte* motion for expedited discovery to serve third-party subpoenas).

In the Fifth Circuit, "[e]xpedited discovery is permitted upon a showing of good cause." *Gutierrez v. United States*, No. L-12-18, 2012 U.S. Dist. LEXIS 201704, at *3 (S.D. Tex. Mar. 12, 2012) (citing *El Pollo Loco, S.A. de C.V. v. El Pollo Loco, Inc.*, 344 F. Supp. 2d 986, 991 (S.D. Tex. 2004); *see also Cothran v. Koomson* at *3, *supra*, (collecting cases for holding "several other federal courts within the Fifth Circuit, including the Eastern District of Texas, have used a 'good cause' standard to determine whether a party is entitled to early discovery"); 8A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, & Richard L. Marcus, Federal Practice and Procedure § 2046.1 (3d ed. 2010) ("Although the rule does not say so, it is implicit that some showing of good cause should be made to justify such an order . . .").

Here, good cause is shown by the requirement that Plaintiff must join any additional Defamation Defendants within the one-year window for Texas defamation claims. Tex. Civ. Prac. & Rem. Code § 16.002.

No later than July 27, 2020, defamatory statements circulated, baselessly accusing Jackson of "racist behavior" for no other reason than scholarly disagreement. See Ex. 2. It is also clear that the defamatory statements circulated by the Defamation Defendants evolved. The petition published to Twitter on July 27, 2020 by Defamation Defendant Rachel Gain differs from that circulated by Mr. Kohanski two days later. *Compare* Dk#1-5 at JACKSON000227 with Ex. 2.

The Court should therefore grant Jackson expedited, limited discovery as necessary to identify, at minimum, what was said about him and by whom before the statute of limitations expires on July 27, 2021.

Given the pace of litigation, especially in the time of COVID-19, waiting for discovery powers in the ordinary course of this civil action, which can begin only after the parties' Rule 26(f) conference, will almost certainly foreclose these claims.

By contrast, no Defendants will be prejudiced. The expedited discovery will simply reveal information necessary to resolve this case. Therefore, the Court should grant the limited discovery set forth in Section II.C below.

**B. In the alternative, the Court Should Grant Plaintiff Leave to Conduct a Limited Number of Depositions to Perpetuate Testimony**

In the alternative, Timothy Jackson petitions to perpetuate testimony under Fed. R. Civ. P. 27:

> A person who wants to perpetuate testimony about any matter cognizable in a United States court may file a verified petition in the district court for the district where any expected adverse party resides.

> The petition must ask for an order authorizing the petitioner to de-
> pose the named persons in order to perpetuate their testimony.

*See In re Drake*, No. 4:17-MC-69-ALM, 2017 U.S. Dist. LEXIS 204330, at *3–*4 (E.D. Tex. Oct. 2, 2017). The standards are straightforward. The petitioner must:

- be stated in the title to the petition;

- "expect[] to be a party to an action cognizable in a United States court but [which he] cannot presently bring … or cause it to be brought";

- state the subject matter of the expected action and his interest;

- state the facts that the petitioner wants to establish by the proposed testimony and the reasons to perpetuate;

- state the names or description of the persons whom the petitioner expects to be adverse parties and their addresses, so far as known;

- state the name, address, and expected substance of the testimony of each pro-posed deponent.

*Id.*, at *3–*4. The petitioner must also show "that the perpetuation of testimony is necessary to prevent the evidence from being lost." *In re Caraway*, 303 Fed. App'x 220, 221 (5th Cir. 2008).

Here, Professor Jackson satisfies these conditions.  He has verified this Petition and states his name in its caption. He is already party to the action, and seeks to per-petuate testimony to join, if necessary, additional Defamation Defendants who cannot presently be brought into the case because their identity is unknown or because the evidence necessary to plead a claim against them is unknown.

The subject matter of the expected action is the defamatory statements made against Jackson and republished by UNT, including but not limited to a so-called Re-port of the Ad Hoc Panel published November 25, 2020. Dk#1-5.

9

Timothy Jackson also identifies the names of expected adverse parties in Section II.C below: in particular, Eileen Hayes and Benjamin Brand. It is expected that the testimony sought will reveal additional Defendants, for example, within the Society for Music Theory, who have projected their defamatory publications into the state of Texas with the express purpose of harming Timothy Jackson in Texas.

The expected substance of the deposition testimony is the identity of those who organized the various petitions against Timothy Jackson in the July 2020 publications defaming him for "racist actions" and "racist behaviors," as well as the persons responsible for authoring them, and the substance of their defamatory statements. It is also expected that the discovery will reveal additional defamatory statements.

Without the perpetuation of this testimony, evidence is likely to be lost. The as-yet unknown defendants may either lose or otherwise destroy, whether inadvertently or otherwise, relevant evidence necessary for this case.

## C. The Limited Expedited Discovery Plaintiff Seeks

Plaintiff seeks to depose the three individuals listed below:

*1)  Rachel Gain*

Rachel Gain is a Defamation Defendant in the above-captioned case.

**Subject Matter**:

Gain tweeted a version of a student petition on July 27, 2020, defaming Timothy Jackson and appears to have led this effort. It is expected that she can identify authors and collaborators in publishing these defamatory statements and can identify other authors were involved in publishing or collaborated in publishing the defamatory statements against Timothy Jackson. It is expected that her testimony will

identify additional Defamation Defendants to be joined in this civil action before the statute of limitations expires on July 27, 2021.

**Contact**: Gain can be reached through counsel, Assistant Attorney General Matthew Bohuslav, who has appeared on her behalf.

*2) Levi Walls*

Levi Walls is a graduate student of UNT and was the graduate student editor of the Journal until July 27, 2020.

**Subject Matter**: Levi Walls quit as graduate student editor of the Journal on July 27, 2020 after the social-media mob attacked Timothy Jackson and it became clear that UNT would support their assault on academic freedom and protected speech with the full authority of the state. Under this pressure, Walls wrote to Jackson on January 25, 2020: "It's very worrying, especially as I don't want my career to be ruined before it properly began. I have a family to take care of now." Dk#1-1, ¶ 135. He followed up on January 27, 2020 by publicly renouncing his own work on the Journal, professing himself an acolyte of Philip Ewell, and denouncing Timothy Jackson, whom he had only a few months earlier asked to be his dissertation advisor. Dk#1-6. Significant portions of Walls' apologia (published to Facebook) are flatly contradicted by his own contemporary emails in the internal correspondence of the Journal. Dk#1-6. He was nevertheless feted as a hero of the social media mob and UNT's faculty. Walls also claimed to have submitted a so-called "whistleblower" complaint at some point in February 2020 to Division Chair Benjamin Brand, apparently alleging that Timothy Jackson insufficiently understood "politically correct discourse and race relations" and forced him to publish articles against his will, and that Timothy Jackson

committed so-called "racist actions" as referred to in the Defamation Defendant's pe-
titions, which, on information and belief, Walls endorsed. *See* Dk#1-1, ¶¶ 30-31. Walls
is expected to testify as to the identity of authors and collaborators in the defamatory
petitions circulated in July 2020. It is expected that these authors and collaborators
will be joined as Defamation Defendants before the statute of limitations expires.

**Contact**:

915 Collier Street

Denton, Texas 76201

*3)  Peter Kohanski*

Peter Kohanski was at all relevant times President of the Graduate Association
of Musicologists *unt* Theorists at UNT.

**Subject Matter**: Kohanski circulated a notification on July 29, 2020, soliciting
signatures for a petition calling for Timothy Jackson to be fired, the Journal to be elim-
inated, and the Center to be canceled. Exhibit 2. He is expected to reveal signatories
to, authors of, and collaborators in the petition accusing Timothy Jackson of "racist
actions" and "racist behaviors." It is expected that these authors and collaborators
will be joined as Defamation Defendants to the extent additional UNT faculty or fac-
ulty beyond UNT are identified.

**Contact**:

426 Audra Lane Apt. H

Denton, Texas 76209-6339

*4)  Benjamin Brand*

Benjamin Brand was, at all relevant times, the Chair of the Division of Music History, Theory, and Ethnomusicology and Timothy Jackson's immediate supervisor.

**Subject Matter**: It is expected that Brand's testimony will reveal defamatory statements sufficient to join him as a Defendant in this case. He was the alleged recipient of a so-called "whistleblower" complaint of Graduate Student Editor Levi Walls at some point in February 2020. Walls purports to have alleged that Timothy Jackson insufficiently understood "politically correct discourse and race relations," among other supposed "racist actions" as referred to in the Defamation Defendant's petitions. See Dk#1-1, ¶¶ 30–31. Although Brand did not endorse the defamatory petition, he gave live testimony to the so-called "Ad Hoc Panel" concerning alleged whistleblowing activity in February 2020 (which he never reported as whistleblowing at the time). The "Ad Hoc Panel" credited Brand's condemnation of Jackson. Yet contemporary documents demonstrate that references to "whistleblowing" are demonstrably false. Brand later claimed that Timothy Jackson had engaged in "editorial mismanagement" to justify his removal from the Journal. Because no such "mismanagement" took place and such allegations are directly disproven by contemporaneous documents, it is expected that Brand will give testimony identifying his own role and that of other as-yet-unjoined faculty in the defamation of Timothy Jackson sufficient to join Brand and others as Defamation Defendants.

**Contact**:

4111 Cole Avenue #31

Dallas, Texas  75204

13

*5)  Frank Heidlberger*

Frank Heidlberger is a Defamation Defendant.

**Subject Matter**: Frank Heidlberger sent an email on July 30, 2021 announcing not only, "I enthusiastically endorse this [defamatory faculty] letter"; but he also announced that Dean of the College of Arts and Communication at the University of Wisconsin Whitewater was leading so-called "antiracism" efforts outside of Texas and was projecting these activities into the State of Texas to edit one of the petitions which included defamatory statements against Timothy Jackson.  Exhibit 1.  It is expected that Heidlberger will testify as to other participants, within and outside UNT, who participated in this defamatory action and to the substance of their defamatory statements.

**Contact:** Frank Heidlberger can be reached through counsel, Assistant Attorney General Matthew Bohuslav, who has appeared on his behalf.

*6)  Written Discovery*

In addition, Plaintiff petitions and moves for leave to request the following documents, either through Requests for Production under Fed. R. Civ. P. 30, or under a Subpoena Duces Tecum through his Petition under Fed. R. Civ. P. 27.

1) All documents concerning evidence received by or considered by the "Ad Hoc Panel," including but not limited to transcripts or recordings of interviews or other correspondence with witnesses or concerning the weighing of witness statements.

2) All correspondence between Levi Walls and Benjamin Brand concerning Timothy Jackson from January 1, 2020, to present, including but not limited to any

alleged efforts at "whistleblowing" related to the Journal or allegedly racist actions or behaviors of Timothy Jackson.

       3) All documents in the possession, custody, or control of each witness, including those disseminated through social media of any kind, concerning communications or statements made or received concerning Timothy Jackson or the Journal of Schenkerian Studies from July 1, 2019, through present.

       4) All drafts or versions of petitions or open letters as referred to by Frank Heidlberger, as set forth in Exhibit 1, whether or not submitted to any administrative official or faculty member of UNT or otherwise published, including a list of all signatories to any such document.

       5) All drafts or versions of petitions or open letters as referred to by Peter Kohanski, as set forth in Exhibit 2, whether or not submitted to any administrative official or faculty member of UNT or otherwise published, including a list of all signatories to any such document.

Respectfully submitted,

Date: March 8, 2021

/s/Michael Thad Allen
Michael Thad Allen
D. Conn. Bar No. CT29813
admitted *pro hac vice*
Lead Attorney
ALLEN HARRIS PLLC
PO Box 404
Quaker Hill, CT  06375
(860) 772-4738 (phone)
(860) 469-2783 (fax)
mallen@allenharrislaw.com

Jonathan F. Mitchell
Texas Bar No. 24075463
MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **Timothy Jackson**, <br><br>              Plaintiff, <br><br> v. <br><br> **Laura Wright**, **Milton B. Lee**, **Melisa Denis**, **Mary Denny**, **Daniel Feehan**, **A.K. Mago**, **Carlos Munguia**, and **G. Brint Ryan**, each in their official capacities as members of the Board of Regents for the University of North Texas System; **Rachel Gain**; **Ellen Bakulina**; **Andrew Chung**; **Diego Cubero**; **Steven Friedson**; **Rebecca Dowd Geoffroy-Schwinden**; **Benjamin Graf**; **Frank Heidlberger**; **Bernardo Illari**; **Justin Lavacek**; **Peter Mondelli**; **Margaret Notley**; **April L. Prince**; **Cathy Ragland**; **Gillian Robertson**; **Hendrik Schulze**; **Vivek Virani**; and **Brian F. Wright**, Defendants. | Case No. 4:21-cv-00033-ALM |

## <u>AFFIDAVIT OF VERIFICATION</u>

I, Timothy Jackson, do hereby depose and swear the following statements upon my oath.

      1.     I am the plaintiff in the above-captioned case.

      2.     My birthdate is September 28, 1958, and my address is 2104 Lamplighter Drive, Flower Mound, Texas 75028.

      3.     I declare under penalty of perjury that the factual allegations in the foregoing Motion for Expedited Discovery or, in the Alternative, Petition to Conduct Depositions to Perpetuate Testimony are true and correct to the best of my

knowledge and, to the extent facts set forth in this Petition are alleged on the basis

of knowledge and belief, I believe them to be true.

      4.    Exhibit 1 attached to this Motion is a true copy of an email I received,

dated July 30, 2020.

      5.    Exhibit 2 attached to this Motion is a true copy of an email I received,

dated July 29, 2020.

_____
Timothy Jackson

Executed in Denton County, State of
Texas, on the 8th day of March, 2021.

BEFORE ME, the on this day personally
appeared Timothy Jackson, who upon his
oath, stated, swore, and affirmed, that he
had read the foregoing Motion for Expe-
dited Discovery or, in the Alternative, Pe-
tition to Conduct Depositions to Perpetu-
ate Testimony; that he verified the facts
set forth in Section I; and that the above
and foregoing facts supporting the Motion
are within his personal knowledge and
are true and correct; or, to the extent al-
leged on information and belief, he be-
lieves them to be true.

SIGNED:

_____

Subscribed and Sworn before me on this
8th day of March 2021.

_____
Notary Public in and for the State of
Texas
My Commission Expires:

PRIMO M SANTOS
Notary ID #131803440
My Commission Expires
November 20, 2022

18

## CERTIFICATE OF CONFERENCE

We certify that we have complied with the meet and confer requirements in Local Rule CV-7(h), and that counsel for the defendants opposes this motion. We also certify that we conducted the personal conference required by Local Rule CV-7(h) on March 5, 2021 over the telephone, and that Michael Thad Allen, lead counsel for the plaintiff, Jonathan F. Mitchell, local counsel for the plaintiff, and Matthew Bohuslav, counsel for the defendants, participated in the conference. We were unable to reach agreement because Attorney Bohuslav's position on behalf of his client is that no discovery should commence until after the parties 26(f) conference, and our discussions have conclusively ended in an impasse.

 /s/ Michael Thad Allen
Michael Thad Allen
*Lead Counsel for the Plaintiff*

 /s/ Jonathan F. Mitchell
Jonathan F. Mitchell
*Local Counsel for the Plaintiff*

19

**CERTIFICATE OF SERVICE**

I hereby certify that on the date specified in the caption of this document, I elec-
tronically filed the foregoing with the Clerk of Court, to be served on all parties of
record via the CM/ECF system.

/s/Michael Thad Allen
Michael Thad Allen

# EXHIBIT 1

**From:** Heidlberger, Frank <Frank.Heidlberger@unt.edu>
**Sent:** Thursday, July 30, 2020 10:38 AM
**To:** Friedson, Steven <Steven.Friedson@unt.edu>; Geoffroy-Schwinden, Rebecca <Rebecca.Geoffroy-Schwinden@unt.edu>; Notley, Margaret <Margaret.Notley@unt.edu>
**Cc:** Ragland, Catherine <Catherine.Ragland@unt.edu>; Mondelli, Peter <Peter.Mondelli@unt.edu>; Prince, April <April.Prince@unt.edu>; Virani, Vivek <Vivek.Virani@unt.edu>; Schulze, Hendrik <Hendrik.Schulze@unt.edu>; Illari, Bernardo <Bernardo.Illari@unt.edu>; Wright, Brian <Brian.Wright@unt.edu>; Cubero, Diego <Diego.Cubero@unt.edu>; Heetderks, David <David.Heetderks@unt.edu>; Schwarz, David <David.Schwarz@unt.edu>; Bakulina, Ellen <Ellen.Bakulina@unt.edu>; Lavacek, Justin <Justin.Lavacek@unt.edu>; Graf, Benjamin <Benjamin.Graf@unt.edu>; Robertson, Gillian <Gillian.Robertson@unt.edu>; Slottow, Stephen <Stephen.Slottow@unt.edu>; Timothy Jackson <shermanzelechin@gmail.com>; Chung, Andrew <Andrew.Chung@unt.edu>
**Subject:** Re: Faculty Statement on the Recent issue of JSS

Dear Rebecca, and all

I enthusiastically endorse this letter. Please attach my name to the letter.

I shared the draft with our previous chair, Eileen Hayes, who is leading the anti-racism efforts as president of CMS. This is what she responded:

"Thanks for sharing.  This is fantastic!  I am extremely proud to be associated with a division that would offer such a statement.  [...].

... last sentence:  "...to address and eliminate systemic racism within our specific disciplines."

You have really given me great hope this morning, with your letter. I was also proud of SMT's statement posted to Facebook. This is a period in which we are experiencing numerous trials, many of them centered around race. The MHTE letter makes me proud that I have lived to see such a statement issued from a College of Music."

I support her suggestion for editing the last sentence. Please do so.

Thanks for your support,
Frank

Dr. Frank Heidlberger
Professor of Music Theory

Music Theory Area Coordinator

University of North Texas
College of Music
1155, Union Circle # 311367
Denton, TX 76203
U.S.A.
Phone: (940) 369-7542
Fax (940) 565-2002

# EXHIBIT 2

Date: Wed, Jul 29, 2020 at 3:17 PM
Subject: Email from the president of GAMuT
To: Timothy Jackson <shermanzelechin@gmail.com>

Dear Dr. Jackson,

I received this email from the president of GAMuT earlier today. Just wanted to make you aware of this if you haven't already been informed. I have attached the letter and here is the text of the email:

Dear colleagues,

A group of us have come together and written a statement to Dean Richmond regarding recent events with the Journal of Schenkerian Studies. For your reference, it is attached. The letter will be sent to the dean before the end of the week. We have decided not to sign the statement anonymously, but rather list our names at the end. To this end, I write to ask all of you if you would like your names included. Since we are moving quickly, please **read the letter and respond as soon as you are able.**

If you would like your name on the statement, please respond "**Yes, I would like my name included on the statement.**" If you would prefer not to have your name on the statement, please respond "**No, please do not put my name on the statement.**"

We are going to do everything in our power to ensure Dean Richmond keeps the signatories anonymous if it becomes necessary for him to circulate the letter. That being said, no one will think less of you for not signing.

Again, please respond as quickly as you can with a yes or no. Many thanks for your attention to this important matter.

All best,
Peter Kohanski
President, the Graduate Association of Musicologists *unt* Theorists

Dear Dean Richmond,

We, a cross-section of graduate students in the Division of Music History, Theory, and Ethnomusicology (MHTE), write to condemn the latest issue of the *Journal of Schenkerian Studies* (JSS) and address concerns that recent events have foregrounded.

We are appalled by the JSS's recent perpetuation of anti-Black racism and platforming of ad hominem attacks in response to Dr. Philip Ewell's scholarship. These egregious acts go beyond the bounds of academic discourse and require a strong, swift response from the College of Music. We call upon the CoM to dissolve the JSS, dismiss Dr. Timothy Jackson, make substantial changes to the Center for Schenkerian Studies (CSS), implement consequences for those involved in the publication of the most recent issue of the JSS, and work to foster an institutional culture within the MHTE Division and the CoM where these events could never transpire. These changes are not only necessary for the sake of UNTs reputation and the well-being of its students but are also moral imperatives that can no longer be ignored.

**Dishonesty and a Lack of Academic Rigor in the JSS**

While we encourage the CoM to undertake a full investigation of the JSS Volume 12, we would be remiss if this document did not highlight the most reprehensible aspects of the journal.

1. **Lack of peer review:** The call for papers gave a two-week deadline for responses; all papers were accepted, without asking for substantial edits; papers were in some cases given only a five-day turnaround once notified of their acceptance to the journal; and the deadlines were selectively enforced, which allowed more anti-Ewell submissions to be accepted.
2. **Illicit collaboration.** After coopting the JSS in order to mount an attack on Dr. Ewell, Dr. Jackson proceeded to solicit responses from his close Schenkerian colleagues. The result of this solicitation and coordination between six of the anti-Ewell papers produced a markedly skewed bias toward the anti-Ewell responses. In stark contrast to this coordinated effort by Dr. Jackson et al., Dr. Ewell was neither notified nor asked to respond, as is standard academic practice.
3. **Editorial missteps.** The Assistant Editor, Levi Walls, was completely powerless to edit content and ideas or to provide substantive feedback during the editorial process. In practice, Dr. Jackson exercised control over editorial decisions, a power he should not have had. Although Levi did everything within his power to prevent the publication of racist views, the implications of his title meant that he was attacked for his ostensible decision-making role in the journal. This view was compounded by online references to the JSS as a publication run by doctoral students.

**The JSS Moving Forward**

Given the egregious behavior by the JSS and specifically by the advisory board, we urgently call for the following steps to be taken.

1. **Dissolve the JSS.** The JSS has demonstrated that it does not meet the standards of a peer-reviewed publication. The basis of academic discourse is trust and authenticity, and the JSS has violated that trust. As such, there is no reason for it to exist.

2. **Publicly condemn the issue and release it freely online to the public.** All contributors should be held fully accountable for their comments, which must not be hidden for the sake of the self-preservation of any involved parties. By making this volume accessible to the public with a disclaimer from the CoM, we hope to enable all scholars to address this problematic discourse.

3. **Provide a full, detailed, and public account of the editorial and publication process, and its failures**. The JSS must make a public account of the process so individuals who intentionally subverted academic norms can be held accountable, and so that innocent parties might be absolved of both guilt and a burden of silence.

4. **Hold accountable every person responsible for the direction of the publication.** This should also extend to investigating past bigoted behaviors by faculty and, by taking this into account, the discipline and potential removal of faculty who used the JSS platform to promote racism.

5. **Ensure that no member of the current JSS Advisory Board oversees or reviews work done by a TA or TF.**  Neither Dr. Slottow nor Dr. Jackson should be permitted to oversee graduate students in any employment capacity, including supervising those who manage graduate student assistantships.

## Calling for Dr. Jackson's Dismissal

Dr. Jackson should be removed from the UNT faculty because he has shown that his values are diametrically opposed to those of our division, the CoM, and the university at large. He has a history of racist, sexist, and abusive behavior in his many capacities. He was removed from the oversight of the RA for the CSS due to his treatment of previous RAs. Among the issues raised were:

1. Using the CSS RA to aid with his personal research
2. Requiring student work during the summer without pay
3. Extortion through grade manipulation and threats to students' careers and reputations

These abuses were eventually addressed, but it took CoM administrators years to attempt to remedy these problems. While this included Dr. Jackson's aforementioned removal from overseeing the CSS RA, his influence over both the CSS, the JSS, and the graduate research assistantship unofficially continued. His present offenses concerning this issue of the JSS are part of a pattern of harmful behaviors that have disproportionately affected marginalized students and faculty. His reputation extends beyond UNT and affects how our division is perceived externally.

If the CoM is unable to remove Dr. Jackson from his position, these steps must be taken at a minimum:

1. **Require a formal apology and retraction.** Dr. Jackson must provide a formal apology and retract his explicit racist comments and ad hominem attacks on Dr. Ewell.

2. **Prevent power imbalances.** Given that Dr. Jackson's position has facilitated past abuses, he must be prohibited from teaching required courses, advising students, serving on committees in any capacity, or wielding power over students or faculty.

3. **Eliminate research and travel funding and prohibit involvement in UNT publications.** Funding for Dr. Jackson's research and travel must be immediately and permanently terminated so that he can no longer manipulate the power structures within UNT publications to promote his own ideas. UNT must not provide a platform for his views.

**Addressing the MHTE Division's Culture**

Issue 12 of the JSS—both in its content and publication process—sheds light on a problematic culture within our division. Several faculty members have demonstrated through their actions a lack of understanding of issues of diversity. More concerning is the broader pattern of ineffective responses to graduate students' concerns. As illustrated in both Dr. Jackson's previous and current behaviors, problems were ignored by multiple administrators in the division and college at large. Action was only taken after these issues received broader (and especially public) attention. We recognize Dr. Brand's efforts to change our culture by initiating diversity training within our division and fostering an atmosphere where graduate students generally feel welcome when bringing issues to him, yet this has not yet led to an environment that prevents such abuses from happening. It is a start, but much work remains to be done.

With that in mind, we call on the MHTE Division and the CoM to take the following steps to critically examine and radically transform our institutional culture:

1. **Launch an investigation into the culture in UNT, the CoM, and the MHTE Division.** This investigation should take into account past concerns and remove barriers that led to inaction within the division and CoM. Specific concerns include addressing racism and sexism and serving diverse communities. A third party—such as representatives from the Division of Institutional Equity and Diversity—should oversee this investigation.

2. **Create a reporting process that ensures transparency, clarity, and protection from retaliation for graduate students within the MHTE Division and CoM.** There are many more troubling incidents that we would like to bring to your attention, and we recognize that there will be many more in the future. We look forward to the conversations necessary to bring about this institutional change.

3. **Appoint a faculty member (or faculty members or university representatives) specifically tasked with advocating for graduate students.** We call for one or more faculty members to be specifically charged with hearing graduate student concerns, corroborating those concerns, and advocating for appropriate responses both within and outside the CoM.

We call upon the MHTE Division and CoM to take these proposed actions, and we look forward to a dialogue as we work together to make UNT the best version of itself. We eagerly await your response.

Sincerely,