UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **Timothy Jackson**, <br><br>                Plaintiff, <br><br> v. <br><br> **Laura Wright**, **Milton B. Lee**, **Melisa Denis**, **Mary Denny**, **Daniel Feehan**, **A.K. Mago**, **Carlos Munguia**, and **G. Brint Ryan**, each in their official capacities as members of the Board of Regents for the University of North Texas System; **Rachel Gain**; **Ellen Bakulina**; **Andrew Chung**; **Diego Cubero**; **Steven Friedson**; **Rebecca Dowd Geoffroy-Schwinden**; **Benjamin Graf**; **Frank Heidlberger**; **Bernardo Illari**; **Justin Lavacek**; **Peter Mondelli**; **Margaret Notley**; **April L. Prince**; **Cathy Ragland**; **Gillian Robertson**; **Hendrik Schulze**; **Vivek Virani**; and **Brian F. Wright**, Defendants. | Case No. 4:21-cv-00033-ALM |

**PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY OR, IN THE ALTERNATIVE, PETITION TO CONDUCT DEPOSITIONS TO PERPETUATE TESTIMONY**

Plaintiff Timothy Jackson respectfully moves under Fed. R. Civ. P. 26(d)(1) to conduct targeted and limited discovery on an expedited basis to identify unknown defendants who have defamed him. The requested, limited discovery is urgent due to the one-year Texas statute of limitations on defamation claims, which will almost certainly run before discovery commences in this case.

In the alternative, Jackson petitions this Court under Fed. R. Civ. P. 27 to conduct depositions to perpetuate testimony.

1

I. **INTRODUCTION**

A. **The University of North Texas Suppresses Professor Timothy Jackson's Constitutionally Protected Speech in Response to his Ongoing Defamation**

Plaintiff Timothy Jackson is Distinguished University Research Professor of Music Theory at the University of North Texas (UNT). He has sued the Regents (Regents Defendants) of UNT in their official capacity for violating his rights under the First and Fourteenth Amendments of the United States Constitution. Jackson has also brought defamation claims against 18 additional defendants (the Defamation Defendants) under this Court's supplemental jurisdiction.

This dispute arose after Jackson, with his colleagues at UNT, published a symposium on July 24, 2020 in the 12th Volume (the Symposium) of the Journal for Schenkerian Studies (Journal). The Symposium collected 15 scholarly contributions, some critical and some in support of a music theory scholar named Philip Ewell, a professor at Hunter College at the City University of New York who identifies as black. See Dk#1-4, Ex. C. Ewell had opined in a plenary lecture of a prominent academic society, the Society for Music Theory, and in other venues that "music theory is white"; he denounced the "figurative and even more deep-seated whiteness in music theory"; and he has generally condemned the classical music tradition and music theory as "racist." Dk#1 (Complaint), ¶ 32. In particular, Ewell singled out the late-19th century/early-20th century Jewish music theorist Heinrich Schenker, sometimes referred to as the "Albert Einstein of music theory," as a "virulent racist," who "believed in biological racism," and whose racism "linked . . . repugnant views on people to his music theories." *Id.*, ¶¶ 33-34.

2

Heinrich Schenker is the namesake of the Journal of Schenkerian Studies, which Timothy Jackson serves as a founding member of its editorial staff and board. *Id.*, ¶ 37. The Journal is run by the Center for Schenkerian Studies (Center) which Jackson also directs. Professor Ewell criticized scholars such as Jackson, who as "white persons . . . severed Schenker's racist convictions from his music theories in order to promote Schenkerism." *Id.*, ¶ 35. The Journal published its Symposium in response to these charges of what Ewell called the "whitewashing" of music theory. *Id.*, ¶ 45.

In all likelihood, this would and should have remained a vitriolic but healthy and open debate within academia. Instead, UNT and the Regents Defendants as state actors placed their heavy thumbs on the scale to repress academic freedom and constitutionally protected speech as soon as cries went out over Twitter and other social media platforms condemning Jackson and the Journal as "racist."

Within days of publication of the Symposium, UNT announced an investigation into Jackson and the Journal in the name of "combating racism." *Id.*, ¶ 58 and Dk# 1-15, Ex. N. Students of the Division of Music History, Theory, and Ethnomusicology at UNT and all but three members of the faculty, including Defamation Defendants Ellen Bakulina, Diego Cubero, and Andrew Chung who had themselves participated in the publication, condemned Jackson for "racist actions." *Id.*, ¶¶ 54–57.

Yet the supposed "racist actions" of Jackson that the faculty and students allegedly deplored consisted of nothing more than publishing viewpoints with which they disagreed, especially Jackson's own article in the Symposium, which they condemned as "particularly racist and unacceptable." *Id.*, ¶¶ 54-57; Dk#1-5, **Ex. D** at JACKSON000227. The Defamation Defendants, among others, circulated petitions and

open letters calling for Professor Jackson to be fired, for the Journal to be shut down, and the Center for Schenkerian Studies to be canceled. *Id.* UNT and the Regents Defendants, as state actors, willingly obliged.

Rather than enforce UNT's own stated policies and rules upholding academic freedom, UNT convened an arbitrary "Ad Hoc Panel" to conduct a so-called investigation, the predetermined conclusion of which was to condemn Jackson, and Jackson alone, for "editorial mismanagement." *Id.*, ¶¶ 58–59; Dk#1-22, Ex. U. The Ad Hoc Panel followed no established rules or policies of the university. *Id.* Meanwhile, UNT ignored repeated grievance complaints submitted by Jackson under established UNT rules and procedures, in which he requested protection from his colleagues' retaliation due to nothing more than the exercise of protected speech. *Id.* ¶ 5; Dk#1-7, Ex. F. After excluding evidence and without waiting for Jackson to respond, UNT informed Jackson that he would be removed from the Journal and did so remove him. *Id.*, ¶ 60; Dk#1-5, Ex. D, Dk#1-22, Ex. U.

**B. Professor Timothy Jackson's Need for Expedited Discovery**

On information and belief, the graduate student agitation was organized and coordinated by faculty from within and outside UNT. This collaboration is the reason Timothy Jackson seeks expedited discovery. Professor Jackson cannot currently identify exactly who, other than the Defamation Defendants, organized the petitions calling for his cancelation in the name of defamatory and baseless accusations of "racism" and "racist actions." *Id.*, Dk1-5, Ex. D at JACKSON000227.

The Defamation Defendants either stated directly or publicly endorsed the following defamatory statement, among others:

4

> [UNT] should also extend . . . investigati[on] [to] past bigoted behav-
> iors by faculty and, by taking this into account, the discipline and po-
> tential removal of faculty who used the JSS platform to promote rac-
> ism. Specifically, the actions of Dr. Jackson — both past and pre-
> sent — are particularly racist and unacceptable.

*Id.*

It is only known at this time that Defamation Defendant Rachel Gain published this defamatory attack to Twitter on July 27, 2020, and she apparently led this illiberal movement to repress academic freedom. *Id.* at Jackson000227. After she did so, the other Defamation Defendants publicly piled on, endorsed her defamatory statements, and petitioned UNT to "publicly condemn [the Journal]" and fire Professor Jackson. *Id.* at Jackson000228.

Jackson reasonably believes that other faculty, from within or outside UNT, either authored or coordinated these efforts. One indication of the outside influence on these defamatory publications is an email dated July 30, 2020 of Defamation Defendant Frank Heidlberger. Exhibit 1.  Heidlberger indicated that Eileen Hayes, former division chair and now Dean of the College of Arts and Communication at the University of Wisconsin Whitewater, participated in editing at least some of the petitions. *Id.* Timothy Jackson is entitled to discovery as to whether, and to what extent, individuals or entities outside of the State of Texas, with minimum contacts projected into the state, acted to harm Jackson within the State of Texas.

On July 29, 2020, Jackson also learned that President of the Graduate Association of Musicologists *unt* Theorists at UNT, Peter Kohanski, was circulating a version of Defamation Defendant Gain's petition, exhorting fellow graduate students to sign it, and planned to send it to the Dean of the Division over their signatures "before the

end of the week." *See* Exhibit 2. Although the authors and signatories of this defama-

tory petition were apparently disclosed to UNT, UNT has concealed their identities

and the authorship of this petition, apparently, as Kohanski said, to "keep[] the signa-

tories anonymous if it becomes necessary . . . to circulate the letter." *Id.* The signato-

ries accused Jackson of "racist, sexist, and abusive behavior in his many capacities"

and, no less, "extortion through grade manipulation and threats to students' careers

and reputations." *Id.*

It is also suspected that professors from within the Society for Music Theory,

a national professional society, aided and abetted the formulation and publication of

these defamatory statements. The leadership of the society openly pressured individ-

uals to generate parallel petitions and sign them at other universities. Dk1-1, ¶¶ 92-

93 and Dk#1-13, Exhibit L.  On information and belief, the Society for Music Theory

directed its activity into Texas to get Timothy Jackson fired, the Journal eliminated,

and the Center canceled by contributing to and coordinating graduate student and

faculty efforts to defame Jackson. *See, e.g.*, Dk#1-5 at JACKSON000225; Dk#1-13.

### C.  **Expedited Discovery Is Urgent**

Expedited discovery is urgent because Texas law requires Professor Jackson

to identify his defamers, regardless of where they reside, within one year of their de-

famatory statements, if he is to vindicate his rights. There is a one-year statute of lim-

itations for defamation in the state of Texas, which runs from the date of the defama-

tory publication. Tex. Civ. Prac. & Rem. Code § 16.002. Certain procedural require-

ments run from the date the Plaintiff "receiv[es] knowledge of the publication." *See*

Tex. Civ. Prac. & Rem. Code § 73.055(b-c).

Professor Jackson therefore seeks expedited discovery; or, in the alternative, he petitions for leave to conduct depositions in order to perpetuate testimony so that he can discover the identity of those responsible for his defamation before the statute of limitations expires.

## II.   ARGUMENT

### A. Timothy Jackson Meets the Good Cause Standard for Expedited Discovery

Courts grant leave to conduct expedited discovery upon a showing of good cause. "Federal Rule of Civil Procedure 26(d)(1) provides that a party may not seek discovery from any source before the parties have a conference, except in proceedings preempted by Rule 26(a)(1)(B), *or when authorized by the Federal Rules, by stipulation, or by court order*" (emphasis added). *Cothran v. Koomson*, No. 4:20-CV-481-SDJ, 2020 U.S. Dist. LEXIS 204840, at *3–4 (E.D. Tex. Nov. 3, 2020) (granting *ex parte* motion for expedited discovery to serve third-party subpoenas).

In the Fifth Circuit, "[e]xpedited discovery is permitted upon a showing of good cause." *Gutierrez v. United States*, No. L-12-18, 2012 U.S. Dist. LEXIS 201704, at *3 (S.D. Tex. Mar. 12, 2012) (citing *El Pollo Loco, S.A. de C.V. v. El Pollo Loco, Inc.*, 344 F. Supp. 2d 986, 991 (S.D. Tex. 2004); *see also Cothran v. Koomson* at *3, *supra*, (collecting cases for holding "several other federal courts within the Fifth Circuit, including the Eastern District of Texas, have used a 'good cause' standard to determine whether a party is entitled to early discovery"); 8A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, & Richard L. Marcus, Federal Practice and Procedure § 2046.1 (3d ed. 2010) ("Although the rule does not say so, it is implicit that some showing of good cause should be made to justify such an order . . .").

7

Here, good cause is shown by the requirement that Plaintiff must join any additional Defamation Defendants within the one-year window for Texas defamation claims. Tex. Civ. Prac. & Rem. Code § 16.002.

No later than July 27, 2020, defamatory statements circulated, baselessly accusing Jackson of "racist behavior" for no other reason than scholarly disagreement. See Ex. 2. It is also clear that the defamatory statements circulated by the Defamation Defendants evolved. The petition published to Twitter on July 27, 2020 by Defamation Defendant Rachel Gain differs from that circulated by Mr. Kohanski two days later. *Compare* Dk#1-5 at JACKSON000227 with Ex. 2.

The Court should therefore grant Jackson expedited, limited discovery as necessary to identify, at minimum, what was said about him and by whom before the statute of limitations expires on July 27, 2021.

Given the pace of litigation, especially in the time of COVID-19, waiting for discovery powers in the ordinary course of this civil action, which can begin only after the parties' Rule 26(f) conference, will almost certainly foreclose these claims.

By contrast, no Defendants will be prejudiced. The expedited discovery will simply reveal information necessary to resolve this case. Therefore, the Court should grant the limited discovery set forth in Section II.C below.

## B. In the alternative, the Court Should Grant Plaintiff Leave to Conduct a Limited Number of Depositions to Perpetuate Testimony

In the alternative, Timothy Jackson petitions to perpetuate testimony under Fed. R. Civ. P. 27:

> A person who wants to perpetuate testimony about any matter cognizable in a United States court may file a verified petition in the district court for the district where any expected adverse party resides.

> The petition must ask for an order authorizing the petitioner to de-
> pose the named persons in order to perpetuate their testimony.

*See In re Drake*, No. 4:17-MC-69-ALM, 2017 U.S. Dist. LEXIS 204330, at *3–*4 (E.D.

Tex. Oct. 2, 2017). The standards are straightforward. The petitioner must:

- be stated in the title to the petition;

- "expect[] to be a party to an action cognizable in a United States court but [which he] cannot presently bring ... or cause it to be brought";

- state the subject matter of the expected action and his interest;

- state the facts that the petitioner wants to establish by the proposed testimony and the reasons to perpetuate;

- state the names or description of the persons whom the petitioner expects to be adverse parties and their addresses, so far as known;

- state the name, address, and expected substance of the testimony of each pro- posed deponent.

*Id.*, at *3–*4. The petitioner must also show "that the perpetuation of testimony is

necessary to prevent the evidence from being lost." *In re Caraway*, 303 Fed. App'x 220,

221 (5th Cir. 2008).

Here, Professor Jackson satisfies these conditions.  He has verified this Petition

and states his name in its caption. He is already party to the action, and seeks to per-

petuate testimony to join, if necessary, additional Defamation Defendants who cannot

presently be brought into the case because their identity is unknown or because the

evidence necessary to plead a claim against them is unknown.

The subject matter of the expected action is the defamatory statements made

against Jackson and republished by UNT, including but not limited to a so-called Re-

port of the Ad Hoc Panel published November 25, 2020. Dk#1-5.

Timothy Jackson also identifies the names of expected adverse parties in Section II.C below: in particular, Eileen Hayes and Benjamin Brand. It is expected that the testimony sought will reveal additional Defendants, for example, within the Society for Music Theory, who have projected their defamatory publications into the state of Texas with the express purpose of harming Timothy Jackson in Texas.

The expected substance of the deposition testimony is the identity of those who organized the various petitions against Timothy Jackson in the July 2020 publications defaming him for "racist actions" and "racist behaviors," as well as the persons responsible for authoring them, and the substance of their defamatory statements. It is also expected that the discovery will reveal additional defamatory statements.

Without the perpetuation of this testimony, evidence is likely to be lost. The as-yet unknown defendants may either lose or otherwise destroy, whether inadvertently or otherwise, relevant evidence necessary for this case.

### C.  The Limited Expedited Discovery Plaintiff Seeks

Plaintiff seeks to depose the three individuals listed below:

*1)  Rachel Gain*

Rachel Gain is a Defamation Defendant in the above-captioned case.

**Subject Matter**:

Gain tweeted a version of a student petition on July 27, 2020, defaming Timothy Jackson and appears to have led this effort. It is expected that she can identify authors and collaborators in publishing these defamatory statements and can identify other authors were involved in publishing or collaborated in publishing the defamatory statements against Timothy Jackson. It is expected that her testimony will

identify additional Defamation Defendants to be joined in this civil action before the statute of limitations expires on July 27, 2021.

**Contact**: Gain can be reached through counsel, Assistant Attorney General Matthew Bohuslav, who has appeared on her behalf.

*2) Levi Walls*

Levi Walls is a graduate student of UNT and was the graduate student editor of the Journal until July 27, 2020.

**Subject Matter**: Levi Walls quit as graduate student editor of the Journal on July 27, 2020 after the social-media mob attacked Timothy Jackson and it became clear that UNT would support their assault on academic freedom and protected speech with the full authority of the state. Under this pressure, Walls wrote to Jackson on January 25, 2020: "It's very worrying, especially as I don't want my career to be ruined before it properly began. I have a family to take care of now." Dk#1-1, ¶ 135. He followed up on January 27, 2020 by publicly renouncing his own work on the Journal, professing himself an acolyte of Philip Ewell, and denouncing Timothy Jackson, whom he had only a few months earlier asked to be his dissertation advisor. Dk#1-6. Significant portions of Walls' apologia (published to Facebook) are flatly contradicted by his own contemporary emails in the internal correspondence of the Journal. Dk#1-6. He was nevertheless feted as a hero of the social media mob and UNT's faculty. Walls also claimed to have submitted a so-called "whistleblower" complaint at some point in February 2020 to Division Chair Benjamin Brand, apparently alleging that Timothy Jackson insufficiently understood "politically correct discourse and race relations" and forced him to publish articles against his will, and that Timothy Jackson

committed so-called "racist actions" as referred to in the Defamation Defendant's pe-titions, which, on information and belief, Walls endorsed. *See* Dk#1-1, ¶¶ 30-31. Walls is expected to testify as to the identity of authors and collaborators in the defamatory petitions circulated in July 2020. It is expected that these authors and collaborators will be joined as Defamation Defendants before the statute of limitations expires.

**Contact**:

915 Collier Street

Denton, Texas 76201

*3)  Peter Kohanski*

Peter Kohanski was at all relevant times President of the Graduate Association of Musicologists *unt* Theorists at UNT.

**Subject Matter**: Kohanski circulated a notification on July 29, 2020, soliciting signatures for a petition calling for Timothy Jackson to be fired, the Journal to be elim-inated, and the Center to be canceled. Exhibit 2. He is expected to reveal signatories to, authors of, and collaborators in the petition accusing Timothy Jackson of "racist actions" and "racist behaviors." It is expected that these authors and collaborators will be joined as Defamation Defendants to the extent additional UNT faculty or fac-ulty beyond UNT are identified.

**Contact**:

426 Audra Lane Apt. H

Denton, Texas 76209-6339

*4)  Benjamin Brand*

Benjamin Brand was, at all relevant times, the Chair of the Division of Music History, Theory, and Ethnomusicology and Timothy Jackson's immediate supervisor.

**Subject Matter**: It is expected that Brand's testimony will reveal defamatory statements sufficient to join him as a Defendant in this case. He was the alleged recipient of a so-called "whistleblower" complaint of Graduate Student Editor Levi Walls at some point in February 2020. Walls purports to have alleged that Timothy Jackson insufficiently understood "politically correct discourse and race relations," among other supposed "racist actions" as referred to in the Defamation Defendant's petitions. See Dk#1-1, ¶¶ 30–31. Although Brand did not endorse the defamatory petition, he gave live testimony to the so-called "Ad Hoc Panel" concerning alleged whistleblowing activity in February 2020 (which he never reported as whistleblowing at the time). The "Ad Hoc Panel" credited Brand's condemnation of Jackson. Yet contemporary documents demonstrate that references to "whistleblowing" are demonstrably false. Brand later claimed that Timothy Jackson had engaged in "editorial mismanagement" to justify his removal from the Journal. Because no such "mismanagement" took place and such allegations are directly disproven by contemporaneous documents, it is expected that Brand will give testimony identifying his own role and that of other as-yet-unjoined faculty in the defamation of Timothy Jackson sufficient to join Brand and others as Defamation Defendants.

**Contact**:

4111 Cole Avenue #31

Dallas, Texas  75204

13

*5)  Frank Heidlberger*

Frank Heidlberger is a Defamation Defendant.

**Subject Matter**: Frank Heidlberger sent an email on July 30, 2021 announcing not only, "I enthusiastically endorse this [defamatory faculty] letter"; but he also announced that Dean of the College of Arts and Communication at the University of Wisconsin Whitewater was leading so-called "antiracism" efforts outside of Texas and was projecting these activities into the State of Texas to edit one of the petitions which included defamatory statements against Timothy Jackson.  Exhibit 1.  It is expected that Heidlberger will testify as to other participants, within and outside UNT, who participated in this defamatory action and to the substance of their defamatory statements.

**Contact:** Frank Heidlberger can be reached through counsel, Assistant Attorney General Matthew Bohuslav, who has appeared on his behalf.

*6)  Written Discovery*

In addition, Plaintiff petitions and moves for leave to request the following documents, either through Requests for Production under Fed. R. Civ. P. 30, or under a Subpoena Duces Tecum through his Petition under Fed. R. Civ. P. 27.

1) All documents concerning evidence received by or considered by the "Ad Hoc Panel," including but not limited to transcripts or recordings of interviews or other correspondence with witnesses or concerning the weighing of witness statements.

2) All correspondence between Levi Walls and Benjamin Brand concerning Timothy Jackson from January 1, 2020, to present, including but not limited to any

14

alleged efforts at "whistleblowing" related to the Journal or allegedly racist actions or behaviors of Timothy Jackson.

3) All documents in the possession, custody, or control of each witness, including those disseminated through social media of any kind, concerning communications or statements made or received concerning Timothy Jackson or the Journal of Schenkerian Studies from July 1, 2019, through present.

4) All drafts or versions of petitions or open letters as referred to by Frank Heidlberger, as set forth in Exhibit 1, whether or not submitted to any administrative official or faculty member of UNT or otherwise published, including a list of all signatories to any such document.

5) All drafts or versions of petitions or open letters as referred to by Peter Kohanski, as set forth in Exhibit 2, whether or not submitted to any administrative official or faculty member of UNT or otherwise published, including a list of all signatories to any such document.

Respectfully submitted,

Date: March 8, 2021

/s/Michael Thad Allen

Michael Thad Allen
D. Conn. Bar No. CT29813
admitted *pro hac vice*
Lead Attorney
ALLEN HARRIS PLLC
PO Box 404
Quaker Hill, CT  06375
(860) 772-4738 (phone)
(860) 469-2783 (fax)
mallen@allenharrislaw.com

Jonathan F. Mitchell
Texas Bar No. 24075463
MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Plaintiff*

**CERTIFICATE OF CONFERENCE**

We certify that we have complied with the meet and confer requirements in Local Rule CV-7(h), and that counsel for the defendants opposes this motion. We also certify that we conducted the personal conference required by Local Rule CV-7(h) on March 5, 2021 over the telephone, and that Michael Thad Allen, lead counsel for the plaintiff, Jonathan F. Mitchell, local counsel for the plaintiff, and Matthew Bohuslav, counsel for the defendants, participated in the conference. We were unable to reach agreement because Attorney Bohuslav's position on behalf of his client is that no dis-covery should commence until after the parties 26(f) conference, and our discussions have conclusively ended in an impasse.

 /s/ Michael Thad Allen
Michael Thad Allen
*Lead Counsel for the Plaintiff*

 /s/ Jonathan F. Mitchell
Jonathan F. Mitchell
*Local Counsel for the Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on the date specified in the caption of this document, I elec-
tronically filed the foregoing with the Clerk of Court, to be served on all parties of
record via the CM/ECF system.

/s/Michael Thad Allen
Michael Thad Allen