IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| TIMOTHY JACKSON, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 4:21-cv-00033 |
| | § | |
| LAURA WRIGHT, et. al., | § | |
| *Defendants*. | § | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

TO THE HONORABLE JUDGE AMOS L. MAZZANT:

**A.     Jackson lacks standing to sue the Board Defendants.**

Jackson's Complaint alleges only three injuries in support of his First Amendment retaliation claim: (1) the commissioning of the ad hoc panel to review the publication practices of a UNT journal; (2) the issuance of the Panel's report; and (3) the alleged "decision to block" Jackson from future involvement in the Journal of Schenkerian Studies (the "Journal"). Dkt. No. 1 at ¶63. Jackson's Response only addresses his standing to complain of the third of these alleged injuries and appears to concede that the first two are past injuries that he lacks standing to pursue. As set forth below, Jackson lacks standing to complain of the remaining injury alleged in his complaint: the alleged "decision to block" Jackson from future involvement in the Journal.

As a preliminary matter, while Jackson argues in his Response that UNT "removed" him from the Journal, that is not what he pleads in his Complaint. Instead, he alleges in his Complaint that his department chair, Benjamin Brand, *threatened* to remove him from the Journal. Dkt. No. 1 at 2 (alleging "threats to remove" Jackson from the Journal); *id*. at ¶60 (alleging that Brand

informed him "the he *would be removed* from the Journal"). Further, the correspondence Jackson cites as evidence of these "threats" demonstrates that no final decision about Jackson's future role in the Journal had been made. Dkt. No. 1-22 (Brand writing that he would not "support" Jackson having a role in the Journal's "day-to-day operations" and "its editorial process," but not communicating that any final decision had been made or that is was Brand's decision to make). Indeed, Jackson's sworn affidavit attached to his Complaint states clearly that he "currently serve[s] as a member of [the Journal's] editorial staff." Dkt. No. 1-1 at ¶4. A threat is a discrete past event, not an ongoing injury capable of redress here.

The Court need not review the new evidence and new allegations Jackson provides in his Response because they are extraneous to the Complaint. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (Rule 12(b)(6) review) *Robinson v. TCI/US West Commc'ns Inc.*, 117 F.3d 900, 904 (5th Cir. 1997) (Rule 12(b)(1) review). In any event, Jackson attaches evidence that undermines his arguments. The March 2, 2021 letter to Jackson from Provost and Vice President for Academic Affairs Jennifer Cowley demonstrates that membership of the Journal's editorial board will be determined by a new editor-in-chief who is yet to be selected through a national search by a five-member search committee. Dkt. Nos. 16-2, 16-3.[1] Even if the future removal from an advisory role on a university publication were a cognizable injury, Jackson cannot show that such

---

[1] The Court may review *undisputed* evidence to resolve a Rule 12(b)(1) motion. *Robinson*, 117 F.3d at 904. While Defendants dispute the facts set forth in Jackson's second affidavit (Dkt. No. 16-1), Defendants do not dispute the facts set forth in the two attachments to his affidavit (Dkt. Nos. 16-2, 16-3).

action is "real and immediate" because the person who will decide the membership of the editorial board has not even been determined yet. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).[2]

Finally, Jackson erroneously argues that the Board of Regents' governing authority over the university alone is sufficient to establish that his alleged injuries are traceable to the Board Defendants. *See* Dkt. No. 16 at 12–13. Not so. Indeed, the Honorable Judge Lee Yeakel rejected that same argument in a recent unpublished opinion involving a claim of First Amendment retaliation:

> The Court concludes that Doe has failed to allege that there is any causal connection between Doe's injury—dismissal from UT Health—and any action by the Board [of Regents]. Doe does not identify any conduct or act by the Board that affected Doe one way or another. . . . Doe argues that because the Board is responsible for overseeing the management of UT Health, the compelled conclusion is that the Board caused Doe's injury—Doe's dismissal from UT Health after failing the required preliminary examination three times. The Court concludes this is inadequate to show that the Board engaged in any act that contributed to Doe's dismissal from UT Health. Doe has failed to show he has standing to proceed with the claims alleged against the Board.

*Doe v. Board of Regents of the Univ. of Tex. System*, No. A-19-CV-0415-LY, at 7–8 (W.D. Tex. October 24, 2019) (unpublished) *aff'd by Doe v. Harrell*, No. 19-51013, ---F. App'x---, 2021 WL 70525 (5th Cir. Jan. 7, 2021) (Exhibit A.). Of course, that holding comports with settled law that a plaintiff must show "a *causal connection* between the injury and the conduct complained of—the injury must be fairly traceable to the challenged action *of the defendant*." *Bennett v. Spear*, 520 U.S.

---

[2] Jackson also points to his allegation that Brand threatened to "eliminate resources" previously provided to the Journal and Center of Schenkerin Studies even though his Complaint does not identify that allegation as serving a basis for his retaliation claim. Dkt. No. 1 ¶¶62–64. Regardless, Jackson does not identify the "resources" or plead any impact on him personally. Thus, his vague allegation fails to describe a concrete and particularized injury that is imminent.

154, 167 (1997) (emphasis added). Jackson attempts to avoid this requirement by asserting (at 13) that he need not plead that the Board Defendants "caused his injuries." His assertion is plainly contrary to this settled law. *E.g.*, *Bennett*, 520 U.S. at 167. And contrary to Jackson's argument (at 13), this case is unlike constitutional challenges to university policies, such as affirmative action, because Jackson does not complain about any policy adopted or implemented by the UNT Board of Regents.[3] Instead, Jackson argues that certain UNT officials acted *against* university policy. Jackson lacks standing.

**B.     Sovereign immunity bars Jackson's claims against the Board Defendants.**

Jackson's arguments in favor of the application the *Ex parte Young* exception to sovereign immunity are similar to his arguments in support of standing. The arguments fail for similar reasons. Just as he alleges no ongoing injury, *see supra* Part A., he alleges no ongoing violation of federal law. His assertion (at 16) that "the university is *currently* excluding him from the Journal" is not pleaded in his Complaint and is contrary to his sworn affidavit attached to his Complaint. *See* Dkt. No. 1 at 2 (alleging only "threats to remove" Jackson from the Journal); Dkt. No. 1-1 at ¶4 (Jackson swearing that he "*currently* serve[s] as a member of [the Journal's] editorial staff.") (emphasis added). Had UNT in fact "banished" Jackson from the Journal, one would expect he might have pleaded that fact and sought reinstatement to the Journal as relief. Tellingly, he requests only an injunction against future unspecified "adverse action." Dkt. No. 1 at ¶76. Because "deterrence interests are insufficient to overcome the dictates of [State sovereign immunity]," he

---

[3] Jackson cites only *Fisher v. Univ. of Tex. at Austin*, 758 F.3d 633 (5th Cir. 2014) as support for his theory, but that case did not address the issue at all.

must plead an ongoing violation of federal law. *Green v. Mansour*, 474 U.S. 64, 68 (1985). A past "threat" is not an ongoing violation and Jackson does not even argue that any of his other alleged injuries falls under the *Ex parte Young* exception to sovereign immunity.

Nor are the Board Defendants proper parties under *Ex parte Young* because Jackson fails to plead any facts to show that the Board Defendants are "state officials acting in violation of federal law." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004). Jackson argues that the Board Defendants have "some connection" to the alleged retaliatory actions by virtue of their governing authority of the university. Dkt. No. 16 at 15. Again, Jackson's argument misses the mark. The general authority to implement law and policy is insufficient to establish "some connection" to a challenged action for the purpose of *Ex parte Young. See, Texas Democratic Party v. Abbott*, 961 F.3d 389, 400–01 (5th Cir. 2020) ("We do know, though, that it is not enough that the official have a '*general* duty to see that the laws of the state are implemented.'") (quoting *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014)) (emphasis added in original). And Jackson's analogy to an affirmative-action challenge fails because Jackson does not challenge here any policy adopted or implemented by the Board of Regents. His sole reliance on *Fisher*, 758 F.3d 633, is again misplaced because that case did not address the application of *Ex parte Young*.

Finally, Jackson's vague request for an injunction against future "adverse actions" cannot disguise impermissible injunctive relief that would require affirmative action on discretionary matters. *See Richardson v. Texas Secretary of State*, 978 F.3d 220, 241–42 (5th Cir. 2020). It would be impermissible, for example, for the Court to issue an injunction that requires UNT officials to provide Jackson with certain Journal activities—like inclusion in a search committee for a new

5

Journal editor (about which he appears to complain)—or that mandates the levels of "resources" UNT must provide to its own centers and publications. Such an injunction "would violate sovereign immunity under *Ex parte Young*, and 'would place the court on the wrong side of the line thought to divide 'discretionary' from 'ministerial' functions.'" *Id.* at 241 (quoting *Vann v. Kempthorne*, 534 F.3d 741, 753 (D.C. Cir. 2008) (citing *Hagood v. Southern*, 117 U.S. 52 (1886))).

Jackson's claims are barred by sovereign immunity.

**C.    Jackson fails to state a claim for First Amendment retaliation.**

The Board Defendants' motion to dismiss argues that Jackson failed to plead an adverse employment action that supports a claim for a violation of the First Amendment. Jackson spills much ink on issues irrelevant to that inquiry, including on the distinction between the *Garcetti* and *Pickering* tests. *Garcetti* merely added a threshold inquiry to the *Pinkering* test. *See Davies v. McKinney*, 518 F.3d 304, 312 (5th Cir. 2008). That threshold inquiry addresses whether a public employee's particular speech is entitled to constitutional protection; it does not alter the standard for what constitutes an adverse employment action. *Id.* Both tests require the showing of an adverse employment action, which is the only element the Board Defendants' motion addresses. Whether Jackson "alleged any adverse employment action by [Board Defendants] is a question of law." *Breaux v. City of Garland*, 205 F.3d 150, 161 (5th Cir. 2000).

In First Amendment retaliation cases, this Court has long held that "[a]dverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and [formal] reprimands." *Benningfield v. City of Hous.*, 157 F.3d 369, 376 (5th Cir. 1998); *see also Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999) ("[T]his court has required something more than" "trivial acts of

6

retaliation."); *Colson v. Grohman*, 174 F.3d 498, 510, 513 n.8 (5th Cir. 1999) ("[A] plaintiff must cross a certain threshold of harm before [he] can bring a claim for First Amendment retaliation" because not all "disadvantages imposed for the exercise of First Amendment freedoms constitute actionable retaliation."). Jackson attempts to shoehorn his allegations into this standard by claiming that the Ad Hoc Panel's report qualifies as a "reprimand" and the alleged threat to remove him from the Journal constitutes a "demotion." Jackson's arguments lack merit.

First, as discussed above, the Court lacks jurisdiction to entertain Jackson's retaliation claim based on the alleged "reprimand" because he lacks standing to assert it and because it is barred by sovereign immunity. Jackson's Response does not argue otherwise. "'[S]tanding is not dispensed in gross'; a party must have standing to challenge each 'particular inadequacy in government administration.'" *Legacy Cmty. Health Servs., Inc. v. Smith*, 881 F.3d 358, 366 (5th Cir. 2018). Regardless, his "reprimand" claim fails.

To be sure, the Ad Hoc Panel's report found "several structural problems" with the editorial and review process of the Journal, but the report does not constitute a formal reprimand of Jackson. Indeed, Jackson points to no statement in the report faulting Jackson, as opposed to the structure and practices of the "student-run journal" more generally. Dkt. No. 1-5 at 7. Regardless of whether Jackson takes any criticisms of the Journal's editorial practices personally, such criticisms are not formal reprimands. *Mylett v. City of Corpus Christi*, 97 F. App'x 473, 476 (5th Cir. 2004) (distinguishing "formal reprimands" from mere "criticism" that cannot constitute an adverse employment action); *Benningfield v. City of Houston*, 157 F.3d 369, 377 (5th Cir. 1998) (what plaintiff characterized as "reprimands" were "mere criticisms" not actionable as "[f]ormal

7

reprimands."); *Harrington v. Harris*, 118 F.3d 359, 366 (5th Cir. 1997) (noting that "mere criticisms do not give rise to a constitutional deprivation for purposes of the First Amendment.").

Nor is a "threat" to remove Jackson from an advisory role on a student journal a "demotion," and Jackson cites no support for his argument that actual removal from the Journal would constitute a "demotion." Indeed, "a plaintiff's subjective perception a demotion has occurred is not enough," *Forsyth v. City of Dallas*, 91 F.3d 769, 774 (5th Cir. 1996), and undersigned counsel is unaware of any case in which a court found that an employee was "demoted" despite no change in title, position, duties, and benefits. Jackson's advisory role on a "student-run" publication is an "administrative" activity too "trivial" to be of constitutional import. *Dorsett v. Bd. of Trustees for State Colleges & Univ.*, 940 F.2d 121, 123–24 ("A federal court is simply not the appropriate forum in which to seek redress for such harms.").

Jackson also advocates for the application of the nonemployment standard to this employment case. Dkt. No 16 at 21 (quoting *Morris v. Powell*, 449 F.3d 682, 687 (5th Cir. 2006). But he cites no authority for the application of that standard here, and the Firth Circuit has consistently maintained the distinction between employment cases and nonemployment cases. *E.g.*, *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002) (contrasting First Amendment retaliation cases in "employment" context with those brought by "an ordinary citizen."); *Slegelmilch. Pearl River Cnty. Hosp. & Nursing Home*, 655 F. App'x 235, 239-40 (5th Cir. 2016) (same). That Jackson is employed in an academic setting does not alter the employment nature of his claims. In any event, his claims would fair no better under the nonemployment test. *See, e.g. Johnson v. Bowe*, No. 19-40615, ---F. App'x---, 2021 WL 1373959, *5 (granting motion to dismiss proper because

8

"criticism, false public accusations and attempted criminal investigation are not substantial enough injuries to 'chill a person of ordinary firmness.'"); *id* at n.14 (collecting Fifth Circuit cases on nonactionable harms.). Jackson fails to state a claim for First Amendment retaliation.

### D. Jackson fails to state a claim for defamation.

Jackson argues (at 26) that "Texas law is clear that baseless accusations of 'racism' are actionable," but the three opinions he cites in support of that claim do not address that issue at all. In *Freedom Newspapers v. Cantu*, the court addressed whether a quotation attributed to a political candidate was "substantially true" and whether the newspaper acted with actual malice. 126 S.W.3d 185 (Tex. App.—Corpus Christi-Edinburg 2003), *rev'd by* 168 S.W.3d 847 (2005). The case neither involved a claim of "racism" nor the argument that the newspaper was expressing a nonactionable opinion. And contrary to Jackson's suggestion (at 26), the court in *Baker v. Orange Panda, LLC* explicitly declined to address the issue of whether the statement "Webb is a racist" was actionable under Texas law. No. 04-19-00846-CV 2020 WL 6293150, at *8 n.7 (Tex. App.—San Antonio, Oct. 28, 2020) ("Baker further argues the "Webb is a racist" statement is not actionable because it is a statement of opinion rather than fact. Because of our disposition of this statement later in this opinion, we need not address this argument."). Likewise, the court in *City of Brownsville v. Pena* did not address whether labeling someone "racist" was a nonactionable opinion. 716 S.W.2d 677 (Corpus Christi-Edinburg 1986), *disapproved by Davis v. City of San Antonio*, 752 S.W.2d 518 (Tex. 1988). That issue was neither raised by the parties nor discussed by the court. None of the cases Jackson cites support his argument or overcome clear precedent that "statements that are not verifiable as false cannot form the basis of a defamation claim." *Scripps*

9

*NP Operating, LLC v. Carter*, 573 S.W.3d 781, 794 (Tex. 2019).[4] Jackson does not even attempt to explain how any characterization of his attack on Ewell as "racist" is subject to objective verification.

Instead, Jackson retreats by suggesting (at 27) that other statements by the Defamation Defendants are subject to objective proof even though his Complaint only identifies the Defamation Defendants' use of the term "racist" as supporting his defamation claim, *See* Dkt. 1 ¶¶65–75. Regardless, any statements that Jackson engaged in "ad hominem" and "personal attacks" are equally protected as nonactionable opinion. Likewise, while his Complaint does not identify as defamatory a statement that Ewell was not invited to respond to the articles about his work, any such statement would be true and thus not defamatory. The Journal's call for papers that Jackson cites merely "invite[d] interested parties to submit essay responses *to Ewell's paper*." Dkt. No. 1-11 (emphasis added). Thus, while Jackson might reasonably argue that Ewell was invited to respond to his *own* paper, it is undisputed that Ewell was never invited to respond to the articles about his paper. Dkt No. 1-5 at 11 (Jackson told the panel Ewell was not invited so that commenters on his work "could express their views freely"). Jackson's defamation claims must be dismissed.

Defendants respectfully request that the Court grant their motions to dismiss.

---

[4] Jackson's citation to *Como v. Riley* does not advance his claim because the alleged defamatory email in that case stated that the plaintiff's "office cubicle contained a statuette of a black man hanging from a white noose" which is a fact subject to objective verification. 731 N.Y.S2d 731 (N.Y. App. Div. 2001). The Constitution fully protects one's right to opine about someone's "action," and Jackson's attempt to distinguish "action" from "speech" rings particularly hollow here where the entire thrust of his Complaint is that the Defamation Defendants were addressing his "action" of attacking Ewell in a university journal. Jackson does not identify any other described "action" he claims is subject to objective verification as false.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief, General Litigation Division

*/s/ Matthew Bohuslav*
MATTHEW BOHUSLAV
Texas Bar No. 24069395
Assistant Attorney General
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Phone: 512-463-2120
Fax: 512-320-0667
matthew.bohuslav@oag.texas.gov
***Attorneys for Defendants***

11

## **CERTIFICATE OF SERVICE**

   I hereby certify that on the 19th day of April, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which automatically provided notice to the following CM/ECF participants:

Jonathan F. Mitchell
Mitchell Law, PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
jonathan@mitchell.law

Michael Thad Allen, Esq.
Allen Law, LLC
PO BOX 404
Quaker Hill, CT 06375
m.allen@allen-lawfirm.com
***Attorneys for Plaintiff***

               */s/ Matthew Bohuslav*
               MATTHEW BOHUSLAV
               Assistant Attorney General