UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **Timothy Jackson**,<br><br>              Plaintiff,<br><br>v.<br><br>**Laura Wright**, **Milton B. Lee**, **Melisa Denis**, **Mary Denny**, **Daniel Feehan**, **A.K. Mago**, **Carlos Munguia**, and **G. Brint Ryan**, each in their official capacities as members of the Board of Regents for the University of North Texas System; **Rachel Gain**; **Ellen Bakulina**; **Andrew Chung**; **Diego Cubero**; **Steven Friedson**; **Rebecca Dowd Geoffroy-Schwinden**; **Benjamin Graf**; **Frank Heidlberger**; **Bernardo Illari**; **Justin Lavacek**; **Peter Mondelli**; **Margaret Notley**; **April L. Prince**; **Cathy Ragland**; **Gillian Robertson**; **Hendrik Schulze**; **Vivek Virani**; and **Brian F. Wright**, Defendants. | Case No. 4:21-cv-00033-ALM |

**PLAINTIFF'S SUPPLEMENTAL BRIEF ON
EVIDENTIARY HEARING ON JURISDICATION OF OCTOBER 29, 2021**

In compliance with Eastern District of Texas L.R.CV-7(k), Plaintiff respectfully submits this supplemental briefing on the Court's evidentiary hearing concerning jurisdiction to address this Court's questions concerning remedies. ECF No. 42.

**I. BACKGROUND**

As established at the evidentiary hearing concerning jurisdiction, the University of North Texas (UNT) has brought the Journal of Schenkerian Studies to a standstill, paralyzing its operations and removing Plaintiff Timothy Jackson from his position as a

1

managing member of the editorial board. The State characterized any remedy involving reinstatement of the Journal as "compelled speech," turning the actual facts upside down.

As established in Professor Jackson's affidavit submitted with his Complaint (ECF No. 1-1) as well as through testimony and admissible evidence entered into the record at this Court's October 29, 2021 hearing:

- Immediately following Professor Jackson's expression of unpopular viewpoints in Volume 12, he was immediately branded a "racist" and subjected to multiple petitions calling for the elimination of the Journal, the elimination of his Center for Schenkerian Studies, and even his own termination.

- Professor Jackson submitted a grievance requesting the University protect his academic freedom according to its established policies. This was ignored.

- Instead, UNT acted outside of any of its established policies, rules, or procedures and convened a so-called "ad hoc" panel to investigate Timothy Jackson and the Journal.

- The so-called "ad hoc" panel published a report on November 25, 2020 (Report) setting fourth various defamatory statements, including but not limited to recounting a gangster-like assault/threat against a student alleged to have been committed by Professor Jackson. Expedited discovery subsequently revealed this and other supposed findings of fact in the Report to be false.[1]

- The "ad hoc" panel condemned Professor Jackson, and Professor Jackson alone, for supposed editorial mismanagement of the Journal. The Report remains published on the University website to this day.

- Professor Jackson responded as directed by UNT, rebutting the Report's findings with actual evidence. UNT suppressed this response and refused to publish it on its website.

- UNT rejected Professor Jackson's proposed reorganization of the Journal, particularly measures designed to protect academic freedom and the freedom of speech at UNT.

---

[1] Affidavit of Michael Thad Allen, **Exhibit A** (Deposition of Levi Walls). Mr. Walls testified that they went into Professor Jackson's car to escape the weather, that Professor Jackson did not force him into the car, use coercion in any way, or threaten him; and Mr. Walls testified that he could have said, "no."

- Instead, UNT convened a "search committee," staffed with personnel with little or no knowledge of the Journal's subject matter (music theory (generally) and the technique of him and Schenkerian analysis (specifically)). One exception was Defendant Ellen Bakulina, the sole member of the UNT faculty on the committee with any grounding in Journal's subject matter, yet Bakulina had vowed repeatedly and publicly to eliminate the Journal, censure its editorial staff, especially Timothy Jackson, and terminate Professor Jackson.

- Unsurprisingly, the so-called "search committee" received no applications. Its very composition was pretextual.  It is an administrative vehicle to kill the Journal.

- UNT admitted at the Court's hearing that the Journal has ceased operations.

- Timothy Jackson has been unable to do anything to revive the Journal for the past 15 months.

## II.   THIS COURT HAS THE AUTHORITY TO ORDER INJUNCTIVE AND DECLARATORY RELIEF

This Court asked Plaintiff to explain what remedies are within the Court's power to address the ongoing suppression of Plaintiff's First Amendment rights and the injuries done to him and, through him, to the free expression on matters of public concern addressed by the Journal.

### A. The Court Has the Authority to Reinstate Timothy Jackson to His Position on the Journal's Editorial Board and Oversee the Reconstitution of the Journal

This Court clearly can enjoin UNT from removing Timothy Jackson from his position as *primus inter pares* on the editorial board of the Journal.  The Court should order UNT, through the Regents Defendants, to restore Timothy Jackson to the *status quo ante*. Professor Jackson can then reconstitute the Journal--with robust protections against the assault on academic freedom mounted by UNT--so that the important work of Schenkerian analysis may continue.

UNT now suppresses Schenkerian analysis on an ongoing basis as some sort of "systemic racism" or "racist action."  As preposterous as this sounds, it is not exaggeration.

3

These are the words of the various petitions circulated against Professor Jackson, including those of its *officer* Dean Richmond and its faculty members, as published by Defendant Ellen Bakulina, whom UNT placed on the search committee nominally tasked with replacing Professor Jackson but which, *de facto*, has killed the Journal.

The injunctive relief requested by Jackson is no different from other cases in which public schools illegally suppress free expression. For example, in *Thomas v. Varnado* , 511 F. Supp. 3d 761 (E.D. La. 2020), a high school senior painted then-sitting President Donald Trump's likeness on the school blacktop during a "school pride and comradery" event. Id. at 765. For $25, students were allowed to paint a parking space. Id. However, the School declared this painting "too political," invoked the supposed offense felt by African Americans (some of whom may have even voted for the former president), and painted over it with gray paint. Id. at 765. The painting was canceled just as UNT canceled the Journal here.

Noting that "any constitutional violation constitutes an irreparable injury," the court ordered that the student be allowed to repaint the parking spot. *Varnado* at 769 (citing *Arnold v. Barbers Hill Indep. Sch. Dist.*, No. 4:20-CV-1802, 2020 U.S. Dist. LEXIS 148137, 2020 WL 4805038, at *12 (S.D. Tex. Aug. 17, 2020) ("It has repeatedly been recognized by the federal courts at all levels that violation of constitutional rights constitutes irreparable harm as a matter of law.")).

No doubt, the high school could have convened an "ad hoc" committee outside of its normal rules and procedures to regulate "best practices for parking space management" or some other euphemistic administrative duty. Here, in the name of editorial "management" and "best practices," UNT has killed off the Journal, halted its publication, ignored Professor

Jackson's grievance, rendered the Journal's prior editorial board defunct, and approved-- even praised -- the Journal's acting student editor Levi Walls -- for quitting.  UNT now claims immunity from injunctive relief because its series of pretextual committees has stifled the Journal.  If UNT's approach became law, this would become a playbook for college administrators seeking to suffocate the First Amendment in committee.

UNT's search committee is nominally tasked with appointing a new editor and replacing the former editorial board.  Yet UNT filled the committee with individuals who either have no substantive knowledge of the Journal's subject matter or who have publicly dedicated themselves to the Journal's and Timothy Jackson's censure and destruction.  It is undisputed and unsurprising that the committee received no applications.

The injunctive relief sought here is straightfoward and simple: restore Timothy Jackson to head the editorial board.  If necessary, it is also within this Court's power to order both Jackson and UNT to report back to the Court at such intervals as the Court may deem just and proper to demonstrate the restoration of the Journal to its proper place in free academic scholarship.

## B. Declaratory Judgment is Itself A Sufficient Remedy To Justify Jurisdiction

Even if Timothy Jackson had no plausible claim for prospective injunctive relief, which is not the case here, he is still entitled to declaratory relief as a viable remedy.  See e.g. *Reitz v. City of Abilene*, No. 1:16-CV-0181-BL, 2017 U.S. Dist. LEXIS 110673, at *20-21 (N.D. Tex. May 25, 2017) (holding, "If Plaintiff sought prospective relief, he would lack constitutional standing . . . However . . . Plaintiff's requested declaratory relief thus differs in material ways from cases involving prospective relief").

Under Fed. R. Civ. P. 57 and the Declaratory Judgment Act, 28 USC § 2201, this Court may issue a Declaration that UNT has violated Timothy Jackson's rights under the First Amendment.  See *Zwickler v. Koota*, 389 U.S. 241 , 88 S. Ct. 391 (1967) (in First Amendment case, holding district court was not required to abstain from considering the request for declaratory relief despite the fact that it found no special circumstances justifying injunctive relief).

Furthermore, the Supreme Court has held, "It is better practice, in a case raising a federal constitutional or statutory claim, to retain jurisdiction, rather than to dismiss."  Id. at 257, n.3.  See also, *Robinson v. Hunt Cty*., 921 F.3d 440, 450-51 (5th Cir. 2019) (reversing dismissal of First and Fourteenth Amendment claims because "district court abuses its discretion if it fails to consider relevant factors, including the purposes of the Declaratory Judgment Act") (internal quotations omitted).

### C. This Court Can Enjoin UNT To Follow Its Own Established Rules Protecting Academic Freedom and Free Expression

The Court can and should enjoin UNT to follow its own rules, which it has disregarded to suppress Timothy Jackson's viewpoints.

As set forth in Professor Jackson's Affidavits submitted with his Complaint (ECF No. 1-1), UNT has policies guaranteeing academic freedom and freedom of speech, which it promulgates in the public domain.  ECF No. 1-1, ¶ 110 (referring to policy available at https://policy.unt.edu/policy/06-035, courtesy copy appended here as **Exhibit B**).

Professor Jackson repeatedly submitted a grievance to UNT under its Policy 02.1400 which provides established processes and procedures for doing so.  Id., ¶ 112 (referring to UNT policy publicly available at https://www.untsystem.edu/sites/default/files/

documents/View_Chancellor/02.1400_reporting_s uspected_wrongdoing_final_pdf_ version.pdf, courtesy copy appended here as **Exhibit C**).

Professor Jackson also asked that UNT act to protect him from retaliation and viewpoint discrimination according to its Policy 03.1001 Employee Grievances. Id., ¶ 113 (referring to https://www.untsystem.edu/sites/default/files/documents/View_Chancellor /03.1001_employee_grievances.pdf, Courtesy copy appended here as **Exhibit D**).

UNT ignored every request of Timothy Jackson to protect his free speech rights. In its zeal to suppress Professor Jackson's viewpoints, on August 6, 2020 and only a week after Dean Richmond announced an "investigation" of the Journal for "racism," Provost Jennifer Cowley announced the formation of what she construed as an "Ad Hoc Panel." As its very name implied, this "ad hoc" entity operated outside of any known rules or policies of the University. The "Ad Hoc Panel" was, in fact, convened expressly to suppress Timothy Jackson's viewpoints and condemn the Journal for publishing views that injured the feelings of various faculty, students, and administrators at UNT. Id. at ¶¶ 114-115.

After its "investigation," which did little more than endorse the faculty petitions circulating against Timothy Jackson, the ad hoc panel published its "findings," which the evidence subsequently showed to be false. See, n. 1 *supra*. UNT then suppressed any response or rebuttal by Professor Jackson. As Professor Jackson testified at this Court's evidentiary hearing, Professor Jackson could only make his rebuttal to the Report public by filing this lawsuit.

The Court clearly has authority to enjoin UNT to enforce its own policies against the infringement of academic freedom and free speech.

Furthermore, the Court clearly has authority to Order the retraction of the pretextual "Ad Hoc Panel" Report, declare the Ad Hoc Panel *ultra vires*, and enjoin the illegal suppression of academic freedom and free expression on matters of public concern, which continues to the present day through the ongoing publication of the Report. (Publicly available at https://vpaa.unt.edu/sites/default/files/%5Bfile%3Aoriginal%3Atype%3Aname%5D/jss_review_panel_final_report1.pdf and attached to ECF No. 1-1 as Exhibit D).

### III. CONCLUSION

For the foregoing reasons, the Court should find jurisdiction over this case and deny the Defendants' Motion to Dismiss.

Respectfully submitted,

DATE: November 3, 2021.   /s/Michael Thad Allen
Michael Thad Allen, Esq.
D. Conn. Bar No. CT29813
admitted *pro hac vice*
Lead Attorney
ALLEN LAW, LLC
PO Box 404
Quaker Hill, CT  06375
(860) 772-4738 (phone)
(860) 469-2783 (fax)
m.allen@allen-lawfirm.com

Jonathan Mitchell
Texas Bar No. 24075463
MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

for PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on the date specified in the caption of this document, I electronically filed the foregoing with the Clerk of Court, to be served on all parties of record via the CM/ECF system.

/s/Michael Thad Allen
Michael Thad Allen

## CERTIFICATE OF CONFERENCE

I hereby certify counsel have complied with the meet and confer requirement in Local Rule CV-7(h) on November 2, 2021 at 9:07 a.m. CST by email to Attorney Courtney Corbello for Defendants requesting whether her clients would oppose or consent to this motion. I did not receive a response as of the time of this filing.

/s/Michael Thad Allen
Michael Thad Allen