UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| <u>**Timothy Jackson**</u>,<br><br>                <u>Plaintiff,</u><br><br><u>v.</u><br><br><u>**Laura Wright**, **Milton B. Lee**, **Melisa Denis**, **Mary Denny**, **Daniel Feehan**, **A.K. Mago**, **Carlos Munguia**, and **G. Brint Ryan**, each in their official capacities as members of the Board of Regents for the University of North Texas System; **Rachel Gain**; **Ellen Bakulina**; **Andrew Chung**; **Diego Cubero**; **Steven Friedson**; **Rebecca Dowd Geoffroy-Schwinden**; **Benjamin Graf**; **Frank Heidlberger**; **Bernardo Illari**; **Justin Lavacek**; **Peter Mondelli**; **Margaret Notley**; **April L. Prince**; **Cathy Ragland**; **Gillian Robertson**; **Hendrik Schulze**; **Vivek Virani**; and **Brian F. Wright**,</u><br><u>Defendants.</u> | <u>Case No. 4:21-cv-00033-ALM</u> |

**DECLARATION IN SUPPORT OF PLAINTIFF'S OPPOSITION TO THE STATE'S DAUBERT MOTION**

I, Michael Thad Allen, am an attorney in good standing admitted to this Court *pro hac vice* for the purpose of representing Plaintiff in the above-captioned case. I submit this Declaration for the purpose of authenticating the following documents:

    1.    Attached as **Exhibit 1** is a true and accurate copy of a petition submitted by graduate students of the University of North Texas, Division of Music History, Theory, and Ethnomusicology, beginning with Bates stamp UNT_001168. The names of graduate students have been redacted in compliance with this Court's standing order on confidentiality except for Defendant Rachel Gain. I have highlighted the relevant section quoted in our brief.

1

2. Attached as **Exhibit 2** is a true and accurate copy of Defendants' Answers to Plaintiff's First Request for Admission, with the Admission No.4 highlighted on page 6.

SIGNED UNDER THE PENALTIES OF PERJURY THIS 20TH DAY OF AUGUST 2024

/s/Michael Thad Allen
Michael Thad Allen, Esq.

# EXHIBIT 1

CONFIDENTIAL

Dear Dean Richmond,

We, a cross-section of graduate students in the Division of Music History, Theory, and Ethnomusicology (MHTE), write to condemn the latest issue of the *Journal of Schenkerian Studies* (JSS) and address concerns that recent events have foregrounded.

We are appalled by the JSS's recent perpetuation of anti-Black racism and platforming of ad hominem attacks in response to Dr. Philip Ewell's scholarship. These egregious acts go beyond the bounds of academic discourse and require a strong, swift response from the College of Music. We call upon the CoM to dissolve the JSS, dismiss Dr. Timothy Jackson, make substantial changes to the Center for Schenkerian Studies (CSS), implement consequences for those involved in the publication of the most recent issue of the JSS, and work to foster an institutional culture within the MHTE Division and the CoM where these events could never transpire. These changes are not only necessary for the sake of UNTs reputation and the well-being of its students but are also moral imperatives that can no longer be ignored.

### Dishonesty and a Lack of Academic Rigor in the JSS

While we encourage the CoM to undertake a full investigation of the JSS Volume 12, we would be remiss if this document did not highlight the most reprehensible aspects of the journal.

1. **Lack of peer review:** The call for papers gave a two-week deadline for responses; all papers were accepted, without asking for substantial edits; papers were in some cases given only a five-day turnaround once notified of their acceptance to the journal; and the deadlines were selectively enforced, which allowed more anti-Ewell submissions to be accepted.
2. **Illicit collaboration.** After coopting the JSS in order to mount an attack on Dr. Ewell, Dr. Jackson proceeded to solicit responses from his close Schenkerian colleagues. The result of this solicitation and coordination between six of the anti-Ewell papers produced a markedly skewed bias toward the anti-Ewell responses. In stark contrast to this coordinated effort by Dr. Jackson et al., Dr. Ewell was neither notified nor asked to respond, as is standard academic practice.
3. **Editorial missteps.** The Assistant Editor, Levi Walls, was completely powerless to edit content and ideas or to provide substantive feedback during the editorial process. In practice, Dr. Jackson exercised control over editorial decisions, a power he should not have had. Although Levi did everything within his power to prevent the publication of racist views, the implications of his title meant that he was attacked for his ostensible decision-making role in the journal. This view was compounded by online references to the JSS as a publication run by doctoral students.

### The JSS Moving Forward

Given the egregious behavior by the JSS and specifically by the advisory board, we urgently call for the following steps to be taken:

1. **Dissolve the JSS.** The JSS has demonstrated that it does not meet the standards of a peer-reviewed publication. The basis of academic discourse is trust and authenticity, and the JSS has violated that trust. As such, there is no reason for it to exist.

UNT_001168

CONFIDENTIAL

2. **Publicly condemn the issue and release it freely online to the public.** All contributors should be held fully accountable for their comments, which must not be hidden for the sake of the self-preservation of any involved parties. By making this volume accessible to the public with a disclaimer from the CoM, we hope to enable all scholars to address this problematic discourse.
3. **Provide a full, detailed, and public account of the editorial and publication process, and its failures**. The JSS must make a public account of the process so individuals who intentionally subverted academic norms can be held accountable, and so that innocent parties might be absolved of both guilt and a burden of silence.
4. **Hold accountable every person responsible for the direction of the publication.** This should also extend to investigating past bigoted behaviors by faculty and, by taking this into account, the discipline and potential removal of faculty who used the JSS platform to promote racism.
5. **Ensure that no member of the current JSS Advisory Board oversees or reviews work done by a TA or TF.** Neither Dr. Slottow nor Dr. Jackson should be permitted to oversee graduate students in any employment capacity, including supervising those who manage graduate student assistantships.

**Calling for Dr. Jackson's Dismissal**

Dr. Jackson should be removed from the UNT faculty because he has shown that his values are diametrically opposed to those of our division, the CoM, and the university at large. He has a history of racist, sexist, and abusive behavior in his many capacities. He was removed from the oversight of the RA for the CSS due to his treatment of previous RAs. Among the issues raised were:
1. Using the CSS RA to aid with his personal research
2. Requiring student work during the summer without pay
3. Extortion through grade manipulation and threats to students' careers and reputations

These abuses were eventually addressed, but it took CoM administrators years to attempt to remedy these problems. While this included Dr. Jackson's aforementioned removal from overseeing the CSS RA, his influence over both the CSS, the JSS, and the graduate research assistantship unofficially continued. His present offenses concerning this issue of the JSS are part of a pattern of harmful behaviors that have disproportionately affected marginalized students and faculty. His reputation extends beyond UNT and affects how our division is perceived externally.

If the CoM is unable to remove Dr. Jackson from his position, these steps must be taken at a minimum:

1. **Require a formal apology and retraction.** Dr. Jackson must provide a formal apology and retract his explicit racist comments and ad hominem attacks on Dr. Ewell.
2. **Prevent power imbalances.** Given that Dr. Jackson's position has facilitated past abuses, he must be prohibited from teaching required courses, advising students, serving on committees in any capacity, or wielding power over students or faculty.
3. **Eliminate research and travel funding and prohibit involvement in UNT publications.** Funding for Dr. Jackson's research and travel must be immediately and permanently terminated so that he can no longer manipulate the power structures within UNT publications to promote his own ideas. UNT must not provide a platform for his views.

CONFIDENTIAL

**Addressing the MHTE Division's Culture**

Issue 12 of the JSS—both in its content and publication process—sheds light on a problematic culture within our division. Several faculty members have demonstrated through their actions a lack of understanding of issues of diversity. More concerning is the broader pattern of ineffective responses to graduate students' concerns. As illustrated in both Dr. Jackson's previous and current behaviors, problems were ignored by multiple administrators in the division and college at large. Action was only taken after these issues received broader (and especially public) attention. We recognize Dr. Brand's efforts to change our culture by initiating diversity training within our division and fostering an atmosphere where graduate students generally feel welcome when bringing issues to him, yet this has not yet led to an environment that prevents such abuses from happening. It is a start, but much work remains to be done.

With that in mind, we call on the MHTE Division and the CoM to take the following steps to critically examine and radically transform our institutional culture:

1. **Launch an investigation into the culture in UNT, the CoM, and the MHTE Division.** This investigation should take into account past concerns and remove barriers that led to inaction within the division and CoM. Specific concerns include addressing racism and sexism and serving diverse communities. A third party—such as representatives from the Division of Institutional Equity and Diversity—should oversee this investigation.
2. **Create a reporting process that ensures transparency, clarity, and protection from retaliation for graduate students within the MHTE Division and CoM.** There are many more troubling incidents that we would like to bring to your attention, and we recognize that there will be many more in the future. We look forward to the conversations necessary to bring about this institutional change.
3. **Appoint a faculty member (or faculty members or university representatives) specifically tasked with advocating for graduate students.** We call for one or more faculty members to be specifically charged with hearing graduate student concerns, corroborating those concerns, and advocating for appropriate responses both within and outside the CoM.

We call upon the MHTE Division and CoM to take these proposed actions, and we look forward to a dialogue as we work together to make UNT the best version of itself. We eagerly await your response.

Sincerely,

REDACTED STUDENT NAME      REDACTED STUDENT NAME      REDACTED STUDENT NAME

Rachel Gain

UNT_001170

# Exhibit 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| TIMOTHY JACKSON, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 4:21-cv-00033-ALM |
| | § | |
| LAURA WRIGHT, et al., | § | |
| | § | |
| *Defendants.* | § | |

**DEFENDANTS' OBJECTIONS AND ANSWERS TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION**

To:   Plaintiff Timothy Jackson, by and through his counsel of record, Michael Thad Allen, ALLEN LAW, LLC, PO Box 404, Quaker Hill, CT 06375.

Defendants serve these Objections and Answers to Plaintiff's First Requests for Admission, pursuant to the Federal Rules of Civil Procedure.

Respectfully submitted.

**KEN PAXTON**
Attorney General

**BRENT WEBSTER**
First Assistant Attorney General

**JAMES LLOYD**
Deputy Attorney General for Civil Litigation

**KIMBERLY GDULA**
Chief, General Litigation Division

    */s/ Benjamin S. Walton*
**BENJAMIN S. WALTON**
*Lead Attorney*
Texas Bar No. 24075241
Assistant Attorney General
General Litigation Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711
(512) 463-2120 – Phone
(512) 320-0667 – Fax
benjamin.walton@oag.texas.gov

***Counsel for Defendants***

## CERTIFICATE OF SERVICE

      I hereby certify that on May 30, 2024, a true and correct copy of this document was served via e-mail to the following counsel of record:

Michael Thad Allen, Esq.
ALLEN LAW, LLC
PO Box 404
Quaker Hill, CT 06375
(860) 772-4738 (phone)
(860) 469-2783 (fax)
mallen@allenharrislaw.com

Jonathan Mitchell
MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Plaintiff*

                                */s/ Benjamin S. Walton*
                              **BENJAMIN S. WALTON**
                              Assistant Attorney General

# DEFENDANTS' OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION

**REQUEST 1:** UNT_000506 (attached as Exhibit 1) is a true and accurate copy of a faculty petition signed by Defendants.

**ANSWER:** Denied as stated. Defendants admit that UNT_000506–07 is a true and accurate copy of a statement signed by some of the Defendants named in this lawsuit, including Ellen Bakulina, Andrew Chung, Diego Cubero, Steven Friedson, Rebecca Dowd Geoffroy-Schwinden, Benjamin Graf, Frank Heidlberger, Bernardo Illari, Justin Lavacek, Peter Mondelli, Margaret Notley, April L. Prince, Cathy Ragland, Gillian Robertson, Hendrik Schulze, Vivek Virani, and Brian F. Wright.

**REQUEST 2:** For each of the Individual Defendants listed below, each Individual Defendant signed the faculty petition (Exhibit 1) submitted July 30, 2020 as documented in UNT_000506 (Exhibit 2).

**ANSWER:** Denied as stated. Each of the Defendants named below admits only that he/she signed the statement reflected on UNT_000506–07, a final version of which was circulated on July 30, 2020.

As to ELLEN BAKULINA:

As to ANDREW CHUNG:

As to DIEGO CUBERO:

As to STEVEN FRIEDSON:

As to REBECCA DOWD GEOFFROY-SCHWINDEN:

As to BENJAMIN GRAF:

As to FRANK HEIDLBERGER:

As to BERNARDO ILLARI:

As to JUSTIN LAVACEK:

As to PETER MONDELLI:

As to MARGARET NOTLEY:

As to APRIL L. PRINCE:

As to CATHY RAGLAND:

As to GILLIAN ROBERTSON:

As to HENDRIK SCHULZE:

As to VIVEK VIRANI:

As to BRIAN F. WRIGHT:

**REQUEST 3:**  For each of the Individual Defendants listed below, as of July 30, 2020, no Individual Defendant had knowledge of any racist actions committed by Timothy Jackson other than mere speech expressed through publication in the JSS.

**ANSWER:**  Defendants object to this request and are unable to answer because it improperly assumes that the Individual Defendants criticized Plaintiff's speech as being "racist," which is not accurate.

As to ELLEN BAKULINA:

As to ANDREW CHUNG:

As to DIEGO CUBERO:

As to STEVEN FRIEDSON:

As to REBECCA DOWD GEOFFROY-SCHWINDEN:

As to BENJAMIN GRAF:

As to FRANK HEIDLBERGER:

As to BERNARDO ILLARI:

As to JUSTIN LAVACEK:

As to PETER MONDELLI:

As to MARGARET NOTLEY:

As to APRIL L. PRINCE:

As to CATHY RAGLAND:

As to GILLIAN ROBERTSON:

As to HENDRIK SCHULZE:

As to VIVEK VIRANI:

As to BRIAN F. WRIGHT:


**REQUEST 4:** For each of the Individual Defendants listed below, as of July 30, 2020, each Individual Defendant had no knowledge of any extortion committed by Timothy Jackson.

**ANSWER:** Defendants object to this request as vague. The term "extortion" is vague and undefined. The term "extortion" does not appear in the statement signed by the Defendants named below, as reflected on UNT_000506–07. Subject to and without waiving the foregoing objections, each of the Individual Defendants listed below admits that they have no knowledge of any extortion committed by Plaintiff.

As to ELLEN BAKULINA:

As to ANDREW CHUNG:

As to DIEGO CUBERO:

As to STEVEN FRIEDSON:

As to REBECCA DOWD GEOFFROY-SCHWINDEN:

As to BENJAMIN GRAF:

As to FRANK HEIDLBERGER:

As to BERNARDO ILLARI:

As to JUSTIN LAVACEK:

As to PETER MONDELLI:

As to MARGARET NOTLEY:

As to APRIL L. PRINCE:

As to CATHY RAGLAND:

As to GILLIAN ROBERTSON:

As to HENDRIK SCHULZE:

As to VIVEK VIRANI:

As to BRIAN F. WRIGHT:


**REQUEST 5:**  Timothy Jackson was never found responsible for any Title IX violations against any UNT faculty member.

**ANSWER:**  The Individual Defendants object to this request and are unable to answer it because this information is confidential by law and known only to the university.  *See, e.g.*, Tex. Educ. Code § 51.971(c).  The Official Defendants (i.e., those sued in their official capacities at UNT) admit this request.


**REQUEST 6:**  Timothy Jackson was never found responsible for any Title IX violations against any UNT staff.

**ANSWER:**  The Individual Defendants object to this request and are unable to answer it because this information is confidential by law and known only to the university.  *See, e.g.*, Tex. Educ. Code § 51.971(c).  The Official Defendants (i.e., those sued in their official capacities at UNT) admit this request.


**REQUEST 7:**  Timothy Jackson was never found responsible for any Title IX violations against any UNT student.

**ANSWER:**  The Individual Defendants object to this request and are unable to answer it because this information is confidential by law and known only to the university.  *See, e.g.*, Tex. Educ. Code § 51.971(c).  The Official Defendants (i.e., those sued in their official capacities at UNT) admit this request.


**REQUEST 8:**  The editorial board of the JSS was never reconstituted after November 25, 2020.

**ANSWER:**  Defendants object to this request as vague.  Defendants are unable to admit or deny this request because the term "reconstituted" is vague and undefined.  Subject to and without waiving the foregoing objections, Defendants admit that some of the previous members of the JSS's editorial board resigned from that position between November 25, 2020 and the present, but Defendants are unable to admit or deny that this "reconstituted" the editorial board.

**REQUEST 9:**  For each member listed below of the so-called "Ad Hoc Panel," no member considered the internal correspondence of the JSS editorial staff that addressed the JSS's work on Volume 12 (which Plaintiff Timothy Jackson disclosed to the so-called "Ad Hoc Panel" on October 17, 2020 (UNT_002645, UNT_002649-UNT_002782, attached as Exhibit 3) in composing the "Report of Review of Conception and Production of Vol. 12 of the Journal of Schenkerian Studies" (dated November 25, 2020 (UNT_000171-000223, attached as Exhibit 4)).

**ANSWER:**  Denied as stated.  Defendants further object to this request as vague.  For example, the term "so-called" is vague, undefined, and argumentative.  Defendants also object to this request because it seeks information regarding the thought processes of individuals who are not parties to this case.  Defendants were not on the referenced panel.

At to JOHN ISHIYAMA:

As to JINCHENG DU:

As to JENNIFER WALLACH:

As to FRANCISCO GUZMAN:

As to MATTHEW LEMBERGER-TRUELOVE:


**REQUEST 10:**  The so-called "Ad Hoc Panel" never met virtually to discuss the documents disclosed by Plaintiff Timothy Jackson on October 17, 2020 (Exhibit 3) concerning the JSS editorial staff's internal workings on Volume 12 of the JSS.

**ANSWER:**  Denied as stated.  Defendants further object to this request as vague.  For example, the term "so-called" is vague, undefined, and argumentative.  Defendants also object to this request because it seeks information regarding the thought processes and activities of individuals who are not parties to this case.  Defendants were not on the referenced panel.


**REQUEST 11:**  The so-called "Ad Hoc Panel" never met in person to discuss the documents disclosed by Plaintiff Timothy Jackson on October 17, 2020 (Exhibit 3) concerning the JSS editorial staff's internal workings on Volume 12 of the JSS.

**ANSWER:**  Denied as stated.  Defendants further object to this request as vague.  For example, the term "so-called" is vague, undefined, and argumentative.  Defendants also object to this request because it seeks information regarding the thought processes and activities of individuals who are not parties to this case.  Defendants were not on the referenced panel.

**REQUEST 12:** The so-called "Ad Hoc Panel" did not discuss the documents disclosed by Plaintiff Timothy Jackson on October 17, 2020 (Exhibit 3) concerning the JSS editorial staff's internal workings on Volume 12 of the JSS.

**ANSWER:** Denied as stated. Defendants further object to this request as vague. For example, the term "so-called" is vague, undefined, and argumentative. Defendants also object to this request because it seeks information regarding the thought processes and activities of individuals who are not parties to this case. Defendants were not on the referenced panel.

**REQUEST 13:** Prior to November 25, 2020, the UNTP never required the JSS to abide by COPE standards.

**ANSWER:** Defendants object to this request as vague, irrelevant, overly broad, and unduly burdensome. Defendants are unable to admit or deny this request because the phrase "COPE standards" is vague and undefined. Subject to and without waiving the foregoing objections, the Official Defendants (i.e., those sued in their official capacities at UNT) and Defendant Benjamin Graf admit that the UNTP does not impose or enforce any standards on journals for how they are to select, review, or edit their subject matter for publication.

**REQUEST 14:** Prior to November 25, 2020, the UNTP never required the Journal Theoria to abide by COPE standards.

**ANSWER:** Defendants object to this request as vague, irrelevant, overly broad, and unduly burdensome. Defendants are unable to admit or deny this request because the phrase "COPE standards" is vague and undefined. Subject to and without waiving the foregoing objections, the Official Defendants (i.e., those sued in their official capacities at UNT) and Defendant Frank Heidlberger admit that the UNTP does not impose or enforce any standards on journals for how they are to select, review, or edit their subject matter for publication.

**REQUEST 15:** Prior to November 25, 2020, the UNTP never imposed the COPE standards on any journal that it published.

**ANSWER:** Defendants object to this request as vague, irrelevant, overly broad, and unduly burdensome. Defendants are unable to admit or deny this request because the phrase "COPE standards" is vague and undefined. Further, Defendants are also unable to admit or deny this request because it seeks a blanket admission regarding a university press that has existed for decades.

**REQUEST 16:**  Prior to November 25, 2020, UNT had never disciplined any journal editor for alleged failure to abide by the standards of COPE.

**ANSWER:**  Defendants object to this request as vague, irrelevant, overly broad, and unduly burdensome.  Defendants are unable to admit or deny this request because the phrase "standards of COPE" is vague and undefined.  Further, Defendants are also unable to admit or deny this request because it seeks a blanket admission regarding a university that has existed since the late nineteenth century.

**REQUEST 17:**  Prior to November 25, 2020, UNT had never once investigated any journal editor for alleged failure to abide by the standards of COPE.

**ANSWER:**  Defendants object to this request as vague, irrelevant, overly broad, and unduly burdensome.  Defendants are unable to admit or deny this request because the phrase "standards of COPE" is vague and undefined.  Further, Defendants are also unable to admit or deny this request because it seeks a blanket admission regarding a university that has existed since the late nineteenth century.

**REQUEST 18:**  The student petition submitted by the UNT graduate students in the Division of Music History, Theory, and Ethnomusicology to Dean John Richmond and signed by 27 graduate students is UNT_001168-001170 (attached as Exhibit 5).

**ANSWER:**  Denied as stated.  Defendants admit that a cross-section of graduate students in the Division of Music History, Theory, and Ethnomusicology submitted to Dean Richmond a statement signed by 27 individuals, a true and correct copy of which statement is reflected on UNT_001168–70.

**REQUEST 19:**  Defendant Rachel Gain signed the student petition Exhibit 5 submitted by the UNT graduate students in the Division of Music History, Theory, and Ethnomusicology to Dean John Richmond.

**ANSWER:**  Denied as stated.  Defendants admit that Defendant Rachel Gain was one of the individuals who signed a statement submitted to Dean Richmond by a cross-section of graduate students in the Division of Music History, Theory, and Ethnomusicology, a true and correct copy of which statement is reflected on UNT_001168–70.

**REQUEST 20:**  For each of the Individual Defendants (with the exception of Rachel Gain), each Individual Defendant endorsed the "call to action" in the student petition submitted by the UNT graduate students in the Division of Music History, Theory, and Ethnomusicology to Dean John Richmond and signed by 27 graduate students (Exhibit 5) in the faculty petition submitted July 30, 2020 (Exhibits 1 and 2).

**ANSWER:**  Denied as stated.  Each of the Defendants named below admits that the statement reflected on UNT_000506–07, a final version of which was circulated on July 30, 2020, "endorse[d] the call for action outlined in" the statement submitted to Dean Richmond by a cross-section of graduate students in the Division of Music History, Theory, and Ethnomusicology, a true and correct copy of which statement is reflected on UNT_001168–70.

As to ELLEN BAKULINA:

As to ANDREW CHUNG:

As to DIEGO CUBERO:

As to STEVEN FRIEDSON:

As to REBECCA DOWD GEOFFROY-SCHWINDEN:

As to BENJAMIN GRAF:

As to FRANK HEIDLBERGER:

As to BERNARDO ILLARI:

As to JUSTIN LAVACEK:

As to PETER MONDELLI:

As to MARGARET NOTLEY:

As to APRIL L. PRINCE:

As to CATHY RAGLAND:

As to GILLIAN ROBERTSON:

As to HENDRIK SCHULZE:

As to VIVEK VIRANI:

As to BRIAN F. WRIGHT:

**REQUEST 21:**  The student petition submitted by the UNT graduate students in the Division of Music History, Theory, and Ethnomusicology to Dean John Richmond (Exhibit 5) was incorporated by reference into the faculty petition submitted July 30, 2020 by Defendant Rebecca Geoffroy-Schwinden (Exhibits 1 and 2).

**ANSWER:**  Denied.

**REQUEST 22:**  For each of the Individual Defendants who signed the faculty petition (see Exhibits 1 and 2), each Individual Defendant endorsed the accusation that Timothy Jackson had committed the crime of "extortion" as stated in the student petition submitted by the UNT graduate students in the Division of Music History, Theory, and Ethnomusicology to Dean John Richmond.

**ANSWER:**  Denied.

As to ELLEN BAKULINA:

As to ANDREW CHUNG:

As to DIEGO CUBERO:

As to STEVEN FRIEDSON:

As to REBECCA DOWD GEOFFROY-SCHWINDEN:

As to BENJAMIN GRAF:

As to FRANK HEIDLBERGER:

As to BERNARDO ILLARI:

As to JUSTIN LAVACEK:

As to PETER MONDELLI:

As to MARGARET NOTLEY:

As to APRIL L. PRINCE:

As to CATHY RAGLAND:

As to GILLIAN ROBERTSON:

As to HENDRIK SCHULZE:

As to VIVEK VIRANI:

As to BRIAN F. WRIGHT: