UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| TIMOTHY JACKSON, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 4:21-cv-00033-ALM |
| | § | |
| LAURA WRIGHT, et al., | § | |
| | § | |
| *Defendants.* | § | |

## DEFENDANTS' OBJECTIONS AND ANSWERS TO PLAINTIFF'S SECOND SET OF INTERROGATORIES

To: Plaintiff Timothy Jackson, by and through his counsel of record, Michael Thad Allen, ALLEN LAW, LLC, PO Box 404, Quaker Hill, CT 06375.

Defendants serve these Objections and Answers to Plaintiff's Second Set of Interrogatories, pursuant to the Federal Rules of Civil Procedure.

Respectfully submitted.

**KEN PAXTON**
Attorney General

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**JAMES LLOYD**
Deputy Attorney General for Civil Litigation

**KIMBERLY GDULA**
Chief, General Litigation Division

　　　*/s/ Mary B. Quimby*
**BENJAMIN S. WALTON**
*Lead Attorney*
Texas Bar No. 24075241
**MARY B. QUIMBY**
Texas Bar No. 24132506
Assistant Attorneys General
General Litigation Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711
(512) 463-2120 – Phone
(512) 320-0667 – Fax
benjamin.walton@oag.texas.gov
mary.quimby@oag.texas.gov

***Counsel for Defendants***

## CERTIFICATE OF SERVICE

    I hereby certify that on November 6, 2024, a true and correct copy of this document was served via e-mail to the following counsel of record:

Michael Thad Allen, Esq.
ALLEN LAW, LLC
PO Box 404
Quaker Hill, CT 06375
(860) 772-4738 (phone)
(860) 469-2783 (fax)
mallen@allenharrislaw.com

Jonathan Mitchell
MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Plaintiff*

                                          */s/ Mary B. Quimby*
                                          **MARY B. QUIMBY**
                                          Assistant Attorney General

**DEFENDANTS' OBJECTIONS AND ANSWERS
TO PLAINTIFF'S SECOND SET OF INTERROGATORIES**

**INTERROGATORY 11:** The Ad Hoc Panel Report incorporates an "Exhibit 3" that refers both to "bigoted behaviors by faculty" as well as states that "Specifically, the actions of [Plaintiff] Dr. Jackson—both past and present—are particularly racist and unacceptable"; therefore, please identify any witness, whom you contend can identify Plaintiff's "racist actions" or "racist behaviors" at any time, past or present, and for each such witness, please state the following:

> a. The specific action or behavior that the witness identifies as "racist";
> b. The specific time, date, and location that the supposed "racist" actions or behavior occurred;
> c. The nature of the action that the witness claims is "racist"; and
> d. Any documents that the witness claims substantiate the assertion that the specific action was "racist."

**ANSWER:** Defendants object to this interrogatory to the extent it may be interpreted to seek information regarding the identity of witnesses that Defendants may seek to call at trial, because such a request seeks information protected by the attorney client and work product privileges. Defendants will provide their witness list in accordance with the rules and orders of the Court.

To the extent this interrogatory may be interpreted to seek information regarding these individuals' factual knowledge, Defendants object because this information is not within Defendant's possession or control. Specifically, Defendants do not have possession or control over third parties' knowledge regarding the statements in Exhibit 3. Defendants cannot compel unnamed witnesses to provide information regarding their potential knowledge about the statements in Exhibit 3. Objecting further, Defendants state that Plaintiff has equal access and ability to obtain this information.

Defendants also objects to this request as disproportionate to the needs to the case. Specifically, knowledge of third-party witnesses who believe Plaintiff has engaged in racist actions or behaviors is not relevant to Plaintiff's defamation claim against the Defendants.

Subject to and without waiving the objection, see response to interrogatory #12, and additionally the deposition testimony of Levi Walls, Rachel Gain, and Peter Kohanski, and documents produced by those witnesses.

See also documents produced with these interrogatory responses. Defendants will supplement if additional information becomes available.

**INTERROGATORY 12:** Not limited as to time, for each Individual Defendant, identify any specific action or behavior of Plaintiff Timothy Jackson that the Individual Defendant claims is or was "racist," and for each such Individual Defendant, please state the following:

> a. The specific action or behavior that the Individual Defendant identifies as "racist";

  b. The specific time, date, and location that the supposed "racist" action or behavior occurred;
  c. The nature of the action that the Individual Defendant claims is "racist"; and
  d. Any documents that the Individual Defendant claims substantiate the assertion that the specific action was "racist."

As to ELLEN BAKULINA:

As to ANDREW CHUNG:

As to DIEGO CUBERO:

As to STEVEN FRIEDSON:

As to REBECCA DOWD GEOFFROY-SCHWINDEN:

As to RACHEL GAIN:

As to BENJAMIN GRAF:

As to FRANK HEIDLBERGER:

As to BERNARDO ILLARI:

As to JUSTIN LAVACEK:

As to PETER MONDELLI:

As to MARGARET NOTLEY:

As to APRIL L. PRINCE:

As to CATHY RAGLAND:

As to GILLIAN ROBERTSON:

As to HENDRIK SCHULZE:

As to VIVEK VIRANI:

As to BRIAN F. WRIGHT:

**ANSWER:** Defendants object to this interrogatory because it is overly broad and unduly burdensome. For example, it is not limited in time, and Professor Jackson has worked at UNT for decades. Defendants further object to this interrogatory because as to all the Individual Defendants who are faculty members at UNT (i.e., every Individual Defendant besides Rachel Gain), the

interrogatory seeks information not relevant to any party's claim or defense and not reasonably calculated to lead to the discovery of admissible evidence. None of the Individual Defendants who are faculty members accused Professor Jackson of any "racist" action or behavior.

Defendant also objects to this interrogatory as better suited as a deposition question. Indeed, eight of the identified Defendants below have been deposed in this case, thus Plaintiff had the opportunity to pose this question in their depositions.

Subject to and without waiving the foregoing objections, Defendants state as follows:

As to ELLEN BAKULINA: See Deposition Testimony.

As to ANDREW CHUNG: See Deposition Testimony.

As to DIEGO CUBERO: Sections of Timothy Jackson's response in Vol. 12 of the Journal for Schenkerian Studies base his argument on racial stereotypes and tropes. Otherwise, I am not aware of other actions or behaviors by Dr. Jackson that could be considered "racist, other than what I identified in my deposition testimony.

As to STEVEN FRIEDSON: Timothy Jackson's response in Vol. 12 of the Journal for Schenkerian Studies expressed racist sentiment insofar as his main argument relies on racial tropes and stereotypes. Otherwise, I am not aware of other actions or behaviors by Dr. Jackson that could be considered "racist."

As to REBECCA DOWD GEOFFROY-SCHWINDEN: See Deposition Testimony.

As to RACHEL GAIN: See Deposition Testimony.

As to BENJAMIN GRAF: See Deposition Testimony.

As to FRANK HEIDLBERGER: Some of the content in Dr. Jackson's article in Vol. 12 of the Journal of Schenkerian Studies could be read as "racist" by generalizing the presumed social behavior of Black individuals and families. Otherwise, I am not aware of other actions or behaviors by Dr. Jackson that could be considered "racist." *See also* Deposition Testimony.

As to BERNARDO ILLARI: See faculty statement. Defendants will supplement if additional responsive information becomes available.

As to JUSTIN LAVACEK: Some of Timothy Jackson's response in Vol. 12 of the Journal of Schenkerian Studies have possible racist foundation. For example: "He [Ewell] is uninterested in bringing Blacks up to 'standard' so they can compete"; "African Americans have the right to embrace their own culture as precious—i.e. rap music, hip hop, etc.—and study and teach it in universities so that the products of the 'defective,' 'racist' White culture—i.e., classical music—can be shunted aside"; "Be that as it may, I would like to propose that genuine solutions lie elsewhere, especially by the African American Community establishing different priorities, by addressing the deficiency of background in classical music caused by few opportunities for serious

training, and by the removal of systemic barriers in American society at large"; and "a fundamental reason for the paucity of African American women and men in the field of music theory is that few grow up in homes where classical music is profoundly valued…" Otherwise, I am not aware of other actions or behaviors by Dr. Jackson that could be considered "racist."

As to PETER MONDELLI: See faculty statement. Defendants will supplement if additional responsive information becomes available.

As to MARGARET NOTLEY: See faculty statement. Defendants will supplement if additional responsive information becomes available.

As to APRIL L. PRINCE: Portions of Timothy Jackson's written response in Vol. 12 of the Journal of Schenkerian Studies express racist stereotypes and tropes. For example: "[h]e [Ewell] is uninterested in bringing Blacks up to "standard" so they can compete"; and "[a]s I see it, a fundamental reason for the paucity of African American women and men in the field of music theory is that few grow up in homes where classical music is profoundly valued, and therefore they lack the necessary background." Otherwise, I am not aware of other actions or behaviors by Dr. Jackson that could be considered "racist."

As to CATHY RAGLAND: Sections of Timothy Jackson's response in Vol. 12 of the Journal for Schenkerian Studies include racists stereotypes and tropes. Otherwise, I am not aware of other actions or behaviors by Dr. Jackson that could be considered "racist."

As to GILLIAN ROBERTSON: The manner in which Timothy Jackson constructed his response in Vol. 12 of the Journal of Schenkerian Studies could be considered "racist." Otherwise, I am not aware of other actions or behaviors by Dr. Jackson that could be considered "racist."

As to HENDRIK SCHULZE: Timothy Jackson's response in Vol. 12 of the Journal for Schenkerian Studies expressed racist overtones insofar as his main argument relies on racial tropes and stereotypes. Otherwise, I am not aware of other actions or behaviors by Dr. Jackson that could be considered "racist."

As to VIVEK VIRANI: Timothy Jackson's response in Vol. 12 of the Journal for Schenkerian Studies posits that a scholar's argument regarding an historical figure should be dismissed and the motives for making the argument should be assessed or presumed based on the scholar's race. Otherwise, I am not aware of other actions or behaviors by Dr. Jackson that could be considered "racist."

As to BRIAN F. WRIGHT: Dr. Jackson's published article in Vol. 12 of the Journal for Schenkerian Studies includes multiple racist statements and assumptions. For example, his argument implies that because Dr. Ewell is Black, his critiques should be understood as a form of "Black anti-Semitism." Dr. Jackson then diagnoses what he sees as some of the "toxic" characteristics of contemporary African American culture, which he writes "[includes] the obnoxious lyrics of some hip-hop songs, etc." I believe this statement is racist for multiple reasons. In yet another example, Dr. Jackson writes that as "[he] see[s] it, a fundamental reason for the paucity of African American women and men in the field of music theory is that few grow up in

homes where classical music is profoundly valued." This is an exceptionally broad claim about Black culture, one that Dr. Jackson does not attempt to substantiate.