**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| TIMOTHY JACKSON,<br>*Plaintiff,*<br><br>v.<br><br>LAURA WRIGHT, MILTON B. LEE,<br>MELISA DENIS, MARY DENNY,<br>DANIEL FEEHAN, A.K. MAGO,<br>CARLOS MUNGUIA, AND G.<br>BRINT RYAN, each in their official<br>capacities as members of the board of<br>regents for the University of North<br>Texas System; RACHEL GAIN;<br>ELLEN BAKULINA; ANDREW<br>CHUNG; DIEGO CUBERO; STEVEN<br>FRIEDSON; REBECCA DOWD<br>GEOFFROY-SCHWINDEN;<br>BENJAMIN GRAF; FRANK<br>HEIDLBERGER; BERNARDO<br>ILLARI; JUSTIN LAVACEK; PETER<br>MONDELLI; MARGARET NOTLEY;<br>APRIL L. PRINCE; CATHY<br>RAGLAND; GILLIAN ROBERTSON;<br>HENDRIK SCHULZE; VIVEK<br>VIRANI; AND BRIAN F. WRIGHT,<br>*Defendants.* | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | Civil Action No. 4:21-cv-00033 |

---

**THE DEFAMATION DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

KEN PAXTON
Attorney General of Texas
BRENT WEBSTER
First Assistant Attorney General
RALPH MOLINA
Deputy First Assistant Attorney General
JAMES LLOYD
Deputy Attorney General for Civil Litigation
KIMBERLY GDULA
Chief, General Litigation

MARY B. QUIMBY
Texas Bar No. 24132506
Assistant Attorney General
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 | Fax: (512) 320-0667
mary.quimby@oag.texas.gov

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................. ii

TABLE OF AUTHORITIES ..................................................................................... iii

STATEMENT OF THE ISSUES TO BE DECIDED BY THE COURT ...................... 2

INTRODUCTION ..................................................................................................... 2

STATEMENT OF UNDISPUTED MATERIAL FACTS ............................................ 3

    A.    Philip Ewell's plenary address, the JSS's response, and the resulting
         controversy ............................................................................................... 3

    B.    MHTE students and faculty respond to the controversy ........................... 5

STANDARD OF REVIEW ........................................................................................ 6

ARGUMENT & AUTHORITIES ............................................................................... 6

    I.    Jackson's defamation claim – the Student Statement ................................... 7

        A.    Statements 1-3 are not defamatory and do not reference Jackson........... 8

        B.    Statement 4 is non-verifiable and non-actionable opinion .................... 9

        C.    The context of the entire Student Statement reveals that
            Statements 1-4 were not meant to be recitation of facts.   ................. 12

           1.    The language used in the Student Statement ...................................... 12

               i.    The language of the Student Statement in the context of
                    the controversy ...................................................................... 14

        D.    Jackson cannot prove that Gain acted with actual malice in
            posting the Student Statement to her Twitter feed. ........................... 18

           1.    Jackson is a limited purpose public figure. ....................................... 18

           2.    There is no evidence that Gain acted with actual malice. ................. 19

    II.    Jackson's defamation claim – the Faculty Statement. ................................. 21

        A.    Like the Student Statement, the Faculty Statement contains
            opinions that do not defame Jackson.................................................. 21

        B.    Jackson cannot prove that the Faculty Statement was published
            with actual malice ........................................................................... 22

CERTIFICATE OF SERVICE .................................................................................. 25

# TABLE OF AUTHORITIES

**Federal Cases**

*Adams v. Starside Custom Builders, LLC*,
    No. 05-01-01162-CV, 2018 WL 6427640 (Tex. App.—Dallas 2018, no pet.) ................... 8, 21

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) .................................................................................................. 6

*Beneficient v. Gladstone*,
    No. 6:23-cv-376-JDK, 2024 WL 2338256 (E.D. Tex. May 22, 204) ............................ 19

*Benson v. Guerrero*,
    No. 01-23-00596-CV, 2024 WL 3941012  (Tex.App.—Houston [1st] no pet) ......... 10, 12, 16

*Bentley v. Bunton*,
    94 S.W.3d 561 (Tex. 2002) ....................................................................................... 19

*Brooks v. Houston Indep. Sch. Dist.*,
    86 F. Supp. 3d 577 (S.D. Tex. 2015) .......................................................................... 6

*Buckley v. Littell*,
    539 F.2d 882 (2nd Cir. 1976) .................................................................................... 10

*Campbell v. Clark*,
    471 S.W.3d 615 (Tex.App.—Dallas 2015, no pet.) ...................................................... 7

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .................................................................................................. 6

*Chehab v. Edgewood Dev. Ltd.*,
    619 S.W.3d 828 (Tex. App.-Houston [14th Dist.] 2021, no pet.) .................................. 9

*Coral Ridge Ministries Media*,
    406 F.Supp.3d 1258 (M.D. Ala. 2019) ....................................................................... 10

*Cummings v. City of New York*,
    No. 19-cv-7723, 2020 WL 882335 (S.D.N.Y Feb. 24, 2020) ....................................... 10

*Dallas Morning News v. Tatum*,
    554 S.W.3d 614 (Tex. 2018) ............................................................................ 7, 15, 18

*Dickson v. Afiya Center*,
    2021 WL 3412177 (Tex. App,--Dallas 2021 pet. granted) ............................................ 16

*Dickson v. Lilith Fund for Reproductive Equity*,
    647 S.W.3d 410 (Tex.App—Amarillo 2021 pet. granted) ............................................. 16

*Double Diamond, Inc. v. Van Tyne*,
    109 S.W.3d 848 (Tex. App. 2003) .............................................................................. 9

*Edelman v. Croonquist*,
    No.09-1938, 2010 WL 1816180 (D.N.J. May 4, 2010) ................................................ 10

*Freedom Newspapers of Tex. v. Cantu*,
    168 S.W.847 (Tex. 2005) .......................................................................................... 19

*Gaylord Broad. Co. v. Francis*,
    7 S.W.3d 279 (Tex. App.—Dallas 1999, pet denied) .................................................... 7

*Hancock v. Variyam*,
    400 S.W.3d 59 (Tex. 2013) ....................................................................................... 18

*Hearst v. Skeen*,
    159 S.W.3d 633 (Tex. 2005) ...................................................................................... 19

*Houseman v. Publicaciones Paso del Norte, S.A. DE C.V.*,
  242 S.W.3d 518 (Tex.App.—El Paso 2007, no pet.) .......................................... 8, 21
*Huckabee v. Time Warner Ent. Co., L.P.*,
  19 S.W.3d 413 (Tex. 2000) ............................................................................ 8
*Kaufman v. Islamic Soc. of Arlington*,
  291 S.W.3d 130 (Tex.App.—Fort Worth 2009, no pet) ..................................... 9
*Lilith Fund for Reprod. Equity v. Dickson*,
  662 S.W.3d 355 (Tex. 2023) .................................................................... passim
*Milkovich v. Lorain Journal Co.*,
  497 U.S. 1 (1990) .............................................................................. 7, 9, 10, 12
*Musser v. Smith Protective Servs., Inc.*,
  723 S.W. 2d 653 (Tex. 1987) ........................................................................... 7
*New Times, Inc. v. Isaaks*,
  146 S.W.3d 144 (Tex. 2004) ............................................................................. 7
*O'Rourke v. Warren*,
  673 S.W.3d 671 (Tex.App.—Austin, June 9, 2023, pet. denied) ...................... 17
*Ollman v. Evans*,
  750 F.2d 970 (D.C. Cir. 1984) ........................................................................ 10
*Roe v. Patterson*,
  668 F.Supp.3d 582 (5th Cir. 2023) .................................................................. 8
*Russell v. Davies*,
  948 N.Y.S.2d 394 (2d Dep't 2012) .................................................................. 10
*Spend Life Wisley Co. v. Phillips*,
  700 F.Supp,3d 510 (E.D. Sherman, 2023) ...................................................... 13
*Stevens v. Tillman*,
  855 F.2d 394 (7th Cir. 1988) ........................................................................... 10
*Turner v. Baylor Richardson Med. Ctr.*,
  476 F.3d 337 (5th Cir. 2007) ............................................................................ 6
*Turner v. KTRK Television*, Inc.,
  38 S.W.3d 103 (Tex. 2000) ............................................................................. 19
*Vail v. The Plain Dealer Publishing Co.*,
  72 Ohio St. 3d 279, 649 N.E.2d 182 (Ohio 1995) ........................................... 10
*Vice v. Kasprzak*,
  318 S.W.3d 1 (Tex.App.—Houston [1st] 2009,  rh'g overruled) .................... 11, 14
*Walker v. Beaumont Indep. Sch. Dist.*,
  938 F.3d 724 (5th Cir. 2019) ............................................................................ 7
*WFAA-TV, Inc. v McLemore*,
  978 S.W.3d 568 (Tex. 1998) ........................................................................... 18
*Wheeler v. New Times, Inc.*,
  49 S.W.3d 471 (Tex.App.—Dallas 2001) .......................................................... 9

**Rules**

Fed. R. Civ. P. 56(a) ......................................................................................... 6

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| TIMOTHY JACKSON, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 4:21-cv-00033 |
| | § | |
| LAURA WRIGHT, MILTON B. LEE, | § | |
| MELISA DENIS, MARY DENNY, | § | |
| DANIEL FEEHAN, A.K. MAGO, | § | |
| CARLOS MUNGUIA, AND G. | § | |
| BRINT RYAN, each in their official | § | |
| capacities as members of the board of | § | |
| regents for the University of North | § | |
| Texas System; RACHEL GAIN; | § | |
| ELLEN BAKULINA; ANDREW | § | |
| CHUNG; DIEGO CUBERO; STEVEN | § | |
| FRIEDSON; REBECCA DOWD | § | |
| GEOFFROY-SCHWINDEN; | § | |
| BENJAMIN GRAF; FRANK | § | |
| HEIDLBERGER; BERNARDO | § | |
| ILLARI; JUSTIN LAVACEK; PETER | § | |
| MONDELLI; MARGARET NOTLEY; | § | |
| APRIL L. PRINCE; CATHY | § | |
| RAGLAND; GILLIAN ROBERTSON; | § | |
| HENDRIK SCHULZE; VIVEK | § | |
| VIRANI; AND BRIAN F. WRIGHT, | § | |
| | § | |
| *Defendants*. | § | |

---

**THE DEFAMATION DEFENDANTS' BRIEF IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT**

---

Defendants, Rachel Gain; Ellen Bakulina; Andrew Chung; Diego Cubero; Steven

Friedson; Rebecca Dowd Geoffroy-Schwinden; Benjamin Graf; Frank Heidlberger; Bernardo

Illari; Justin Lavacek; Peter Mondelli; Margaret Notley; April L. Prince; Cathy Ragland; Gillian

Robertson; Hendrik Schulze; Vivek Virani; and Brian F. Wright ("Defamation Defendants"), file

this Motion for Summary Judgment pursuant to Federal Rules of Civil Procedure 56.

## STATEMENT OF THE ISSUES TO BE DECIDED BY THE COURT

1. Can Jackson establish that the Defamation Defendants' statements are verifiable fact statements actionable in defamation?

2. Can Jackson establish that the Student Statement and the Faculty Statement were published with actual malice?

## INTRODUCTION

Professor Timothy Jackson is a UNT faculty member who brings a claim for defamation

against the Defamation Defendants: a group of 17 of his colleagues in the department of Music

History Theory and Ethnomusicology ("MHTE"), and one former MHTE Teaching Assistant,

Rachel Gain. Professor Jackson alleges that after the Journal on Schenkerian Studies ("JSS")

published Volume 12, which contained a "Symposium" of an undisputably controversial collection

of articles, the Defamation Defendants published statements that were defamatory towards him.

However, the Defamation Defendants merely published statements expressing their opinions about

the Symposium and the controversy it caused. The evidence shows that Professor Jackson's actions

thrust his colleagues and students into the spotlight against their will, and therefore, rightfully, they

were compelled to share their opinions on the matter.

Jackson alleges that although his criticisms of Professor Ewell expressed in the Symposium

are protected by the First Amendment, the Defamation Defendants' criticisms of the Symposium

are not. This does not reflect the law in Texas, which unequivocally protects an individual's ability

to express their opinion. The reasonable reader would understand both the student and faculty

statements to be recitations of their opinions, not facts, therefore the statements are not actionable

as defamation. Further, there is no indication whatsoever that any of the Defamation Defendants

drafted or published the statement with an intent to publish known falsehoods. Accordingly, for the reasons set forth below, Professor Jackson's defamation claim fails and must be dismissed.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.  Philip Ewell's plenary address, the JSS's response, and the resulting controversy.[1]

On or about November 9, 2019, Professor Philip Ewell of Hunter College of the City University of New York delivered a plenary address at the Society for Music Theory ("SMT")[2] conference, titled "Music Theory's White Racial Frame." Doc. 1 ¶30-31. Ewell also published a paper based on the address. *Id.*, Doc. 8-1.

In his address and paper, Ewell argued for rethinking and restructuring some of the institutions in the field of music theory – particularly its reliance on the analytical framework developed by Heinrich Schenker -- "in hopes of increasing the number of persons of color in music theory, thus enriching the racial diversity of our field." Doc. 8-1 at 2. Professor Ewell addressed Schenker's documented racism, and urged music theorists to consider how his racism may have infiltrated his music theory. *Id.* at 6–16. Schenker, a late 19th century/early 20th century music theorist, is the namesake of the Journal of Schenkerian Studies ("JSS").

In response to Professor Ewell's plenary address, Professor Jackson decided to organize a formal response in Volume 12 of the JSS. Doc. 1 ¶ 44. Initially, Jackson's plan was to solicit responses to Ewell's address specifically from Schenkerian scholars. APPX.082, 198:2-8. To be fair, Jackson and the editorial staff of the JSS decided to send a call for papers to members of the Society for Music Theory. *Id.*, APPX.082, 196:4-25, 197:1-2. On July 24, 2020, the Journal

---

[1] The factual context in section A also appears as section A in the Board Defendants' MSJ.

[2] SMT is the primary U.S.-based professional association and conference organizing body in the field of music theory. *See* APPX.049, 20:15-17; https://societymusictheory.org/about (last accessed November 18, 2024).

published a "Symposium" of articles responding to Dr. Ewell's address. Doc. 1 ¶ 44. Jackson authored one of the articles entitled "A Preliminary Response to Ewell." *See* Doc. 1-4 at 33–42.

Jackson's article, among others in the Symposium, contained statements which many of Jackson's colleagues and students within the MHTE, and members of SMT, found troubling. Doc. 1-5 p. 19-23, APPX.016-041. Jackson's statements couching some of Ewell's statements in "black antisemitism," his labeling of some of the characteristics of black culture as "toxic," and what he describes as the "fundamental reason" for the paucity of black people in the field of music theory is that they do not grow up in homes where classical music is valued, were some (but not all) of Jackson's statements that were viewed as promoting racist stereotypes and tropes. Doc. 1-5 at 19-23, APPX.001-008, APPX.059, 15:4-10.

Almost immediately after Volume 12 was published, it became the center of a public controversy, in part because of some of the racially charged statements, and in part because of the perception that the Symposium was not published pursuant to typical scholarly standards. Doc. 1-5 at 19-23, APPX.057, 7:1-7, *see also e.g.* APPX.105-112. Soon after the controversy erupted, the JSS's graduate student editor-in-training,[3] Levi Walls, resigned from the journal. APPX.149-150; APPX. 098-099, 44:5-25, 45:1-6.

On July 27, 2020, SMT's executive board issued a "response to essays in the Journal of Schenkerian Studies Vol. 12" (the "SMT Response"). Doc. 1-5 at 19-23. The statement condemned the "anti-Black statements and ad hominem attacks on Phillip Ewell" contained in the Symposium. *Id.* It asserted that the Symposium "failed to meet the ethical, professional, and scholarly standards of our discipline." *Id.* In particular, SMT's Response identified instances of professional misconduct exhibited in the Symposium, including that the submissions were not peer reviewed,

---

[3] Walls was listed as the "assistant editor" on Volume 12's masthead. APPX.101-104.

that an anonymous submission was published, and the JSS did not appear to invite Dr. Ewell to respond to the essays addressing his work. *Id*. It also stated that the misconduct identified in the production of Volume 12 enabled overtly racist behavior. *Id*.

**B. MHTE students and faculty respond to the controversy.**

Around the same time that the SMT Response was published, MHTE students authored a statement addressing Volume 12 (the "Student Statement,") and MHTE faculty authored a letter doing the same (the "Faculty Statement."). Doc. 1-5 at 20-21 and 22-23, respectively.

The Student Statement, which Professor Jackson has characterized as a "petition," expressed the graduate students' opinion that Volume 12 "[platformed] racist sentiments" in response to Professor Ewell's plenary address. APPX.083, 219:10-13, 220:6-11, APPX.094, 28:24-25, 29:1-6, Doc 1-5 at 20-21. The Student Statement also characterized the actions of Jackson as "particularly racist and unacceptable." *Id*.

The Faculty Statement, also characterized as a petition, and which did not mention Jackson, addressed the Symposium's shortcomings. Doc. 1-5 at 22-23, APPX.083, 220:6-11, APPX.094, 28:24-25, 29:1-6. It described the volume as "replete with racial stereotyping and tropes, and includes personal attacks directed at Dr. Ewell." Doc. 1-5 at 22-23. The statement echoed the concerns about the professional and scholarly standards of the Symposium raised in the SMT Response and the Student Statement. *Id*. It stated that the "epistemic center of the journal issue lies in a racist discourse that has no place in any publication, especially an academic journal." *Id*. The statement further endorsed two points (out of many) of the "call for action" identified in the Student Statement, specifically the demands that UNT's College of Music ("CoM") (1) "publicly condemn the issue and release it freely online to the public;" and (2) "provide a full public account of the editorial and publication process, and its failures." *Id*.

## STANDARD OF REVIEW

A defendant is entitled to summary judgment where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A defendant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The plaintiff then bears the burden to "make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial." *Id.* at 322. To meet this burden, a plaintiff "must identify specific evidence in the record and articulate how that evidence supports [his] claim." *Brooks v. Houston Indep. Sch. Dist.*, 86 F. Supp. 3d 577, 584 (S.D. Tex. 2015).

The substantive law governing a plaintiff's claims determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Further, a factual dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the [plaintiff]." *Id.* A plaintiff "must set forth specific facts showing that there is a genuine issue for trial." *Id.* Importantly, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (internal quotation marks omitted).

## ARGUMENT & AUTHORITIES

Professor Jackson has sued a large number of his full-time faculty colleagues, and a former Teaching Assistant, for expressing their opinions about the Symposium, including their opinions on *his* opinions of Professor Ewell's plenary address. Apparently, he believes that although his criticisms of Ewell published in the Symposium are protected, his colleagues' and former student's

6

opinions do not deserve the same protection. For the reasons set forth below, this logic is not supported by Texas law and Professor Jackson's defamation claim must be dismissed.

## I.    Jackson's defamation claim – the Student Statement

To prevail on a claim for defamation, a plaintiff must establish: (1) the publication of a false statement to a third party; (2) that was defamatory concerning the plaintiff; (3) that the defendant acted with the requisite degree of intent; and (4) damages. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 743 (5th Cir. 2019).

The threshold question in defamation cases is whether the complained of statements are reasonably capable of defamatory meaning. *Musser v. Smith Protective Servs., Inc.*, 723 S.W. 2d 653, 655 (Tex. 1987). Whether something is capable of defamatory meaning is an objective inquiry and a question of law. *New Times, Inc. v. Isaaks*, 146 S.W.3d 144, 157 (Tex. 2004). If the complained-of statements are not capable of defamatory meaning, summary judgment is proper. *Gaylord Broad. Co. v. Francis*, 7 S.W.3d 279, 283 (Tex. App.—Dallas 1999, pet denied).

A statement that is not verifiable as false, based on a core of objective evidence, is not capable of defamatory meaning. *Dallas Morning News v. Tatum*, 554 S.W.3d 614, 624 (Tex. 2018). An opinion, like any other statement, *may* be actionable if it asserts facts that can be objectively verified based on a core of objective evidence. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21-22 (1990); *Campbell v. Clark*, 471 S.W.3d 615, 625 (Tex.App.—Dallas 2015, no pet.). Even if a statement is verifiable as false, it is not defamatory if the context reveals that the statement is merely an "opinion masquerading as fact." *Id*. Courts must examine the statement from the perspective of a reasonable person's perception of the whole communication and not from isolated statements. *Lilith Fund for Reprod. Equity v. Dickson*, 662 S.W.3d 355, 363 (Tex. 2023).

When a case involves a public official, media defendant, or a matter of public concern, or any combination thereof, the burden is upon the plaintiff to prove falsity. *Roe v. Patterson*, 668

7

F.Supp.3d 582, 592-393 (5th Cir. 2023). Jackson alleges that he has spoken on a matter of public concern, therefore, he must prove that each of the statements he alleges is defamatory is verifiably false. *See* Doc. 16 at 20.

Jackson alleges that the Student Statement contains the following defamatory statements:

1. "Many of us recently discovered the journal is present as graduate student run in some contexts; in fact, there is little student involvement beyond copy-editing, and students have absolutely no say in the content of the JSS";

2. "[T]he publication of this issue demonstrates that the JSS, through its supervision of academic processes, is not in fact peer reviewed and lacks rigor";

3. "UNT has gained a reputation as an institution with a toxic culture when it comes to issues of race, gender, and other aspects of diversity";

4. "Specifically, the actions of Dr. Jackson—both past and present—are particularly racist and unacceptable."[4]

*See* Compl. ¶ 65; APPX.085-086, 264:22-25, 266:1-25, 267:1-6; Doc. 1-5 at 20-21. For the reasons set forth below, Jackson cannot prove that each of these statements is verifiably false.

### A. Statements 1-3 are not defamatory and do not reference Jackson.

An essential element in an action for defamation is that the allegedly defamatory statement was referrable to the plaintiff or concerned the plaintiff. *Lilith Fund*, 662 S.W.3d at 367 (statements cannot be defamatory unless they are "about the plaintiffs"); *Huckabee v. Time Warner Ent. Co., L.P.*, 19 S.W.3d 413, 429 (Tex. 2000) (plaintiff failed to establish claim for defamation where the defendant's documentary criticize a court in general but identified no specific judge, including the plaintiff.). The statement must point to the plaintiff and *no one else. Adams v. Starside Custom Builders, LLC*, No. 05-01-01162-CV, 2018 WL 6427640 at *10 (Tex. App.—Dallas 2018, no pet.); *Houseman v. Publicaciones Paso del Norte, S.A. DE C.V.*, 242 S.W.3d 518,

---

[4] For ease of reference, these statements will hereafter be referred to as Statement 1, Statement 2, Statement 3, and Statement 4, respectively.

525 (Tex.App.—El Paso 2007, no pet.). To be defamatory, a statement must do more than criticize the plaintiff. *Chehab v. Edgewood Dev. Ltd.*, 619 S.W.3d 828, 835 (Tex. App.-Houston [14th Dist.] 2021, no pet.)(statements that neither identify the plaintiff nor set forth any wrongful conduct have no defamatory meaning); *Double Diamond, Inc. v. Van Tyne*, 109 S.W.3d 848, 855 (Tex. App. 2003) (criticism is not defamation.).

First, Jackson admitted that Statement 1 is not defamatory, he just disagrees with it. APPX.085, 264:6-20. Further, Statements 1-3 do not refer to Jackson: Statement 1 simply states the JSS is not graduate-student run; Statement 2 states the students' opinion that the JSS was not peer reviewed and thus lacks rigor; and Statement 3 references UNT's reputation.

To the extent these statements reflect on individuals, they reflect on the entire editorial staff of the Volume 12 – Jackson, Slottow, Graf, and Walls. *See Wheeler v. New Times, Inc*., 49 S.W.3d 471, 475 (Tex.App.—Dallas 2001) (a person of ordinary intelligence would not perceive the article at issue of accusing plaintiff of wrongdoing where the article focused on the Urban Rehabilitation Standard Board's failure to scrutinize certain individuals, and plaintiff was merely identified as someone who had not been closely scrutinized); *Kaufman v. Islamic Soc. of Arlington*, 291 S.W.3d 130, 147-148 (Tex.App.—Fort Worth 2009, no pet) (a reasonable reader would not view defendant's article and sign protesting the "Muslim Family Day" at Six Flags organized by plaintiff as "concerning" the plaintiff, the entity that organized the event being criticized.). These statements are plainly not about Jackson *alone* and there is nothing in the statement that would allow a reasonable reader to conclude otherwise. Accordingly, none of these statements are defamatory and cannot support Jackson's defamation claim.

**B. Statement 4 is non-verifiable and non-actionable opinion.**

Statement 4 in particular is not verifiable because it contains an opinion that by its nature, is an individual judgment: that Jackson engaged in racist actions and platformed racist sentiments.

Whether Jackson engaged in racist acts can neither be confirmed nor denied based on a "core of objective evidence," because whether or not he did so is a matter of opinion. *See Milkovich*, 497 U.S. at 19-21. A statement is opinion if by its nature, is an indefinite or ambiguous individual judgment that rests solely in the eye of the beholder or is otherwise a loose and figurative term. *Benson v. Guerrero*, No. 01-23-00596-CV, 2024 WL 3941012 at *9 (Tex.App.—Houston [1st] no pet). In *Milkovich*, for example, a determination of whether the plaintiff perjured himself, and thus whether defendant's statements accusing him of lying under oath were defamatory, could be ascertained by comparing the plaintiff's trial testimony with his previous testimony. *Milkovich*, 497 U.S. at 19-21. Such a simple and objective comparison is not possible here.

Courts across the United States have grappled with whether stating an opinion that someone is racist is actionable as defamation, and consistently answer in the negative. *See Ollman v. Evans*, 750 F.2d 970, 981 (D.C. Cir. 1984) (en banc) (accusation of "political Marxism" too "hopelessly imprecise and indefinite" to be a statement of a verifiable fact); *Cummings v. City of New York*, No. 19-cv-7723, 2020 WL 882335, *21 (S.D.N.Y Feb. 24, 2020) (holding that terms "racist" and "racism" appearing in news article describing teacher's actions were nonactionable as "pure statements of opinion based on disclosed facts."); *Edelman v. Croonquist*, No.09-1938, 2010 WL 1816180, *6 (D.N.J. May 4, 2010)("The defendant's characterization of her in-laws as racists is a subjective assertion, not sufficiently susceptible to being proved true or false to constitute defamation."); *Coral Ridge Ministries Media*, 406 F.Supp.3d 1258, 1276 (M.D. Ala. 2019) (term "hate group" not defamatory) *Russell v. Davies*, 948 N.Y.S.2d 394, 395–96 (2d Dep't 2012) (statements interpreting an essay by a local electoral candidate as racist and anti-Semitic were opinions based on disclosed facts); *Vail v. The Plain Dealer Publishing Co.*, 72 Ohio St. 3d 279, 649 N.E.2d 182 (Ohio 1995) (editorial accusing politician of "gaybashing" and fostering

"homophobia" not defamatory because the statements did not describe verifiable facts); *Stevens v. Tillman*, 855 F.2d 394 (7th Cir. 1988) (Action of PTA president calling principal "racist" was not actionable as defamation); *Buckley v. Littell*, 539 F.2d 882, 893 (2nd Cir. 1976) (holding that statements comparing conservative author to radical and fascist groups such as the Ku Klux Klan and Nazis were too ideological and amorphous to be actionable.).

Whether or not someone has engaged in racist actions is perhaps the epitome of an indefinite or ambiguous individual judgment that rests solely in the eyes of the beholder. While there are verifiable "facts" at issue here – the statements made in Jackson's articles, whether or not they are racist is constitutionally-protected expression of an individual judgment of those facts. *Vice v. Kasprazak*, 318 S.W.3d 1, 21, (Tex.App.—Houston [1st] 2009, rh'g overruled) (defendant's letter to the editor expressing that the plaintiff had engaged in unethical business practices was the defendant's *individual judgment of* verifiable facts and was thus constitutionally protected opinion.). What the students believe Jackson's racist actions to be very well may be discernable. What is not discernable, though, is an objective test to determine whether their opinion that Jackson has engaged in racist acts is ***true or false***. A reasonable reader may look at the Student Statement, and particularly Statement 4, and *disagree* that Jackson has engaged in racist acts. That does not make Statement 4 "*false.*" The opinion shared in Statement 4 is certainly not shared by all, and that is okay. A person's opinion need not be shared by all to be worthy of First Amendment protection.

The record shows that reasonable minds *can and have* disagreed about whether Jackson deployed racial stereotypes and tropes when he, for example: characterized Ewell's plenary talk as an "attack" on Schenkerians; stated that Ewell's critiques should be understood as a form of "Black anti-Semitism"; referred to lyrics of hip hop songs as "obnoxious"; generalized  the

presumed social behavior of black people; and proposed that instead of making the field of music theory more inclusive by studying music other than western classical music, the black community can address this problem by "establishing different priorities" and "addressing the deficiency of background in classical music." *See* Doc. 1-4 at 38-40, APPX.001-008; APPX.050, 123:24-25, 124:1-5; APPX.043-046, 59:13-25, 61:15-25, 62:1-25, 63:1-10, 66:11-25, 67:1-10, 69:16-25; APPX.072, 120:14-18; APPX.053-054, 46:20-22, 50:14-16; APPX.075, 39:9-12[5]; APPX.079, 49:1-5, 50:24-25, 51:1-21. The graduate students and faculty think that Jackson deployed racial stereotypes and tropes when he made these statements in his article, and Jackson disagrees. *Id.*, APPX.084, 246:12-16.

The Student Statement does not defame Jackson because it contains general criticisms of the JSS and UNT, not Jackson; and the single statement that references Jackson is not verifiable as false. Accordingly, the statements are not actionable as defamation, and are protected by the First Amendment. *Milkovich*, 497 U.S. at 20. Jackson's defamation claim based on the Student Statement must be dismissed.

### C. The context of the entire Student Statement reveals that Statements 1-4 were not meant to be recitation of facts.

Even if this Court finds that there is a core of objective evidence upon which it can determine that no reasonable person could have perceived Jackson's statements to be racist, the context and language used in the Student Statement nevertheless confirms that it is protected opinion.

#### 1. The language used in the Student Statement

In *Tatum*, The Texas Supreme Court identified a list of questions to aid in determining if

---

[5] *See also* APPX.075, 38:5-7 "I would say that some people would consider the same action to be racist and somebody else consider that action to not be racist."

the language of a statement reveal that it is fact or opinion:

- Does the statement use language that conveys a personal viewpoint rather than an objective recitation of facts?
- Does the statement use first-person, informal style?
- Does the statement contain words that indicate the statement is an opinion?

*Benson*, 2024 WL 3941012 at *9.

In *Lilith Fund*, the Texas Supreme Court found that "exhortatory" language used in a statement could indicate that it was not factual – that is, passionate language used in advocacy or similar rhetorical contexts clues the reader in that the purpose of the statement is advocacy, not the dissemination of facts. *Lilith Fund*, 662 S.W.3d at 366. This court recently found in *Spend Life Wisley Co. v. Phillips*, that even though fact issues remained about the truth and verifiability of the defendant's statements, the statements were not defamatory because they used subjective language that signaled that the statement was opinion. *Spend Life Wisley Co. v. Phillips*, 700 F.Supp,3d 510, 522-23 (E.D. Texas, 2023). Specifically, this Court found that the defendant's use of the subjective word "concern" signaled that the statement was opinion. *Id*.

This Court can make a similar finding here regarding the style and context of the language used in the Student Statement. The Student Letter as a whole is undoubtedly informal – it exclusively uses the first-person voice and it is explicitly referred to as a "statement" which denotes that it is informal account of the students' viewpoint on Volume 12 of the JSS. It is also replete with subjective language. The first sentence of the second paragraph states "we are appalled by [JSS's] platforming of racist sentiments." The use of the words and phrases "we believe," "[w]e sincerely apologize," "[w]e firmly support Dr. Ewell," and "[w]e gratefully acknowledge the push for inclusion and diversity in academia," among others, also signal the intended subjectivity of the statement.

Indeed, both Professor Jackson and Professor Slottow refer to the Student Statement (and

Faculty Statement) as "petitions." *See* Dkt. 1-1 ("some graduate students at UNT quickly circulated a *petition* likewise condemning free and open scholarly debate as "racist" and calling for me and my life's work to be canceled.") APPX.083, 220:6-8, APPX.094-095, 28:24-25, 29:19, 30:12-24. The word "petition" is defined as a written request or call for change.[6] A petition is a type of exhortatory rhetorical device, like the plaintiff's speech in *Lilith Fund*, and is thus not factual.

A reasonable person reading the entire Student Statement would undoubtedly perceive it as an exhortatory petition: it specifically calls for changes to be made to the JSS and to the culture of the College of Music and UNT as a whole.[7] The fourth paragraph and the numbered paragraphs following specifically *demand* that the JSS condemn the issue and release it for free to the public and provide a full account of the editorial process employed to publish it. The fifth paragraph and the numbered paragraphs following *call on* UNT and the CoM to *take action*. The final paragraph expresses the students' desire to *change* what they perceive to be the toxic culture at UNT and contains an apology to Professor Ewell. It is an earnest call for change in support of a shared goal of advocating for inclusion and diversity in academia (specifically in ways recommended by Dr. Ewell, including by valuing non-Western music), not a recitation of fact. Such a call to action is not actionable as defamation. *See Vice v. Kasprzak*, 318 S.W.3d 1, 22 (defendant's request that the plaintiff be reported to the bar association was not a statement of fact but a call to action based on their opinion that the plaintiff's behavior was unethical and was thus, not defamatory.) For this additional reason, the Student Statement is non-factual opinion, and not defamatory.

    i.    **The language of the Student Statement in the context of the controversy**

---

[6] https://www.merriam-webster.com/dictionary/petition (last accessed November 18, 2024).

[7] The New York Times has described the student statement as a "manifesto," further confirming that a reasonable reader would view the statement as a declaration of the students' views. *See* https://www.merriam-webster.com/dictionary/manifesto (defining "manifesto" as "a written statement declaring publicly the intentions, motives, or views of its issuer.") (last accessed November 21, 2024).

Placing the Student Statement's objective language in the context of the controversy caused by the Symposium also makes it apparent that it was meant to be a statement of advocacy, demands, and opinions, not facts. It expresses support for Professor Ewell's call for inclusion in the field. *See* Doc. 1-5 p. 21 ("[w]e gratefully acknowledge the push for inclusion and diversity in academia, and [Dr. Ewell's] continued work for diversity and anti-racism in the field of music theory…."). There were also legitimate concerns that the Symposium would reflect poorly on the students, their degrees, and the MHTE more broadly, motivating the students to seek to distance themselves from it. UNT 1317-1324.

*Tatum* and *Lilith Fund* present similar circumstances, and in both cases, the Texas Supreme Court found that the allegedly defamatory statements, when read in context, were not meant as recitation of fact. Thus, even though some of the individual statements were verifiable, they were nonetheless not defamatory.

In *Tatum*, the court was tasked with determining whether a newspaper column about the apparent suicide of the plaintiffs' son was defamatory. *Tatum*, 554 S.W.3d 614. The plaintiffs published an obituary stating their son's cause of death was a car accident, but in reality, he died by suicide following the car accident. *Id*. at 621-622. The plaintiffs alleged that the column implied they were deceptive because they lied about their son's cause of death in the obituary. *Id*. The court found the purpose of the column, which was presented in an informal voice, was to advocate for suicide awareness. Even though some of the implications found in the column were verifiable – i.e., that the plaintiffs were deceptive in the obituary, the context of the opinion column indicated that the statements were opinions and not actionable as defamation. *Id*. at 640 ([t]he court of appeals ignored the column's context, opting instead to focus on de-contextualized words which it—not [the author/defendant]—emphasized…we reject that conclusion, and hold instead that if

15

the column is reasonably capable of casting any moral aspersions on the Tatums, it casts them as opinions.")

In *Lilith Fund*, the defendant was a pro-life advocate who published statements describing the plaintiffs, pro-choice organizations, as being criminal organizations and murderers, based on their support of legalized abortion. *Lilith Fund*, 662 S.W.3d 355. The defendant expressly attested that he had personally studied the relevant criminal statutes, law-review articles, and other legal authorities to support his opinion that the plaintiffs were murderers and criminal organizations that had violated criminal laws. *Id*. at 366-67. The court found that although the defendant literally stated that the plaintiffs were murderers, an accusation that is objectively verifiable, the language the defendant used, and the context, revealed that the statements were meant to be exhortatory, not factual. *Id*. The court found that in large part, the defendant's statements were to advocate for his sincere belief that legalized abortion was murder, not to present facts about the plaintiffs. *Id*. at 369. Although the court could have easily determined whether the plaintiffs were actually murderers based on objective facts and thus found the defendant's statements to be false and defamatory, it instead upheld the mandate expressed in *Tatum* to examine the entire context, causing the opposite outcome.[8] This Court must do the same.

Here, as stated above, the context of the Student Letter shows that the premise is to voice support for Dr. Ewell's recommendations for making the field of music theory more inclusive,

---

[8] In *Dickson v. Afiya Center*, 2021 WL 3412177 (Tex. App,--Dallas 2021 pet. granted), one of the lower court decisions addressed in *Lilith Fund*, the Dallas Court of Appeals determined, without examining the entire context of the statements, that because defendant's accusations of murder were verifiable, they were actionable as defamation. *See Dickson v. Lilith Fund for Reproductive Equity*, 647 S.W.3d 410, 418 (Tex.App—Amarillo 2021 pet. granted). As set forth above – the Texas Supreme Court found that the Dallas court's approach was wrong, and upheld the version of the "opinion" test that did not stop at the "verifiability" question and goes a step further to require courts to also examine the context of the statements. *Lilith Fund*, 662 S.W.3d at 357.

make demands of their school to help achieve that goal, and distance themselves from Volume 12 which a large part of the music theory community perceived to be antithetical to this push for inclusivity. It was not a recitation of facts, let alone a recitation of facts about Jackson. While the Student Letter mentions Dr. Jackson by name once, the point of the letter was not to present facts about him, but rather state the graduate students' opinion that he had committed racist acts that UNT should consider addressing in striving for greater inclusivity. *See also Benson,* 2024 WL 3941012 at *9-10 (defendant's statement that she was sexually assaulted by her stepfather, made in an informal video posted to social media, was her "emotional truth," not fact, and not actionable as defamation); *O'Rourke v. Warren*, 673 S.W.3d 671, 686-87 (Tex.App.—Austin, June 9, 2023, pet. denied) (candidate's tweets about the plaintiff were not actionable because the reasonable person, reading the tweets in the context of the governor's race, would understand the statements to be rhetorical hyperbole commonplace in political campaigns.) A reasonable person would not find the single sentence in the letter referencing Jackson's racist actions as anything more than an opinion supporting the students' call for change.

And while the Student Statement may contain the students' sincerely held beliefs about the state of UNT, CoM, and Jackson, that a statement expresses *sincerely* held subjective opinions does not transform it into actionable defamation. *See Lilith Fund*, 662 S.W.3d at 369. ("[w]e have no reason to doubt [defendant's] sincere belief that abortion is an unjust killing and that the [ordinance] should have the affect he claims [making the plaintiff criminals and murderers]. But the sincerity of one's belief does not transform opinion into fact.").

The language of the Student Statement indicates it is opinion: it uses first-person and is informal. It contains the students' demands, calls for action, an apology, and an expression of their desire to change the culture of their college, university, and field. A reasonable reader with

17

knowledge of the broader context of the controversy caused by Volume 12 of the JSS would read this statement a whole and understand it to be a statement of the students' opinions, not a recitation of facts about Jackson. Accordingly, it is not actionable as defamation.

### D. Jackson cannot prove that Gain acted with actual malice in posting the Student Statement to her Twitter feed.

If this Court finds that the Student Statement is defamatory, Jackson's claim nonetheless fails because he cannot prove the statement was published with actual malice.

**1.** Jackson is a limited purpose public figure.

A plaintiff alleging defamation must establish that the defendant made the statement with the requisite degree of fault. *Tatum*, 554 S.W.3d at 623. A plaintiff who is a public or limited-purpose public figure bears the burden of proving actual malice with clear and convincing evidence. *Hancock v. Variyam*, 400 S.W.3d 59, 64 (Tex. 2013), *WFAA-TV, Inc. v McLemore*, 978 S.W.3d 568, 573 (Tex. 1998).

A limited purpose public figure is a public figure only for a limited range of issues surrounding a particular public controversy. *McLemore*, 978 S.W.3d at 571. Courts apply a three-part test to determine whether someone is a limited-purpose public figure: (1) the controversy must be public – that is, people other than the immediate participants must discuss it and be likely to feel the impact of its resolution; (2) the plaintiff must have had more than a trivial or tangential role in the controversy; and (3) the defamation must be related to the plaintiff's participation in the controversy. *Id.*

The publication of Volume 12 and the subsequent controversy is public. It involves the music theory community – including UNT faculty and students, and members of SMT. It involves countless others from inside and outside of the music theory community who have expressed their opinions on the matter on social media – both supporting the students and faculty and supporting

Jackson. Doc. 1-5 at 19-23, APPX.105-112. Further, Jackson has identified a significant number of publications that have addressed the controversy, including articles he himself published, ranging from esoteric online magazine and journals to the New York Times. *See* APPX.009-014. Jackson role in the controversy is anything but trivial, indeed he alleges that he is at the center of the public discourse on the controversy.. Doc. 1 at p. 2; (characterizing the responses to Vol. 12 as a "witch hunt"); ¶ 52 (alleging that people on social media "clamored" for Jackson to be censored and fired). Finally, the Student Statement is a response to Jackson's participation in the controversy: specifically to the Symposium, including Jackson's article. Jackson is therefore a limited-purpose public figure and must prove that Gain acted with actual malice when she posted the Student Statement on her Twitter account. He cannot do so.

**2. There is no evidence that Gain acted with actual malice.**

Actual malice is more than ill will: it means that the defendant published the statement with knowledge of its falsity or reckless disregard for its truth. *Beneficient v. Gladstone*, No. 6:23-cv-376-JDK, 2024 WL 2338256 at *11 (E.D. Tex. May 22, 204); *Freedom Newspapers of Tex. v. Cantu* 168 S.W.847, 858 (Tex. 2005) (evidence that defendant "had it out" for the plaintiff showed ill will but was not sufficient to establish actual malice.). A defendant acts with reckless disregard when they actually entertain serious doubts about the truth of the statement, and the plaintiff must establish that the defendant *in fact* entertained serious doubts as to the truth of the statement. *Id*. The purpose of the actual malice standard is to protect innocent but erroneous speech on public issues, while deterring "calculated falsehoods." *Turner v. KTRK Television*, Inc., 38 S.W.3d 103, 120 (Tex. 2000). Alleged failure to investigate a matter before speaking is not, standing alone, evidence of reckless disregard for the truth. *Bentley v. Bunton*, 94 S.W. 3d 561, 591 (Tex. 2002). A defendant is entitled to summary judgment if it can negate actual malice as a matter of law. *Hearst v. Skeen*, 159 S.W.3d 633, 637 (Tex. 2005).

First, Statements 1 and 2, which state that the JSS was not student-run, and was not peer reviewed, are substantially true: the editor listed on Volume 12 of the JSS was a junior faculty member, and the Symposium was not peer reviewed. Statements 3-4 cannot be false because they contain only the students' non-verifiable opinions that the lack of peer review indicated a lack of rigor, that UNT had a reputation as an institution with a toxic culture, and that Professor Jackson had engaged in racist actions. Jackson therefore cannot prove that Gain published the statements with knowledge of their "falsity."

That notwithstanding – there is no evidence in the record to suggest that Gain entertained doubts about the "truth" about Statements 1-4 but published them anyways. Indeed, the opposite is true. She testified about Jackson's racist actions, including his actions towards a former student and research assistant, Yi Yi Gao – that he forced her to continue to work for him when her job ended, and threatened to fail her if she did not – could have been based on her race and/or her gender. APPX.061-062, 36:14-17, 37:19-23, 38:9-18; *See also* APPX.089, 54:20-25, 55:1-2. She testified about an additional instance of Jackson's racist actions when he told an Asian student to try speaking with rocks in his mouth in order to improve his English. APPX.091, 77:5-8. Gain also confirmed that she held the opinion that Jackson's article in Volume 12 contained racists sentiments. APPX.059-060, 15:4-10, 18:3-6. The Student Statement was also a collective effort that reflects more than just one single students' experience or opinion about the Symposium or Jackson. APPX.058, 12:11-15, APPX.062, 40:23-25; *See also* APPX.090, 74:20-23 (describing that the goal of the student statement was to issue an apology and ensure accountability). Gain testified that she trusted her colleagues and believed the experiences discussed in the course of crafting the Student Statement. APPX.062-063, 40:23-25, 41:1-6. There is no evidence that it was a "calculated falsehood." Jackson cannot prove the Student Statement was published with actual

malice, and his defamation claim fails for this additional reason.

## II.    Jackson's defamation claim – the Faculty Statement.

### A.  Like the Student Statement, the Faculty Statement contains opinions that do not defame Jackson.

Jackson alleges that the Faculty Statement is defamatory. However, he identifies nothing in the statement that is defamatory. In fact, there is nothing in the statement that names or otherwise identifies Plaintiff.

Instead, Jackson alleges the Faculty Statement is defamatory because it "endorses the call for action outlined in the student's letter" and provides the link to the letter. Jackson Depo. APPX. 084, 244:2-8. In fact, the Faculty Statement does not endorse the call for *actions* as Jackson posits. *See* Doc. 1-5 at 22-23. The statement expressly says: "[w]e endorse the call for action outlined in our students' letter [link to letter], which asks that the College of Music 'publicly condemn the issue and release it freely online to the public' and 'provide a full public account of the editorial and publication process, and it's failures.'" *Id*. This statement plainly adopts only the students' "call to action" that does not name Jackson. The Faculty Statement is devoid of references to Jackson altogether, therefore it cannot defame him. *See e.g.*, *Lilith Fund*, 662 S.W.3d at 367 (statements cannot be defamatory unless they are "about the plaintiffs."). Like the Student Statement, to the extent it identifies any individuals (which Defendants do not concede), it implicates not only Jackson, but Slottow, Graf, and Walls. *Adams v. Starside Custom Builders, LLC*, No. 05-01-01162-CV, 2018 WL 6427640 at *10 (Tex. App.—Dallas 2018, no pet.); *Houseman v. Publicaciones Paso del Norte, S.A. DE C.V.*, 242 S.W.3d 518, 525 (Tex.App.—El Paso 2007, no pet.).

Even if this Court were to find that the Faculty Statement "endorses" the Student Letter, that still would not make it defamatory because as discussed above, the Student Letter is not

defamatory.

In addition to Jackson argument that the Faculty Statement is defamatory because it "endorses" the Student Statement, he argues that it is defamatory because it states that some of the content published in Symposium is "replete with racial stereotyping and tropes," which he disagrees with. APPX.084, 246:12-16.

To reiterate, some of the racial stereotypes and tropes identified include, but are not limited to:

- Couching Professor Ewell's statements about Schenker in "black antisemitism";
- Stating that Ewell is uninterested in bringing "blacks" up to "standard" so that they can compete;
- Labeling elements of black culture as "toxic," calling the lyrics of hip-hop songs "obnoxious";
- Positing that the paucity of black people in music theory is due to the fact fthat they do not grow up in homes where classical music is valued.

Doc. 1-5 at 19-23, APPX.001-008, APPX.059, 15:4-10. For the same reasons the assertions in the Student Statement are non-verifiable opinions, so too is this assertion in the Faculty Statement. It is based on a core of objective facts – that is, the articles published in Volume 12. It reflects the individual judgments and opinions of the faculty members who signed the statement – that these statements, among others, are based on racial stereotypes and tropes. Who is "correct" in the debate of whether the Symposium contained racial stereotypes and tropes cannot be objectively determined. Like the Student Statement, the Faculty Statement is protected opinion and thus not actionable in defamation.

**B. Jackson cannot prove that the Faculty Statement was published with actual malice**

There is also no evidence that the Faculty Statement was published with actual malice. The record indicates Defendant Rebecca Dowd Geoffroy-Schwinden sent some version of the Faculty Statement to Dean Richmond via email, although precisely what version could not be verified. APPX.070, 87:22-25, 88:1-8. In any case, there is no evidence that Geoffroy-Schwinden (or any

22

of the signatories) entertained any doubts about the truth of the statements in the Faculty Statement, or that it was a "calculated falsehood." Like the Student Statement, drafting the Faculty Statement was a deliberate group effort, and there is no indication that it was an effort to publish falsehoods about Jackson. APPX.067, 68:11-14. Indeed, Geoffroy-Schwinden testified that the statement was not about Jackson, did not make false statements about him, and that it was not intended as a blanket endorsement of the Student Statement. APPX.068-069, 80:1-9, 81:7-8, 15-24; APPX.071-072, 115:8-17, 118:23-25, 119:1-25. Jackson's claim against the faculty members fails for this additional reason.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiff Timothy Jackson's defamation claim in its entirety.

Respectfully submitted.

**KEN PAXTON**
Attorney General

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**JAMES LLOYD**
Deputy Attorney General for Civil Litigation

**KIMBERLY GDULA**
Chief, General Litigation Division

_____/s/ Mary B. Quimby_____
**BENJAMIN S. WALTON**
*Lead Attorney*
Texas Bar No. 24075241
**MARY B. QUIMBY**
Texas Bar No. 24132506
Assistant Attorneys General
General Litigation Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711
(512) 463-2120 – Phone
(512) 320-0667 – Fax
benjamin.walton@oag.texas.gov
mary.quimby@oag.texas.gov

***Counsel for Defendants***

24

**CERTIFICATE OF SERVICE**

I hereby certify that on December 20, 2024, a true and correct copy of this document was electronically filed using the Court's CM/ECF system, which will send notification of such filing to the following counsel of record:

Michael Thad Allen, Esq.
ALLEN LAW, LLC
PO Box 404
Quaker Hill, CT 06375
(860) 772-4738 (phone)
(860) 469-2783 (fax)
mallen@allenharrislaw.com

Jonathan Mitchell
MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

***Counsel for Plaintiff***

*/s/ Mary B. Quimby*
**MARY B. QUIMBY**
Assistant Attorney General