**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| TIMOTHY JACKSON, | § | |
| *Plaintiff*, | § | |
| | § | |
| | § | |
| v. | § | Civil Action No. 4:21-cv-00033 |
| | § | |
| LAURA WRIGHT, MILTON B. LEE, | § | |
| MELISA DENIS, MARY DENNY, | § | |
| DANIEL FEEHAN, A.K. MAGO, | § | |
| CARLOS MUNGUIA, AND G. | § | |
| BRINT RYAN, each in their official | § | |
| capacities as members of the board of | § | |
| regents for the University of North | § | |
| Texas System; RACHEL GAIN; | § | |
| ELLEN BAKULINA; ANDREW | § | |
| CHUNG; DIEGO CUBERO; STEVEN | § | |
| FRIEDSON; REBECCA DOWD | § | |
| GEOFFROY-SCHWINDEN; | § | |
| BENJAMIN GRAF; FRANK | § | |
| HEIDLBERGER; BERNARDO | § | |
| ILLARI; JUSTIN LAVACEK; PETER | § | |
| MONDELLI; MARGARET NOTLEY; | § | |
| APRIL L. PRINCE; CATHY | § | |
| RAGLAND; GILLIAN ROBERTSON; | § | |
| HENDRIK SCHULZE; VIVEK | § | |
| VIRANI; AND BRIAN F. WRIGHT, | § | |
| *Defendants*. | § | |

---

**THE DEFAMATION DEFENDANTS' RESPONSE TO PLAINTIFF TIMOTHY**
**JACKSON'S MOTION FOR SUMMARY JUDGMENT ON DEFAMATION LIABILITY**

---

KEN PAXTON
Attorney General of Texas
BRENT WEBSTER
First Assistant Attorney General
RALPH MOLINA
Deputy First Assistant Attorney General
JAMES LLOYD
Deputy Attorney General for Civil Litigation
KIMBERLY GDULA
Chief, General Litigation

MARY B. QUIMBY
Texas Bar No. 24132506
Assistant Attorney General
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 | Fax: (512) 320-0667
mary.quimby@oag.texas.gov

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................... ii

TABLE OF AUTHORITIES ..................................................................... iii

JACKSON'S "UNDISPUTED" MATERIAL FACTS ............................................2

ARGUMENT AND AUTHORITIES ...............................................................3

I.    The "First Student Petition" ...................................................5

    A.    The First Student Petition was not published by the Faculty Defendants ...........................................................5

    B.    The First Student Petition is not defamatory, nor was it published with actual malice. ..............................................6

II.    The statement in the Student Petition about Jackson's "racist actions" is a non-actionable opinion. ..........................................10

III.    Neither the Faculty Petition, nor the Student Petition, contain false statements. ......................................................................11

    A.    The Faculty Petition did not endorse the Student Petition in its entirety. ................................................12

    B.    The Faculty Petition does not state that Ewell was not *allowed* or *permitted* to respond in the pages of the JSS. .................15

    C.    Jackson's publishing of an article in the Symposium is an "action." .........................................................19

IV.    Jackson has not proven actual malice......................................20

    A.    The statement about Jackson's racist actions....................21

    B.    The statement about Ewell being "afforded the opportunity to respond in print."..........................23

    C.    The statement about "extortion" .........................................24

CONCLUSION..........................................................................................25

CERTIFICATE OF SERVICE .................................................................27

# TABLE OF AUTHORITIES

## Cases

*Beneficient v. Gladstone,*
  No. 6:23-cv-376-JDK, 2024 WL 2338256 (E.D. Tex. May 22, 204) .................................. 4, 9

*Benson v. Guerrero,*
  No. 01-23-00596-CV, 2024 WL 3941012  (Tex.App.—Houston [1st] no pet) .................... 11

*Bentley v. Bunton,*
  94 S.W.3d 561 (Tex. 2002) ................................................................................................ 12, 21

*Campbell v. Clark,*
  471 S.W.3d 615 (Tex.App.—Dallas 2015, no pet.) .......................................................... 4, 11

*Cooper v. Kelsey Seybold Med. Grp. P.A.,*
  379 F.3d 285 (5th Cir. 2004) .................................................................................................... 18

*Dallas Morning News v. Tatum,*
  554 S.W.3d 614 (Tex. 2018) ........................................................................................... 4, 6, 19

*Exxon Mobil Corp. v. Rincones,*
  520 S.W. 572 (Tex. 2017) ............................................................................................................ 6

*Forbes Inc. v. Granada Biosciences, Inc.,*
  124 S.W. 3d 167 (Tex. 2003) ................................................................................. 21, 24, 25

*Fox Entertainment Group, Inc. v. Abdel-Hafiz,*
  240 S.W. 3d 524 (Tex. App. 2007)................................................................................. 24, 25

*Freedom Newspapers of Texas v. Cantu,*
  168 S.W.847 (Tex. 2005)..................................................................................... 4, 9, 10, 21

*Gaylord Broad. Co. v. Francis,*
  7 S.W.3d 279 (Tex. App.—Dallas 1999, pet denied) ............................................................ 4

*Greenbelt Co-op. Pub. Ass'n. v. Bresler,*
  398 U.S. 6 (1970)............................................................................................................................ 8

*Harte-Hanks Communications, Inc. v. Connaughton,*
  491 U.S. 657 (1989)................................................................................................................ 21, 24

*Hearst Corp. v. Skeen,*
  159 S.W.3d 633 (Tex. 2005)..................................................................................................... 21

*Lilith Fund for Reprod. Equity v. Dickson,*
  662 S.W.3d 355 (Tex. 2023)............................................................................................ 4, 6, 7, 15

*Masson v. New Yorker Magazine, Inc.,*
  501 U.S. 496 (1991).................................................................................................................... 18

*Milkovich v. Lorain Journal Co.,*
  497 U.S. 1 (1990) ............................................................................................................................ 4

*Musser v. Smith Protective Servs., Inc.,*
  723 S.W. 2d 653 (Tex. 1987).................................................................................................... 4

*Nat'l Rifle Ass'n of America v. Ackerman McQueen, Inc.,*
  No. 3:19-CV2074-G, 2021 WL 3618113 (N.D. Tex. 2021)................................................ 8

*New Times, Inc. v. Isaaks,*
  146 S.W.3d 144 (Tex. 2004)..................................................................................................... 4

*Penrose Hill, Ltd. v. Mabray,*
  479 F.Supp.3d 840 (N.D. Cal. 2020) ..................................................................................... 12

*Polk Cnty. Publ' v. Coleman*,
    685 S.W.3d 71 (Tex. 2024)..........................................................................................13, 18

*Roe v. Patterson*,
    668 F.Supp.3d 582 (5th Cir. 2023) ...............................................................................4, 12

*Salyer v. S. Poverty Law Ctr. Inc.*,
    701 F.Supp.2d 912 (W.D. Ky. 2009)..................................................................................12

*Spend Life Wisley Co. v. Phillips*,
    700 F.Supp.3d 510 (E.D. Texas, 2023)................................................................................6

*Turner v. KTRK Television, Inc.*,
    38 S.W.3d 103 (Tex. 2000)..............................................................................21, 24, 25

*Vice v. Kasprazak*,
    318 S.W.3d 1 (Tex.App.—Houston [1st] 2009,  rh'g overruled)................................10, 12, 15

*Walker v. Beaumont Indep. Sch. Dist.*,
    938 F.3d 724 (5th Cir. 2019) ...............................................................................................3

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| TIMOTHY JACKSON, *Plaintiff*, | § § § § § | |
| v. | § § § | Civil Action No. 4:21-cv-00033 |
| LAURA WRIGHT, MILTON B. LEE, MELISA DENIS, MARY DENNY, DANIEL FEEHAN, A.K. MAGO, CARLOS MUNGUIA, AND G. BRINT RYAN, each in their official capacities as members of the board of regents for the University of North Texas System; RACHEL GAIN; ELLEN BAKULINA; ANDREW CHUNG; DIEGO CUBERO; STEVEN FRIEDSON; REBECCA DOWD GEOFFROY-SCHWINDEN; BENJAMIN GRAF; FRANK HEIDLBERGER; BERNARDO ILLARI; JUSTIN LAVACEK; PETER MONDELLI; MARGARET NOTLEY; APRIL L. PRINCE; CATHY RAGLAND; GILLIAN ROBERTSON; HENDRIK SCHULZE; VIVEK VIRANI; AND BRIAN F. WRIGHT, *Defendants*. | § § § § § § § § § § § § § § § § § § § § § § § § | |

---

**THE DEFAMATION DEFENDANTS' RESPONSE TO PLAINTIFF TIMOTHY JACKSON'S MOTION FOR SUMMARY JUDGMENT ON DEFAMATION LIABILITY**

---

Plaintiff Timothy Jackson's Motion for Summary Judgment ("MSJ") fails to demonstrate the essential elements of a defamation claim: the falsity of the statements, the defamatory nature of the statements, and that the Defamation Defendants published the statements with actual malice. The Defamation Defendants agree that defamation claims are particularly appropriate for disposition on a motion for summary judgment. As set forth below, Jackson's MSJ, in conjunction with the Defamation Defendants' MSJ, demonstrate that his claim fails to meet the essential elements; therefore, this court can find that his defamation claim fails as a matter of law.

## JACKSON'S "UNDISPUTED" MATERIAL FACTS

Initially, both of Jackson's statements of fact, the first "Factual Background" contained in his Motion for Summary Judgment (Doc. 80, pp. 1-14) and second "Undisputed Statement of Facts" filed separately (Doc. 81) contain a significant number of inaccurate assertions.

Most relevant to Jackson's defamation arguments, he represents the following: (1) the Faculty Petition "republished" the Student Petition; (2) the Faculty Petition endorsed the entire Student Petition; (3) the Defamation Defendants could not identify Jackson's racist actions; (4) Gain did not identify Jackson's conduct she believed to be extortion; and (5) the Faculty Petition included a false statement of fact – that Ewell was not afforded the opportunity to respond in print.[1] *See* Doc. 80, at pp. 3-4, 7, 12, 11, *See also* Doc. 81, ¶¶ 45, 47, 52, 68, 87, 93-104. As demonstrated below, the Faculty Petition only "endorsed" a portion of the Student Petition; the Defamation Defendants identified Jackson's actions they believed to be racist, including but not limited to his statements in Volume 12; Gain identified Jackson's conduct that she and the students believed was "extortion;" and the statement in the Faculty Petition about Ewell's opportunity to respond in the Symposium is true.

Jackson also presents as fact his argument that Defendant Geoffroy-Schwinden was responsible for drafting the Faculty Petition, and in doing so, strengthened the Faculty Petition's "endorsement" of the student petition with each draft. *See* Doc 80, at pp. 8-11, Doc. 81 at ¶ 48-83. He cites to approximately 20 pages of her deposition testimony and represents that therein, she testifies that four drafts of the Faculty Petition exist, and that each subsequent draft more strongly

---

[1] The inaccurate assertions are not limited to the points enumerated here. For example, Jackson also states Benjamin Brand removed Jackson from the JSS and presents other unsupported arguments, such as that the faculty wanted Jackson to be disciplined, terminated, and condemned. Doc. 80 at pp. 4, 12.

supports the Student Petition. Response APPX.069-075[2], 92:21-116:4. But Geoffroy-Schwinden did not confirm the sequence of these drafts, nor did she confirm that she personally drafted them. *Id*. She also specifically testified that in the Faculty Petition, the Faculty Defendants[3] limited their endorsement of the Student Petition to the portion identified in their letter. Response APPX.075, 114:1-115:1-17, 116:23-117:7. As demonstrated below, this unequivocal intent to specifically *not* endorse the entire Student Petition indicates, among other things, a lack of actual malice on the part of the Defamation Defendants, and is fatal to Jackson's claim.

## ARGUMENT AND AUTHORITIES

To reiterate the relevant law established in the Defamation Defendants' MSJ: Jackson bears the burden of demonstrating that the allegedly defamatory statements are actually defamatory, false, and published with actual malice.

Specifically, to prevail on a claim for defamation, a plaintiff must establish: (1) the publication of a false statement to a third party; (2) that was defamatory concerning the plaintiff; (3) that the defendant acted with the requisite degree of intent; and (4) damages. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 743 (5th Cir. 2019).

The threshold question in defamation cases is whether the complained of statements are reasonably capable of defamatory meaning. *Musser v. Smith Protective Servs.*, *Inc.*, 723 S.W. 2d 653, 655 (Tex. 1987). Whether something is capable of defamatory meaning is an objective inquiry

---

[2] This Response references the Doc. 83-2, the Appendix filed with the Defamation Defendants' MSJ (the "MSJ APPX"), and an additional appendix filed with this response (the "Response APPX").

[3] The Faculty Defendants include: Ellen Bakulina, Andrew Chung, Diego Cubero, Steven Friedson, Rebecca Dowd Geoffroy-Schwinden, Benjamin Graf, Frank Heidlberger Bernardo Illari, Justin Lavacek, Peter Mondelli, Margaret Notley, April L. Prince, Cathy Ragland, Gillian Robertson, Hendrik Shulze, Vivek Virani, and Brian F. Wright. The "Defamation Defendants" includes the Faculty Defendants plus Rachel Gain.

and a question of law. *New Times, Inc. v. Isaaks*, 146 S.W.3d 144, 157 (Tex. 2004). If the complained-of statements are not capable of defamatory meaning, summary judgment is proper. *Gaylord Broad. Co. v. Francis*, 7 S.W.3d 279, 283 (Tex. App.—Dallas 1999, pet denied).

A statement that is not verifiable as false, is not capable of defamatory meaning. *Dallas Morning News v. Tatum*, 554 S.W.3d 614, 624 (Tex. 2018). An opinion, like any other statement, *may* be actionable if it asserts facts that can be objectively verified based on a core of objective evidence. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21-22 (1990); *Campbell v. Clark*, 471 S.W.3d 615, 625 (Tex.App.—Dallas 2015, no pet.). Even if a statement is verifiable as false, it is not defamatory if the context reveals that the statement is merely an "opinion masquerading as fact." *Id*. Courts must examine the statement from the perspective of a reasonable person's perception of the whole communication and not from isolated statements. *Lilith Fund for Reprod. Equity v. Dickson*, 662 S.W.3d 355, 363 (Tex. 2023).

When a case involves a public official, media defendant, or a matter of public concern, or any combination thereof, the burden is upon the plaintiff to prove falsity. *Roe v. Patterson*, 668 F.Supp.3d 582, 592-393 (5th Cir. 2023). Jackson alleges that he has spoken on a matter of public concern, therefore, he must prove that each of the statements he alleges is defamatory is verifiably false. *See* Doc. 16 at 20. Crucially, to survive the Defamation Defendants' Motion for Summary Judgment, Jackson must also prove that the statements were published with actual malice. *Beneficient v. Gladstone*, No. 6:23-cv-376-JDK, 2024 WL 2338256 at *11 (E.D. Tex. May 22, 204); *Freedom Newspapers of Tex. v. Cantu* 168 S.W.847, 858 (Tex. 2005)

As argued in the Defamation Defendants' Motion for Summary Judgment (Doc. 83), the statements relating to the Defamation Defendants' opinions about Jackson's racist actions, are non-verifiable and non-actionable because they are unequivocally based on the Defamation

4

Defendant's *assessment* of verifiable facts, and are not statements of fact themselves. Further, as demonstrated below, the additional allegedly defamatory statements – about Ewell's opportunity to respond to the Symposium in print, and that Jackson "extorted" a student – are true. Jackson thus fails to meet his burden of demonstrating that the statements are defamatory and *false*, therefore his Motion for Summary Judgment as to the Defamation Defendants must be denied, and judgment as a matter of law entered for the Defamation Defendants.

If this Court finds that there is ambiguity in their respective statements, all 18 of the Defamation Defendants must be allowed to defend themselves at trial, repetitive or not.

## I.    The "First Student Petition"

Jackson's motion identifies three distinct statements allegedly published by the Defamation Defendants – the "First Student Petition" (Doc. 82-15, Ex. O), the "Second Student Petition" (Doc. 82-3, Ex. C at pp. 19-20) and the "Faculty Petition" (Doc. 82-3, Ex. C at pp. 21-22).

The student petitions are different and there is one especially important distinction between the two: the First Student Petition includes a statement that Jackson engaged in "extortion through grade manipulation and threats to students' careers and reputations," and the Second Student Petition does not contain this statement. *Compare* Doc. 82-15, Ex. O with Doc. 82-3, Ex. C at pp. 19-20.

### A.   The First Student Petition was not published by the Faculty Defendants

Jackson alleges that this statement about extortion is defamatory and attempts to attribute it to all of the Defamation Defendants. But the Faculty Defendants did not publish the First Student Petition. A statement is published when it is communicated to a third person, and that person understands the "defamatory import" of the statement. *Exxon Mobil Corp. v. Rincones*, 520 S.W. 572, 579 (Tex. 2017).

5

Jackson seems to suggest that because the Faculty Petition links to the Second Student Petition, the Faculty Defendants are also liable for any allegedly defamatory statements in the First Student Petition. As discussed below in Section II(A), the fact that the Faculty Petition links to the Second Student Petition does not make the Faculty Defendants liable for the students' statements. That notwithstanding, the Faculty Petition only links to the Second Student Petition, not the first. *See* Response APPX.009, 119:6-120:1; APPX.013, Depo Ex. 9 (testifying that the Faculty Petition linked to the version of the Student Petition that appeared in the ad hoc panel report, which is Doc. 82-3, Exhibit C pp. 19-20). Thus – even assuming that the Faculty Defendants can be held liable for statements they merely linked to- and that the statements were indeed defamatory as a matter of law, this still would not encompass the First Student Petition.

**B.  The First Student Petition is not defamatory, nor was it published with actual malice**.

The Defamation Defendants incorporate arguments stated in their Motion for Summary judgment without repeating them in full herein. Specifically, the Defamation Defendants point this Court to Section C of their MSJ, at pages 12-17. *See* Doc. 83. The factors used to determine whether a statement is fact or opinion as discussed in *Tatum*, *Lilith Fund*, and *Spend Life Wisely*, are relevant here. *See generally*, *Dallas Morning News v. Tatum*, 554 S.W.3d 614, 624 (Tex. 2018); *Lilith Fund for Reprod. Equity v. Dickson*, 662 S.W.3d 355, 363 (Tex. 2023); *Spend Life Wisley Co. v. Phillips*, 700 F.Supp.3d 510, 522-23 (E.D. Texas, 2023). To summarize: to determine whether a statement is factual and capable of defaming the plaintiff, the entire statement and its context, the type of language employed, and word choices, must be examined. *Id*.

The First Student Petition is not defamatory for the same reason the Second Student Petition is not defamatory: it is a call for action, not a recitation of facts. Placing the First Student

Petition in the context of the controversy caused by Volume 12 also makes it clear that the statement contains advocacy and opinions. The First Student Petition's clear purpose is to list demands of the College of Music ("CoM"), and articulate the changes the students hoped to see, not to falsely accuse Jackson of the crime of extortion. Doc. 82-15, Ex. O. A list of demands is objectively not a list of facts. Passionate "exhortatory" language used in both student petitions indicates a statement is advocacy, not facts. *See e.g. See Lilith Fund*, 662 S.W.3d at 366, Doc. 83, Defamation Defendant's MSJ at pp. 13-14.  The language used in the First Student Petition is arguably even more exhortatory than the Second Student Petition.

Further, the First Student Petition uses a first-person, informal style. *See* Doc. 82-15. It uses subjective language meant to be a call to action: it encourages the CoM to investigate Volume 12 and highlights what the students believe are the worst parts of the issue. *Id*. It "urgently calls" upon the CoM to make substantial changes and take the actions proposed in the letter, including cultural changes to the college as a whole. *Id*. It states that the proposed changes are necessary for both the sake of UNT's reputation, and for the well-being of its students. *Id*. It is addressed solely to Dean Richmond, the dean of the CoM, and its stated purpose is to address concerns in the college brought to light by the publication of Volume 12 of the JSS. *Id*. The language of the petition and context of the controversy shows that it is a *petition* for changes to the college, sent straight to the source, not a list of facts about Jackson.

Jackson cites *Nat'l Rifle Ass'n of America v. Ackerman McQueen, Inc.*, to support his contention that the inclusion of the word "extortion" means that the students were accusing Jackson of a crime, and thus the First Student Petition is defamation *per se. See Nat'l Rifle Ass'n of America v. Ackerman McQueen, Inc.*, No. 3:19-CV2074-G, 2021 WL 3618113 (N.D. Tex. 2021) In *Ackerman*, the court found that the defendant's letter "quite clearly carriers the gist that

7

[plaintiff] committed extortion." *See Ackerman* 2021 WL 3618113 at \*11. To arrive at this conclusion, the court considered that the defendant's letter not only accused the plaintiff of extortion but went on to "succinctly state the basic elements of blackmail or extortion." *Id.*

There are no similar facts in this case that would allow a reasonable reader to conclude that the gist of the First Student Petition was to accuse Jackson of the crime of extortion. The students do not cite the elements of the crime. Indeed, the First Student Petition indicates that Jackson's "extortion" occurred in the past and had already been addressed by administration, including by removing Jackson from overseeing the Center of Schenkerian Studies ("CSS") Research Assistant ("RA"). *Id.* The students merely reference Jackson's past behaviors, including extortion, to provide additional context as to why they were seeking action: they believed that Jackson had a history of abusing his position, and the publication of Volume 12 was another example of this. *Id.* The use of the word "extortion" alone does not indicate that the Student Petition was accusing Jackson of a crime. *See e.g. Greenbelt Co-op. Pub. Ass'n. v. Bresler*, 398 U.S. 6, 14 (1970) (no reasonable reader would have perceived the use of the word "blackmail" as accusing the plaintiff of a crime."). A reasonable reader who read the entire statement and had knowledge of the controversy would not understand the students to be accusing Jackson of a crime. The First Student Petition is therefore not defamation *per se.*

Next, Jackson argues that the Faculty Defendants admitted that they were unaware of any instances of "extortion" committed by Defendant, thereby implying that they knew the statement was false. This speaks to the actual malice question, which requires that Jackson prove that the statement was published with knowledge of its falsity. *Beneficient*, 2024 WL 2338256 at \*11 (E.D. Tex. May 22, 2024); *Cantu* 168 S.W. at 858. Because the Faculty Defendants did not publish

statements about extortion, that they cannot point to an example of Jackson's extortion is of no consequence.

This argument also apparently does not include Gain. To the extent that the publishing of the First Student Petition can be imputed to Gain, which Defendants do not concede, Gain believed, based on her own knowledge and the knowledge shared by her colleagues who were involved in drafting this statement, that Jackson extorted work from another student, YiYi Gao, by threatening to change her grade if she did not work for free. Response APPX.050, 50:1-12; Response APPX.048, 37:19-23.

Importantly, like Gain, Peter Kohanski, another student involved in the drafting of the statement, testified that the "extortion" statement had to do with YiYi Gao, and at the time the statement was drafted, he had personal knowledge about the subject. Response APPX.064, 64:4-16.  The statement itself indicates it was authored by multiple students ("We, a cross-section of graduate students in the..[MHTE]…"), and Kohanski further testified that others involved in drafting the statement had additional in-depth knowledge of the situation with Gao. Response APPX.063, 23:9-20; Response APPX.065, 67:4-12. There is no evidence in the record proving this statement's falsity, nor does Jackson offer any in his MSJ. There is also no evidence that any of the students, let alone Gain, entertained actual doubts about this statement, thus Jackson also cannot demonstrate actual malice relating to this statement.

Ultimately, the First Student Petition is not false, its statements cannot be imputed to the Faculty Defendants, and Jackson cannot prove it was published with actual malice. His defamation claim based on this First Student Petition fails.

## II.    The statement in the Student Petition[4] about Jackson's "racist actions" is a non-actionable opinion.

In support of his argument that the "racist" statement in the Student Petition is defamatory, Jackson cites *Freedom Newspapers v. Cantu* and insinuates that in that case, the court found that the defendant's statement that the plaintiff was racist was defamatory. *See Freedom Newspapers of Tex. v. Cantu*, 126 S.W.3d 185, 193 (Tex.App.—Corpus Christi 2003, pet. granted.). But the issue before the Court of Appeals[5] in *Cantu* was whether the defamatory statement in question – the newspaper's report that the plaintiff stated "no anglo could be sheriff," was substantially true. *Id*. The evidence indicated that plaintiff did not actually make this statement defendant quoted him as saying, which created a fact question precluding summary judgment. *Id*. This case is not instructive on the matter of whether or not stating someone or something is "racist" is defamatory.

As discussed at length in Defendants' MSJ, the statement in the Student Petition that Jackson engaged in racist actions is not verifiable as true or false because it involves the students' individual assessment of Jackson's statements in Volume 12 (and other past conduct as testified to by Gain). Whether or not their opinion is "correct" cannot be determined with objective evidence. *Vice v. Kasprzak*, 318 S.W.3d 1, 21, (Tex.App.—Houston [1st] 2009, rh'g overruled) (defendant's letter to the editor expressing that the plaintiff had engaged in unethical business practices was the defendant's *individual judgment of* verifiable facts and was thus constitutionally protected

---

[4] Hereafter, "Student Petition" will refer to the "Second Student Petition."

[5] Jackson cites to the Court of Appeals decision in this case, not the Texas Supreme Court's decision cited above. Notably, the Texas Supreme Court ultimately found that the plaintiff did not demonstrate that the defendant published the mischaracterization of plaintiff's statement with actual malice, specifically stating "[t]he summary judgment record before us establishes as a matter of law that [defendant's] reporter *thought he was reporting the gist of what [plaintiff] said.* Accordingly, any error in the [defendant's] articles evidences at most negligence, not actual malice…we render judgment that [plaintiff] take nothing." *See Cantu*, 168 S.W. 3d 847, 858-59 (emphasis added).

opinion.); *Benson v. Guerrero*, No. 01-23-00596-CV, 2024 WL 3941012 at *9 (Tex.App.—Houston [1st] no pet); *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19-21 (1990); *Tatum*, 554 S.W.3d at 624; *Campbell v. Clark*, 471 S.W.3d 615, 625 (Tex.App.—Dallas 2015, no pet.). Jackson presents no evidence or law to support a finding that the "racist" statement is anything other than a non-actionable opinion protected by the First Amendment. Therefore, his claim based on the "racist actions" statement fails as a matter of law.

### III.    Neither the Faculty Petition, nor the Student Petition, contain false statements.

Jackson crafts a number of sophistic arguments to attempt to show that statements in the Faculty and Student petitions are false statements of fact and therefore defamatory.

First (as addressed in Section A), he argues that despite the fact that the Faculty Petition does not mention Jackson by name, and specifically enumerates the portion of the Student Petition it "endorses;" the Faculty Petition nonetheless endorses the students' entire "call to action" and therefore adopts the statement that Jackson engaged in racist conduct.

Second (as addressed in Section B), he argues that because Ewell received the JSS's call for papers which solicited response to his own talk, the Faculty Defendants knowingly lied when they stated Ewell was not "afforded the opportunity to respond in print."

Third (as addressed in Section C), Jackson implies that all of the Defamation Defendants stated he engaged in racist conduct (which relies on the premise that the Faculty Defendants adopted the entirety of the students' call for action), and argues that none of them were actually able to identify any racist actions he engaged in. This argument relies on additional assumption that the statements Jackson made in his article in the Symposium are not *actions* because they are "*speech*," and therefore because the only "racist *actions*" identified by the Faculty Defendants

11

were his *speech*, these do not "count," leading to the conclusion that the Faculty Defendants lied when they stated he engaged in racist actions.

Jackson must support all of these theories of falsity by a preponderance of the evidence. *Roe v. Patterson*, 668 F.Supp.3d 582, 592-393 (5th Cir. 2023); *Bentley,* 94 S.W.3d at 587, *Vice v. Kasprzak*, 318 S.W.3d 1, 16 (Tex.App—Houston [1ˢᵗ Dist.] 2009, pet. denied.). As set forth below, the theories upon which Jackson relies to support these arguments are not supported by the record, or defamation law, therefore he cannot do so.

**A. The Faculty Petition did not endorse the Student Petition in its entirety.**

As Jackson acknowledges, simply linking to an allegedly defamatory statement is not republishing. *See Penrose Hill, Ltd. v. Mabray,* 479 F.Supp.3d 840, 851 (N.D. Cal. 2020); *Salyer v. S. Poverty Law Ctr. Inc.*, 701 F.Supp.2d 912, 913-14 (W.D. Ky. 2009). In light of this, to support his argument that the Faculty Defendants also made a statement about his racist actions, Jackson argues that the Faculty Petition impliedly endorsed the students entire call to action by stating "[w]e endorse the call for action outlined in our students letter." However, this only part of the sentence, and the entire relevant paragraph reads:

> We endorse the call for action outlined in our students' letter (https://drive.google.com/file/d/1PekRT8tr5RXWRTW6Bqdaq57svqBRRcQK/view), **which asks that the College of Music "publicly condemn the issue and release it freely online to the public"** and **"provide a full public account of the editorial and publication process, and its failures."** Responsible parties must be held appropriately accountable.

Doc. 82-3, Ex. C at pp. 21-22 (emphasis added.). More specifically, he argues that in making the above statement, the faculty members actually intended to call out Jackson by name and state that

he engaged in racist actions. He argues that the Faculty Petition's "gist"[6] was to "target[] and smear[]" him.

But Jackson acknowledges that to support and prove this argument of defamation by implication, he must make an *especially rigorous* showing that the defendants intended this defamatory gist based on the *publication itself*, and in light of the context. *Tatum* 554 S.W.3d at 633, 635. The salient question is therefore - would an objective reasonable reader draw the implication that Jackson proposes - that the Faculty Petition impliedly names Jackson and states that he engaged in racist conduct, from the above? *Id*. at 631. The Faculty Petition is plainly devoid of any references to Jackson, nor does it support this "gist" Jackson proposes. Its main theme, central idea, or essence was to express an opinion about the unscholarly nature of Volume 12. *Id*. at 620.

The Student Petition is part of the relevant context, and it is fair to assume that a reasonable person reading the Faculty Petition would click on the link to view it. There, it would be obvious to a reasonable reader that the students' "call to action" contains three additional "action items" in addition to the two points stated in the Faculty Petition. The main points of the "call to action" in the Student Petition are the following: (1) publicly condemn the issue and release it freely online to the public; (2) provide a full public account of the editorial and publication process, and its failures; (3) dissolve the JSS; (4) critically examine the culture in the college, division, and UNT, act to change that culture; and (5) hold accountable every person responsible for the direction of the publication. Doc. 82-3, Ex. C at pp. 19-20. The call to action in the Student Petition additionally

---

[6] "Gist" means what a reasonable reader would perceive as the main point, or essence, of the publication. *See Polk Cnty. Publ' v. Coleman*, 685 S.W.3d 71, 76-77 (Tex. 2024).

elaborates on each of these action items, including in the *fifth* action item by stating "[s]pecifically, the actions of Dr. Jackson—both past and present—are particularly racist and unacceptable."

If the Faculty Petition intended to endorse all five points of the "call to action," *plus* the elaboration provided for each action item, it would not have stopped at the second action item, and it would have included all of the elaboration. If the Faculty Petition intended to endorse the entire call to action, including the elaboration, it would have stopped at "we endorse the call for action outlined in our students' letter," or included all five of the main points of the call to action. But it did not – it limits its "endorsement" to two of the main points, and adopts *none* of the elaboration.

As stated in the Defamation Defendants' MSJ, even if the Faculty Petition adopted the entire call to action, it still would not be defamatory because the Student Petition expresses the students' opinions, not facts, and is not defamatory. *See* Doc. 83, Defamation Defendants' MSJ at pp. 8-20.

Jackson next argues that because the Faculty Petition states "[r]esponsible parties must be held appropriately accountable," it thereby identified Jackson by name, because the gist of the Student Petition is that the only responsible party identified by the students was Jackson. This requires an assumption that the Faculty Petition not only adopted the entire call to action, but also the entire Student Petition *plus* this additional implication Jackson suggests. Such an assumption is not supported by the text, which objectively implicates *all responsible parties* for Volume 12 – Jackson, Stephen Slottow, Levi Walls, and Benjamin Graf – the entire editorial staff of the JSS. *See e.g* Response APPX.080-081, 145:25-146:5 (Slottow and Jackson were called out as "responsible parties"); Response APPX.082, 152:15-18 (the statement is focused on Jackson but "every person responsible" casts a wider net.).

14

Even if this assumption were supported by the text, a call for Jackson to be held accountable is not something that can be proven true or false. It is *not a fact* but another instance of a *subjective* call to action that as a matter of law, is not defamatory. *See Vice*, 318 S.W.3d at 22 (defendant's request that the plaintiff be reported to the bar association was not a statement of fact but a call to action based on their opinion that the plaintiff's behavior was unethical and was thus, not defamatory.)

Jackson concludes that the Faculty Petition endorsed the students' entire call to action, and was therefore actually all about him, without making an especially rigorous showing supporting such a conclusion. The Faculty Defendants cannot be held liable for statements in the Student Petition, and his claim based on this premise fails.

**B. The Faculty Petition does not state that Ewell was not *allowed* or *permitted* to respond in the pages of the JSS.**

The statement that Ewell was not afforded the opportunity to respond in print is not defamatory for a number of reasons. Doc. 82-3, Ex. C at pp. 21-22.

First, the statement it is not defamatory because it is not imputed to Jackson alone, but minimally to the entire editorial staff of the JSS – Jackson, Slottow, Graf, and Walls. In order to be defamatory, a statement must refer to *only* the plaintiff. *See e.g.*, *Lilith Fund*, 662 S.W.3d at 367 (statements cannot be defamatory unless they are "about the plaintiffs"); *Adams v. Starside Custom Builders, LLC*, No. 05-01-01162-CV, 2018 WL 6427640 at *10 (Tex. App.—Dallas 2018, no pet.); *Houseman v. Publicaciones Paso del Norte, S.A. DE C.V.*, 242 S.W.3d 518, 525 (Tex.App.—El Paso 2007, no pet.).

15

Second, Jackson failed to identify this statement as one he believed was defamatory or false. Doc. 83-2, MSJ APPX. 084, 243:17-251:13 (Jackson identifying all of the statements in the Faculty Petition that he believed were "false" or "that [he] would argue with.").

Third, the statement is true. Jackson argues that because Ewell probably received the call for papers soliciting responses to his own talk, he was "afforded the chance to respond in print." Jackson explained that the idea for the Symposium was to get people to respond to *Ewell's talk* via a general call for contributions to the Symposium. Response APPX.058-059, 194:3-14, 194:24-195:12. As discussed below, the notion that Ewell was "afforded the opportunity to respond in print" by virtue of the call for papers is illogical because the call for papers requested responses to his own talk. Response APPX.079, 92:10-25, 93:1-11. He would not have provided a response to his own talk; thus, his receipt of the call for papers was not an "opportunity to respond in print."

The Faculty Defendants' testimony shows that the fact that Ewell may have received the call for papers is not the same as being afforded the chance to respond in print. See the following examples of the Defendants' testimony on the matter:

- Defendant Ellen Bakulina testified that although Ewell likely received the call for papers, he would not have responded to his own paper, and the JSS should have given Ewell a specific opportunity to *respond to the responses*. Response APPX.002-003, 95:24-25, 98:1-6. She clarified that an invitation to include him in such a matter was not included in the call for papers. Response APPX.004, 168:12-14. Her interpretation of the statement that Ewell was "not afforded the opportunity to respond in print" was that it addressed that the call for responses did not offer Ewell an opportunity to write a *response to the responses*. Response APPX.004-005, 166:25-167:1-16, 169:3-6.
- Defendant Andrew Chung testified that to the best of the faculty members' knowledge, Ewell was not contacted to *respond to the responses* that were published in Volume 12, and that receiving the call to papers via SMT did not count as an invitation to respond to the pieces that were solicited for Volume 12. Doc. 83-2, MSJ APPX. 050, 121:5-23.
- Defendant Diego Cubero testified that the call for papers called for responses to Ewell's paper, therefore it would have been strange for Ewell to respond to his own paper. Response APPX.043-044, 63:3-66:8. Further, the statement in the Faculty Petition was that Ewell

16

was not able to respond to the articles that were written in response to his essay, and he could have done so before the responses were published. *Id*.

The faculty members' beliefs are supported by other evidence in the record. Jackson admitted that the call for papers was the extent of his communication with Ewell on the matter. Response APPX.060, 205:22-206:4. Slottow, who shared co-advisory responsibility over the JSS with Jackson, testified that although Ewell could have responded to the call for papers, responding to his own paper in that manner would have been illogical, and in retrospect, he would have invited Ewell to participate as a respondent. Response APPX.079, 92:10-25, 93:1-11. He also stated that he understood the statement to mean that "the journal did not invite Dr. Ewell to provide a response to each of the items in the Symposium, and it obviously referred to the fact that Ewell was not invited to respond in that matter, which was a "common and much repeated criticism at the time." Response APPX.083-084, 159:19-22, 164:16-21.

The context of the controversy, and the readership of the Faculty Petition, is also relevant. As evidenced above, actual academics in the field would not characterize Ewell's receipt of the call for papers as an "opportunity to respond in print." To further illustrate this point, in the SMT Response, the SMT board stated their opinion that the JSS "did not invite Ewell to respond in a symposium of essays that discussed his own work" was silencing and designed to exclude. Doc. 82-3, Ex. C at pp. 17-18. And the "Open Letter on Antiracist Actions within SMT" also identified the fact that Ewell was denied a chance "to respond" as an issue. MSJ APPX. 016-041. Ewell did not need to receive an engraved invitation, nor is there any evidence showing that is what a reasonable reader with knowledge of the context would understand the Faculty Petition to be saying. The Faculty Defendants (and many others in the field) stated the opinion that it would have been scholarly to give Ewell more than what he received: the same generic call for papers to respond to *his own work* that everyone else in the entire field received.

17

Further, there is evidence that even scholars outside of the field of music theory understood that the Faculty Defendants meant that Ewell was not invited to engage and provide a rejoinder to the solicited responses. Response APPX.054, 112:7-25, 113:1-10. John Ishiyama, a member of the ad hoc panel tasked to review the publication of Volume 12, and an academic with decades of experience in academic publishing, testified that he read the statement to mean that Ewell was not directly contacted by the editor, which is true. Response APPX.054, 113:1-10, Response APPX.060, 205:22-206:4.

Even assuming arguendo that the statement is not *literally* true, it is substantially true, meaning it is no more damaging than a "truthful" statement.. *Cooper v. Kelsey Seybold Med. Grp. P.A.*, 379 F.3d 285, 291 (5th Cir. 2004) (doctor's defamation claim based on a clinic's representations to former patients could not succeed because the statements, while maybe not literally true, were substantially true.); *Polk Cnty.*, 685 S.W.3d at 76 (establishing the falsity of an allegedly defamatory article is not as simple as showing that the article contains a statement that falls short of literal truth.) The substantial truth doctrine dictates that a statement is not considered false unless it would have had a different effect on the mind of average listener than a literally true statement.. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 501 (1991). Minor inaccuracies do not amount to falsity. *Id*. The "more accurate" or "literally true" version of the statement about Ewell's opportunity to respond would say something like "Ewell was not afforded to the opportunity to respond to the responses published in the Symposium in print." This is not any more or less defamatory to *Jackson* than the statement that was actually published – that Ewell was not afforded the opportunity to respond in print. The evidence above indicates that the reasonable reader with knowledge of the context would have understood this to be the meaning of the statement, and Jackson has not presented any evidence showing otherwise.

18

### C. Jackson's publishing of an article in the Symposium is an "action."

Jackson's argument that the Defamation Defendants only identified his "speech" as racist and thus not "actions" misses key points in the evidence and requires assumptions not supported by the record.

First, Defendant Gain identified additional racist actions in addition to Jackson's statements in his article: namely his treatment of YiYi Gao, and an instance in which he told an Asian student that he should practice speaking with rocks in his mouth to improve his accent. Doc. 83-2, MSJ APPX.061-062, 36:14-17, 37:19-23, 38:9-18; MSJ APPX.089, 54:20-25, 55:1-2; MSJ APPX.091, 77:5-8. Thus, it is not true that all of the Defendants identified Jackson's "speech" as his only racist action.

Second, the Faculty Petition does not state that Jackson committed racist actions. Jackson testified that the only time any of the Faculty Defendnats "called him a racist" was by "endorsing" the student petition." Doc. 83-2, MSJ APPX. 086, 269:4-9. As discussed above, this implication is not supported by the text of the Faculty Petition, or its context.

The above notwithstanding – Jackson's distinction between speech and actions is not applicable here. Jackson argues that his speech in his article cannot reasonably or *legally* be construed as "action." But whether his writing and publication of an article that contains the speech at issue can legally be construed as action is not relevant to the defamation analysis, nor does he point to any law saying otherwise. In defamation, the relevant question is how a reasonable reader would understand an allegedly defamatory statement in context. *Tatum* 554 S.W.3d at 361. A reasonable non-lawyer reader would not read the Student Petition and understand the reference to Jackson's racist actions to be limited to literally only physical actions, and to specifically *exclude* speech.

The text of the Student Petition also does not support such a distinction. The Student Petition primarily addresses Volume 12, what was written in its pages, and how it was published. One of the opening statements in the petition says, "[w]e are appalled by the journal's platforming of racist sentiments in response to Dr. Philip Ewell's plenary address at the Society of Music Theory…Furthermore, we condemn the *egregious statements written* by UNT faculty members within this publication." *See* Doc. 82-3, Ex. C at pp. 19-20 (emphasis added). The Student Petition further states, as part of its call to action, that faculty members who used the *JSS platform to promote racism* should be investigated. In the very next sentence, the Student Petition references Jackson's racist actions. *Id*. It follows logically that those *actions* include publishing an article which the students believed contained racist statements. Nothing in the Student Petition supports a reading that "racist actions" specifically *excludes* speech that the students' believed to be racist.

Accordingly, Jackson has not demonstrated that these statements are false and his defamation claim fails in its entirety.

**IV.    Jackson has not proven actual malice.**

Jackson argues that the Defamation Defendants acted with actual malice in publishing their respective petitions, because they admitted that they had no knowledge of Jackson's racist "actions," and some of the Defamation Defendants worked on the call for papers and therefore knew Ewell was "invited" to respond. As discussed above, these are based on assumptions not supported by the evidence, and/or legal conclusions not supported by defamation law. Regardless, there is no evidence that shows that the Defamation Defendants made these statements with knowledge of their falsity. Rather, the evidence shows that they held the opinions they expressed in the petitions, and believed the statements they made were true.

20

To prove actual malice and demonstrate knowledge of falsity, the plaintiff must establish that the defendants *in fact* entertained serious doubts as to the truth of the statement with clear and convincing evidence. *Beneficient v. Gladstone*, No. 6:23-cv-376-JDK, 2024 WL 2338256 at *11 (E.D. Tex. May 22, 2024); *Freedom Newspapers of Tex. v. Cantu* 168 S.W.847, 858 (Tex. 2005).

Actual malice has been found, for example, where there was evidence that the defendant had obvious reasons to doubt the veracity of the informant, purposely avoided the truth, or knew that the statement could leave a reader with a substantially false impression. *See e.g. Harte-Hanks Comms. v. Connaughton*, 491 U.S. 657, 688 (1989); *Hearst Corp. v. Skeen*, 159 S.W.3d 633, 638-639 (Tex. 2005); *Bentley v. Bunton*, 94 S.W.3d 561, 599 (Tex. 2002); *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 121 (Tex. 2000). No such circumstances exist here. Conversely, courts have found that a difference in opinion about the truth of a statement; not investigating or verifying a story before publishing; and poor word choice or imprecise language, do not show actual malice. *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 681 (1989); *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W. 3d 167, 174 (Tex. 2003); *Bentley*, 94 S.W.3d at 592.

The focus of an actual-malice inquiry is the defendants' state of mind during the editorial process and when the statement was published. *Forbes* 124 S.W. 3d at 174. Circumstantial evidence may be considered to understand the defendant's motive, but neither lack of care nor an injurious motive on the defendant's part is conclusive proof of actual malice. *Bentley*, 94 S.W.3d at 598. A defendant can negate actual malice as a matter of law by proving the statement was not published with knowledge of its falsity. *Cantu* 168 S.W.847 at 854.

## A. The statement about Jackson's racist actions

First, Jackson testified that the only time the faculty defendants called him a racist was when they "endorsed" the Student Petition. Doc. 83-2, MSJ APPX. 086, 269:4-9. Therefore – to

support a finding that the faculty members acted with actual malice with regards to this statement, Jackson must present evidence both that the Faculty Defendants intended to endorse the entire student petition *and* believed the statement that Jackson had engaged in racist conduct to be false. He has not done so, nor can he.

The evidence shows that the faculty members did not endorse or intend to endorse the entire call to action, nor did they name or intend to name Jackson at all. Defendant Geoffroy-Schwinden specifically testified that the Faculty Petition was not about Jackson, that she (and the other faculty members) did not make false statements about Jackson, and the Faculty Petition did not incorporate the students' statement into the Faculty Petition. Response APPX.068, 50:6-11; Doc. 83-2, Doc. 03-2,MSJ APPX. 069, 81:4-24.

As another example, Defendant Cubero testified that the Faculty Petition only "endorses" the two points of the call for action actually enumerated in the Faculty Petition. Response APPX.041-042, 52:3-17, 53:3-14. Defendant Chung testified that he "endorsed" the students' ability to express themselves, not each line of the Student Petition. Response APPX.010-011, 125:5-17, 131:7-11. Defendant Bakulina testified that the faculty never endorsed the "condemnation" of Jackson, and specifically that the Faculty Petition did not endorse the portion of the Student Petition that stated "the actions of Dr. Jackson…are particularly racist and unacceptable." Response APPX.006, 178:14-179:7.

There is also no evidence that the Faculty Defendants believed the students' opinion about Jacksons' racist conduct to be "false." *See e.g.* Doc. 83-2, MSJ APPX. 050, 123:24-124:5 ("I certainly endorse that the students were appalled, that they perceived such to be the case. I think that to many people's reasonable judgments…racially insensitive sentiments appeared in the journal. That was also my understanding. That was also my opinion."). Indeed, the evidence shows

22

that the Faculty Defendants do not believe the statement that Jackson engaged in racist actions to be false - all of the Faculty Defendants themselves held the opinion that some of Jackson's statements in his article published in Volume 12 constitute racist conduct. *See* Doc. 1-4 at 38-40; Doc. 83-2, MSJ APPX.001-008; MSJ APPX.043-046, 59:13-25, 61:15-25, 62:1-25, 63:1-10, 66:11-25, 67:1-10, 69:16-25; MSJ APPX.050, 123:24-25, 124:1-5; MSJ APPX.053-054, 46:20-22, 50:14-16;  MSJ APPX.059-060, 15:4-10, 18:3-6; MSJ APPX.061-062, 36:14-17, 37:19-23, 38:9-18; MSJ APPX.072, 120:14-18; MSJAPPX.075, 39:9-12; MSJ APPX.079, 49:1-5, 50:24-25, 51:1-21. MSJ APPX.089, 54:20-25, 55:1-2; MSJ APPX.091, 77:5-8. As discussed above – Jackson's proposed distinction between "actions" and "speech" is not applicable here, so Jackson's speech "counts" as action.

Regarding Gain, the record shows that the students genuinely believed that Jackson engaged in racist conduct, and identified instances of racist conduct, including but not limited to his statements in Volume 12. Doc. 83-2, MSJ APPX.061-062, 36:14-17, 37:19-23, 38:9-18; *See also* MSJ APPX.089, 54:20-25, 55:1-2; MSJ APPX.091, 77:5-8; MSJ APPX.059-060, 15:4-10, 18:3-6.

**B. The statement about Ewell being "afforded the opportunity to respond in print."**

As demonstrated in Section III(B) above, a reasonable reader who read the entire Faculty Petition and had knowledge of the context of the controversy would understand that this statement does not refer to Ewell's lack of receipt of the call for papers.

Even if a reasonable reader concluded that the statement that Ewell was not "afforded an opportunity to respond in print," meant that Ewell did not receive the call for papers, the evidence demonstrates that that was not the faculty members' intent. Rather, their intent was to convey that Ewell was not invited to respond to the *responses* to the call for papers. Doc. 83-2, MSJ APPX.

23

050, 121:5-23; Response APPX.002-005, 95:24-25, 98:1-6, 168:12-14, 166:25-167:1-16, 169:3-6, Response APPX.043-044, 63:3-66:8.

There is no evidence that any of the Defendants believed that by stating that Ewell was not afforded an opportunity to respond in print, they were publishing a false and defamatory statement, let alone one *about Jackson*. *See Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 119 (Tex. 2000) (Texas Supreme Court found that because there was no evidence that the defendant reporter knew that the allegedly defamatory television segment would mislead viewers, the lack of clarity in the defendant's word choice alone was not evidence of actual malice.); *Forbes* 124 S.W. 3d at 174; *Fox Entertainment Group, Inc. v. Abdel-Hafiz*, 240 S.W. 3d 524, 559 (Tex. App. 2007) (use of imprecise language is not evidence of actual malice.).

Stated differently: Jackson's opinion regarding the meaning of this statement, based on an illogical premise, is not evidence that the Defendants acted with knowledge of the statement's falsity. *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 681 (1989) (difference of opinion about the truth of statement, by itself, does not constitute evidence of actual malice.).

### C. The statement about "extortion"

Finally, Jackson argues that the Defamation Defendants have admitted to no knowledge of extortion, therefore they defamed him with actual malice. As discussed in Section I(A) above, the Faculty Defendants did not publish any such statement. Therefore, discussion regarding whether this statement was "published" with malice will be limited to Defendant Gain.

There is no evidence that Gain believed the statement that Jackson engaged in "extortion through grade manipulation" was false, or that she intended the statement to be misleading. *See Turner* 38 S.W.3d at 119; *Forbes* 124 S.W. 3d at 174; *Fox* 240 S.W. 3d at 559. As stated above, she and the student who drafted the Student Petition believed that Jackson extorted YiYi Gao when

he threatened to change her grade if she did not continue to work for him, without pay. Response APPX.050, 50:1-12, Response APPX.048, 37:19-23; Response APPX.064, 64:4-16, Response APPX.063, 23:9-20, Response APPX.065, 67:4-12. Nor is there evidence that she intended to falsely accuse Jackson of a crime – indeed, Gain testified that as a recent immigrant, she was not aware that extortion was a crime. APPX.049-050, 48:23-49:4.

Jackson has thus failed to prove that any of the Defamation Defendants entertained doubts about the truth of the statements in the petitions and thus has failed to meet his burden to prove actual falsity. The above also demonstrates that the Defamation Defendants did not believe that any of the statements were false, and therefore could not have published the allegedly defamatory opinion regarding Jackson's "racist actions," about Ewell's opportunity to respond, or extortion, with knowledge of falsity. Jackson has not demonstrated that any of the Defamation Defendants acted with actual malice, therefore his MSJ must be denied, and judgment for the Defamation Defendants entered.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in the Defamation Defendants' Motion for Summary Judgment, Jackson has not demonstrated that the allegedly defamatory statements are actually defamatory. The evidence indicates the statements at issue are either true and not defamatory about Jackson, or non-actionable opinion. Jackson also failed to meet his burden that any of the Defamation Defendants published the statements with actual malice. Jackson's defamation claim thus fails for multiple reasons, his Motion for Summary Judgment should be denied, and the Defamation Defendants are entitled to judgment as a matter of law.

Respectfully submitted.

**KEN PAXTON**
Attorney General

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**JAMES LLOYD**
Deputy Attorney General for Civil Litigation

**KIMBERLY GDULA**
Chief, General Litigation Division

_____/s/ Mary B. Quimby_____
**BENJAMIN S. WALTON**
*Lead Attorney*
Texas Bar No. 24075241
**MARY B. QUIMBY**
Texas Bar No. 24132506
Assistant Attorneys General
General Litigation Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711
(512) 463-2120 – Phone
(512) 320-0667 – Fax
benjamin.walton@oag.texas.gov
mary.quimby@oag.texas.gov

***Counsel for Defendants***

26

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2025, a true and correct copy of this document was electronically filed using the Court's CM/ECF system, which will send notification of such filing to the following counsel of record:

Michael Thad Allen, Esq.
ALLEN LAW, LLC
PO Box 404
Quaker Hill, CT 06375
(860) 772-4738 (phone)
(860) 469-2783 (fax)
mallen@allenharrislaw.com

Jonathan Mitchell
MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

***Counsel for Plaintiff***

_____*/s/ Mary B. Quimby*_____
**MARY B. QUIMBY**
Assistant Attorney General

27